

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
OFFICE OF THE CLERK**

Alfred A. Arraj
United States Courthouse
901 19th Street
Denver, Colorado 80294
www.cod.uscourts.gov

Jeffrey P. Colwell
*Clerk*

Phone: (303) 844-3433

July 29, 2014

TRANSMITTAL OF A NOTICE OF APPEAL AND AN AMENDED NOTICE OF APPEAL

SEE NOTICE OF ELECTRONIC FILING

**RE:** Colorado Outfitters Association et al v. Hickenlooper

District Court Case No.: 13-cv-01300-MSK-MJW
Court of Appeals Case No.: n/a
Date amended notice of appeal filed: 7/28/14

Attached is the amended notice of appeal and a current copy of the docket sheet.

Filed by: Plaintiffs David Bayne, Colorado Farm Bureau, Colorado Outfitters Association, Dylan Harrell, Outdoor Buddies, Inc., Women for Concealed Carry on 7/28/14
Fee Status: Fee paid
Type of Counsel: Retained counsel
Other Pending Appeals: None

Attached are the following documents for the parties in connection with the notice of appeal and a copy of the docket sheet.

The parties are directed to the U.S. Court of Appeals for the 10th Circuit website (http://www.ca10.uscourts.gov) to obtain any necessary forms, such as the Transcript Order Form, Docketing Statement or Designation of Record. Instructions for ordering transcripts are attached.

JEFFREY P. COLWELL, CLERK

by  s/ D. Kalsow
Deputy Clerk

cc:      Clerk, U.S. Court of Appeals for the Tenth Circuit

**INSTRUCTIONS FOR ORDERING TRANSCRIPTS:**

Please review the enclosed docket sheet and locate the docket entry for the minutes of the proceedings you wish to have transcribed.  In the entry will be either:
- the name of the court reporter, or
-"FTR" (meaning the proceeding was digitally recorded before either a District Court Judge or a Magistrate Judge).

If a name of a court reporter appears, please contact that reporter directly to make arrangements for the preparation of the transcript.  The names, addresses and phone numbers for the court reporters and some of the contract reporters are on the attached sheet.

If the proceeding was before a District Court Judge (other than Judge Richard P. Matsch) and was recorded by an E.C.R. operator or FTR, please contact Federal Reporting Service.  Their address and phone number are on the attached list.

If the proceeding was before Judge Richard P. Matsch please contact Kathy Terasaki. Her phone number is on the attached list.

If the proceeding was held before a Magistrate Judge Please contact Avery Woods Reporting Service.  Their address and phone numbers are on the attached list.

**COURT REPORTERS**

Suzanne Claar
3629 E. Phillips Ave.
Centennial, CO 80122
303-770-4794

Paul Zuckerman
303-629-9285

Gwen Daniel
303-571-4084

Therese Lindblom
303-628-7877

Kara Spitler
303-623-3080

Janet Coppock (fka Morrissey)
303-893-2835

Darlene Martinez
303-296-2008

Tracy Weir
303-298-1207

Tamara Hoffschildt
303-292-1088

Mary George
303-296-2638

**FTR OPERATOR**

Kathy Terasaki
FTR Operator - (FTR-RPM)
303-335-2095

**DISTRICT COURT JUDGE - DIGITAL FTR**

Federal Reporting Service, Inc.
17454 East Asbury Place
Aurora, CO 80013
303-751-2777

**MAGISTRATE JUDGE - DIGITAL - FTR**

Avery Woods Reporting Service, Inc.
455 Sherman Street, Suite 250
Denver, CO 80203
303-825-6119

**OTHER COURT REPORTERS**

Adrienne Whitlow
15400 Winding Moss Dr.
Houston, TX 77068
303-668-6887

ALLMTN,APPEAL,TERMED

# U.S. District Court
## District of Colorado (Denver)
## CIVIL DOCKET FOR CASE #: 1:13–cv–01300–MSK–MJW

Colorado Outfitters Association et al v. Hickenlooper
Assigned to: Chief Judge Marcia S. Krieger
Referred to: Magistrate Judge Michael J. Watanabe
Cause: 28:1331 Federal Question: Other Civil Rights

Date Filed: 05/17/2013
Date Terminated: 06/26/2014
Jury Demand: None
Nature of Suit: 950 Constitutional – State Statute
Jurisdiction: Federal Question

## Defendant

**Mesa County, Board of County Commissioners**

represented by **David Robert Frankel**
Mesa County Attorney's Office
P.O. Box 20000
544 Rood Avenue
2nd Floor Annex
Grand Junction, CO 81502–5004
970–244–1612
Fax: 970–255–7196
Email: david.frankel@mesacounty.us
*ATTORNEY TO BE NOTICED*

## Plaintiff

**Colorado Outfitters Association**

represented by **Peter J. Krumholz**
Hale Westfall, LLP
1600 Stout Street
Suite 500
Denver, CO 80202
720–904–6007
Fax: 720–904–6006
Email: pkrumholz@halewestfall.com
*ATTORNEY TO BE NOTICED*

**Richard A. Westfall**
Hale Westfall, LLP
1600 Stout Street
Suite 500
Denver, CO 80202
720–904–6010
Fax: 720–904–6020
Email: rwestfall@halewestfall.com
*ATTORNEY TO BE NOTICED*

## Plaintiff

**Colorado Farm Bureau**

represented by **Peter J. Krumholz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Richard A. Westfall**
(See above for address)
*ATTORNEY TO BE NOTICED*

## Plaintiff

**National Shooting Sports Foundation**

represented by **Jonathan Michael Anderson**
Holland &Hart, LLP–Denver
P.O. Box 8749
555 17th Street
Suite 3200
Denver, CO 80201–8749

303–295–8566
Fax: 303–672–6508
Email: jmanderson@hollandhart.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Douglas L. Abbott**
Holland &Hart, LLP–Denver
P.O. Box 8749
555 17th Street
#3200
Denver, CO 80201–8749
303–295–8000
Fax: 295–8261
Email: dabbott@hollandhart.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Magpul Industries**                     represented by   **Jonathan Michael Anderson**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Douglas L. Abbott**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Colorado Youth Outdoors**               represented by   **Peter J. Krumholz**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**

**USA Liberty Arms**                      represented by   **Jonathon Michael Watson**
                                                            Sherman &Howard, L.L.C.–Denver
                                                            633 17th Street
                                                            Suite 3000
                                                            Denver, CO 80202–3622
                                                            303–297–2900
                                                            Fax: 303–298–0940
                                                            Email: jwatson@shermanhoward.com
                                                            *TERMINATED: 02/12/2014*

                                                            **Marc F. Colin**
                                                            Bruno Colin &Lowe, P.C.
                                                            1999 Broadway
                                                            Suite 3100
                                                            Denver, CO 80202
                                                            303–831–1099
                                                            Fax: 303–831–1088
                                                            Email: mcolin@brunolawyers.com
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Outdoor Buddies, Inc.**                 represented by   **Peter J. Krumholz**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Richard A. Westfall**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Women for Concealed Carry**                  represented by   **Peter J. Krumholz**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Richard A. Westfall**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Colorado State Shooting Association**        represented by   **Anthony John Fabian**
                                                                Anthony J. Fabian, P.C.
                                                                510 Wilcox Street
                                                                # C
                                                                Castle Rock, CO 80104
                                                                303–663–9339
                                                                Email: fabianlaw@qwestoffice.net
                                                                *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Hamilton Family Enterprises, Inc.**          represented by   **Anthony John Fabian**
*doing business as*                                             (See above for address)
Family Shooting Center at Cherry Creek                          *ATTORNEY TO BE NOTICED*
State Park

**Plaintiff**

**David Strumillo**                            represented by   **David Benjamin Kopel**
                                                                Independence Institute
                                                                727 East 16th Avenue
                                                                Denver, CO 80203
                                                                303–279–6536
                                                                Fax: 303–279–4176
                                                                Email: david@i2i.org
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

**Plaintiff**

**David Bayne**                                represented by   **Peter J. Krumholz**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Richard A. Westfall**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Dylan Harrell**                              represented by   **Peter J. Krumholz**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Richard A. Westfall**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rocky Mountain Shooters Supply**             represented by   **Jonathon Michael Watson**
                                                                (See above for address)
                                                                *TERMINATED: 02/12/2014*

                                                                **Marc F. Colin**
                                                                (See above for address)

*ATTORNEY TO BE NOTICED*

**Plaintiff**

**2nd Amendment Gunsmith &Shooter Supply, LLC**

represented by **Jonathon Michael Watson**
(See above for address)
*TERMINATED: 02/12/2014*

**Marc F. Colin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Burrud Arms Inc.**
*doing business as*
Jensen Arms

represented by **Jonathon Michael Watson**
(See above for address)
*TERMINATED: 02/12/2014*

**Marc F. Colin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Green Mountain Guns**

represented by **Jonathon Michael Watson**
(See above for address)
*TERMINATED: 02/12/2014*

**Marc F. Colin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jerry's Outdoor Sports**

represented by **Jonathon Michael Watson**
(See above for address)
*TERMINATED: 02/12/2014*

**Marc F. Colin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Specialty Sports &Supply**

represented by **Jonathon Michael Watson**
(See above for address)
*TERMINATED: 02/12/2014*

**Marc F. Colin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Goods for the Woods**

represented by **Jonathon Michael Watson**
(See above for address)
*TERMINATED: 02/12/2014*

**Marc F. Colin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**John B. Cooke**

represented by **David Benjamin Kopel**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ken Putnam**                                    represented by   **David Benjamin Kopel**
                                                                   (See above for address)
                                                                   *ATTORNEY TO BE NOTICED*

**Plaintiff**

**James Faull**                                   represented by   **David Benjamin Kopel**
                                                                   (See above for address)
                                                                   *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Larry Kuntz**                                   represented by   **David Benjamin Kopel**
                                                                   (See above for address)
                                                                   *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Fred Jobe**                                     represented by   **David Benjamin Kopel**
                                                                   (See above for address)
                                                                   *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Donald Krueger**                                represented by   **David Benjamin Kopel**
                                                                   (See above for address)
                                                                   *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Stan Hilkey**                                   represented by   **David Benjamin Kopel**
*TERMINATED: 05/08/2014*                                           (See above for address)
                                                                   *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Dave Stong**                                    represented by   **David Benjamin Kopel**
                                                                   (See above for address)
                                                                   *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Peter Gonzalez**                                represented by   **David Benjamin Kopel**
                                                                   (See above for address)
                                                                   *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Sue Kurtz**                                     represented by   **David Benjamin Kopel**
                                                                   (See above for address)
                                                                   *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Douglas N. Darr**                               represented by   **David Benjamin Kopel**
                                                                   (See above for address)
                                                                   *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**John W. Hickenlooper**                          represented by   **Daniel D. Domenico**
*Govenor of the State of Colorado*                                 Colorado Attorney General's Office
                                                                   Ralph L. Carr Colorado Judicial Center
                                                                   1300 Broadway

Denver, CO 80203
720–508–6000
Fax: 720–508–6032
Email: dan.domenico@state.co.us
*ATTORNEY TO BE NOTICED*

**David Christopher Blake**
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
720–508–6000
Fax: 720–508–6032
Email: david.blake@state.co.us
*ATTORNEY TO BE NOTICED*

**John Tien Yau Lee**
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
720–508–6000
Fax: 720–508–6032
Email: jtlee@state.co.us
*ATTORNEY TO BE NOTICED*

**Jonathan Patrick Fero**
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
720–508–6000
Fax: 720–508–6032
Email: jon.fero@state.co.us
*ATTORNEY TO BE NOTICED*

**Kathleen L. Spalding**
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
720–508–6000
Fax: 720–508–6032
Email: kit.spalding@state.co.us
*ATTORNEY TO BE NOTICED*

**LeeAnn Morrill**
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
720–508–6000
Fax: 720–508–6032
Email: leeann.morrill@state.co.us
*ATTORNEY TO BE NOTICED*

**Matthew David Grove**
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
720–508–6000
Fax: 720–508–6032
Email: matt.grove@state.co.us
*ATTORNEY TO BE NOTICED*

**Molly Allen Moats**
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
720–508–6000
Fax: 720–508–6032
Email: molly.moats@state.co.us
*ATTORNEY TO BE NOTICED*

**Stephanie Lindquist Scoville**
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
720–508–6000
Fax: 720–508–6032
Email: stephanie.scoville@state.co.us
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Board of County Commissioners for Mesa County Colorado**

represented by **David Robert Frankel**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maurice L. Dechant**
Maurice L. Dechant, Attorney at Law
1940 10 Road
Mack, CO 81525
970–216–0941
Email: lyledechant@gmail.com
*TERMINATED: 03/03/2014*

**Plaintiff**

**John B. Cooke**
*Sheriff of Weld County, Colordo*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Terry Maketa**
*Sheriff of El Paso County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Justin Smith**
*Sheriff of Larimer County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**David A. Weaver**
*Sheriff of Douglas County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Bruce W. Hartman**
*Sheriff of Gilpin County, Colorado*

represented by **David Benjamin Kopel**
(See above for address)

*TERMINATED: 11/27/2013*

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Dennis Spruell**
*Sheriff of Montezuma County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Tim Jantz**
*Sheriff of Moffat County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jerry Martin**
*Sheriff of Dolores County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mike Ensminger**
*Sheriff of Teller County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Shayne Heap**
*Sheriff of Elbert County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Chad Day**
*Sheriff of Yuma County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Fred D. McKee**
*Sheriff of Delta County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lou Vallario**
*Sheriff of Garfield County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Fred Hosselkus**
*Sheriff of Mineral County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

represented by

**Brett L. Powell**
*Sheriff of Logan County, Colorado*
*TERMINATED: 11/27/2013*

**David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Brian E. Norton**
*Sheriff of Rio Grande County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Duke Schirard**
*Sheriff of La Plata County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jim Beicker**
*Sheriff of Fremont County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ronald Bruce**
*Sheriff of Hinsdale County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Chris S. Johnson**
*Sheriff of Otero County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**James Crone**
*Sheriff of Morgan County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Si Woodruff**
*Sheriff of Rio Blanco County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Tom Ridnour**
*Sheriff of Kit Carson County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Tom Nestor**
*Sheriff of Lincoln County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Forrest Frazee**
*Sheriff of Kiowa County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rick Dunlap**
*Sheriff of Montrose County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ted B. Mink**
*Sheriff of Jefferson County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Fred Wegener**
*Sheriff of Park County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Bruce Newman**
*Sheriff of Huerfano County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Randy Peck**
*Sheriff of Sedgwick County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Dominic Mattivi, Jr.**
*Sheriff of Ouray County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**John Minor**
*Sheriff of Summit County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Scott Fischer**
*Sheriff of Jackson County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rick Besecker**
*Sheriff of Gunnison County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Charles "Rob" Urbach**
*Sheriff of Phillips County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rod Fenske**
*Sheriff of Lake County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Grayson Robinson**
*Sheriff of Arapahoe County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**David Campbell**
*Sheriff of Baca County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mike Norris**
*Sheriff of Saguache County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Amos Medina**
*Sheriff of Costilla County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Miles Clark**
*Sheriff of Crowley County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**David Encinias**
*Sheriff of Bent County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**James (Jim) Casias**
*Sheriff of Las Animas County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Garrett Wiggins**
*Sheriff of Routt County, Colorado*
*TERMINATED: 11/27/2013*

represented by **David Benjamin Kopel**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Grand Prix Guns**                      represented by   **Jonathon Michael Watson**
*TERMINATED: 12/23/2013*                                 (See above for address)
                                                         *TERMINATED: 02/12/2014*

                                                         **Marc F. Colin**
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rodney Johnson**                       represented by   **David Benjamin Kopel**
*Sheriff of Grand County, Colorado*                      (See above for address)
*TERMINATED: 12/12/2013*                                 *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/17/2013 | 1 | COMPLAINT *for Injunctive and Declaratory Relief* against John W. Hickenlooper (Filing fee $ 400, Receipt Number 1082–3366625), filed by Ted Mink, Rick Dunlap, Hamilton Family Enterprises Inc., DBA Family Shooting Center at Cherry Creek State Park, JIM BEICKER, Jerry's Outdoor Sports, Dennis Spruell, James Crone, Larry Kuntz, Grand Prix Guns, Brett Powell, Rod Fenske, Colorado Outfitters Association, Si Woodruff, Goods for the Woods, National Shooting Sports Foundation, Women for Concealed Carry, Duke Schirard, Mike Ensminger, Forrest Frazee, Fred Wegener, Shayne Heap, Amos Medina, Tom Nestor, David Bayne, David Encinias, John Minor, David Strumillo, Magpul Industries Corporation, CHAD DAY, Peter Gonzalez, Fred Hosselkus, James Casias, Outdoor Buddies, Inc., Colorado Farm Bureau, Specialty Sports &Supply, Grayson Robinson, Dylan Harrell, Brian Norton, Colorado State Shooting Association, Douglas Darr, Rocky Mountain Shooters Supply, Green Mountain Guns, 2nd Amendment Gunsmith &Shooter Supply, LLC, James Faull, Terry Maketa, John B. Cooke, Stan Hilkey, Donald Krueger, ridnour, Scott Fischer, Lou Vallario, USA Liberty Arms, Burrud Arms Inc. DBA Jensen Arms, Miles Clark, Fred Jobe, Garrett Wiggins, Rick Besecker, Ronald Bruce, David Campbell, Chris Johnson, Fred McKee, KEN PUTNAM, Bruce Newman, Justin Smith, Sue Kurtz, Jerry Martin, Mike Norris, Tim Jantz, Dominic Mattivi, Jr, David Weaver, Dave Stong, Randy Peck, Charles ("Rob") Urbach, Bruce Hartman.(Westfall, Richard) (Entered: 05/17/2013) |
| 05/17/2013 | 2 | Case assigned to Chief Judge Marcia S. Krieger and drawn to Magistrate Judge Michael J. Watanabe. Text Only Entry (dbera, ) (Entered: 05/17/2013) |
| 05/17/2013 | 3 | Magistrate Judge Consent Form issued. (dbera, ) (Entered: 05/17/2013) |
| 05/21/2013 | 4 | WAIVER OF SERVICE Returned Executed by Colorado Outfitters Association, Women for Concealed Carry, David Bayne, Outdoor Buddies, Inc., Colorado Farm Bureau, Dylan Harrell. John W. Hickenlooper waiver sent on 5/17/2013, answer due 7/16/2013. (Westfall, Richard) (Entered: 05/21/2013) |
| 05/22/2013 | 5 | NOTICE of Entry of Appearance by Matthew David Grove on behalf of John W. Hickenlooper (Grove, Matthew) (Entered: 05/22/2013) |
| 05/22/2013 | 6 | NOTICE of Entry of Appearance by David Christopher Blake on behalf of John W. Hickenlooper (Blake, David) (Entered: 05/22/2013) |
| 05/22/2013 | 7 | NOTICE of Entry of Appearance by Daniel D. Domenico on behalf of John W. Hickenlooper (Domenico, Daniel) (Entered: 05/22/2013) |
| 05/22/2013 | 8 | NOTICE of Entry of Appearance by Jonathan Patrick Fero on behalf of John W. Hickenlooper (Fero, Jonathan) (Entered: 05/22/2013) |
| 05/22/2013 | 9 | ORDER REFERRING CASE to Magistrate Judge Michael J. Watanabe: **IT IS ORDERED** that pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed. R. Civ. P. |

|  |  | 72(a) and (b), this matter is referred to the assigned United States Magistrate Judge to:(1)Convene a scheduling conference under Fed. R. Civ. P. 16(b), enter a Scheduling Order meeting the requirements of D.C.COLO.LCivR 16.2, enter such orders as appropriate to enforce the Scheduling Order, and resolve discovery matters;(2)ADR: Court sponsored alternative dispute resolution is governed by D.C.COLO.LCivR 16.6. On the recommendation or informal request of the magistrate judge or on the request of the parties by motion, the Court may direct the parties to engage in an early neutral evaluation, a settlement conference, or another alternative dispute resolution proceeding;(3)Hear and determine referred matters in accordance with 28 U.S.C. § 636(b)(1)(A) and (B). by Chief Judge Marcia S. Krieger on 5/22/13. Text Only Entry (msksec, ) (Entered: 05/22/2013) |
| 05/22/2013 | 10 | MINUTE ORDER Status Conference set for 5/30/2013 10:00 AM in Courtroom A 502 before Magistrate Judge Michael J. Watanabe, by Magistrate Judge Michael J. Watanabe on 5/22/2013. (mjwcd) (Entered: 05/22/2013) |
| 05/22/2013 | 11 | NOTICE AND DISCLOSURE on 5/22/13 (msksec, ) (Entered: 05/22/2013) |
| 05/23/2013 | 12 | NOTICE of Entry of Appearance by Peter J. Krumholz on behalf of David Bayne, Colorado Farm Bureau, Colorado Outfitters Association, Dylan Harrell, Outdoor Buddies, Inc., Women for Concealed Carry (Krumholz, Peter) (Entered: 05/23/2013) |
| 05/23/2013 | 13 | NOTICE of Entry of Appearance by Marc F. Colin on behalf of 2nd Amendment Gunsmith &Shooter Supply, LLC, Burrud Arms Inc., Goods for the Woods, Grand Prix Guns, Green Mountain Guns, Jerry's Outdoor Sports, Rocky Mountain Shooters Supply, Specialty Sports &Supply, USA Liberty Arms (Colin, Marc) (Entered: 05/23/2013) |
| 05/23/2013 | 14 | NOTICE of Entry of Appearance *Amended* by Marc F. Colin on behalf of 2nd Amendment Gunsmith &Shooter Supply, LLC, Burrud Arms Inc., Goods for the Woods, Grand Prix Guns, Green Mountain Guns, Jerry's Outdoor Sports, Rocky Mountain Shooters Supply, Specialty Sports &Supply, USA Liberty Arms (Colin, Marc) (Entered: 05/23/2013) |
| 05/23/2013 | 15 | NOTICE of Entry of Appearance by Anthony John Fabian on behalf of Colorado State Shooting Association (Fabian, Anthony) (Entered: 05/23/2013) |
| 05/23/2013 | 16 | NOTICE of Entry of Appearance by Anthony John Fabian on behalf of Hamilton Family Enterprises, Inc. (Fabian, Anthony) (Entered: 05/23/2013) |
| 05/28/2013 | 17 | NOTICE of Entry of Appearance *Second Amended* by Marc F. Colin on behalf of 2nd Amendment Gunsmith &Shooter Supply, LLC, Burrud Arms Inc., Goods for the Woods, Grand Prix Guns, Green Mountain Guns, Jerry's Outdoor Sports, Rocky Mountain Shooters Supply, Specialty Sports &Supply, USA Liberty Arms (Colin, Marc) (Entered: 05/28/2013) |
| 05/28/2013 | 18 | ORDER REGARDING CUSTODY OF EXHIBITS AND DEPOSITIONS USED IN EVIDENTIARY HEARINGS AND TRIALS: Any exhibits and depositions used during evidentiary hearings or trials, counsel for the parties shall retrieve the originals of such exhibits and depositions from the Court following the evidentiary hearing or trial, and shall retain same for 60 days beyond the later of the time to appeal or conclusion of any appellate proceedings. The Court will retain its copy of the exhibits for the same time period after which the documents will be destroyed. by Chief Judge Marcia S. Krieger on 5/28/13. Text Only Entry (mskcd) (Entered: 05/28/2013) |
| 05/28/2013 | 19 | NOTICE of Entry of Appearance *by Jonathan M. Anderson and* by Douglas L. Abbott on behalf of Magpul Industries, National Shooting Sports Foundation (Abbott, Douglas) (Entered: 05/28/2013) |
| 05/30/2013 | 20 | COURTROOM MINUTES/MINUTE ORDER for proceedings held before Magistrate Judge Michael J. Watanabe: Status Conference held on 5/30/2013. Plaintiffs shall file their Amended Complaint on or before 5/31/2013. Defendant John W. Hickenlooper answer due 6/7/2013. Scheduling Conference set for 6/7/2013 01:30 PM in Courtroom A 502 before Magistrate Judge Michael J. Watanabe. Deadline to file proposed Scheduling Order is 9:00 AM 6/7/2013. Court |

| | | Reporter: FTR – Ellen E. Miller. FTR: Courtroom A502. (mjwcd) (Entered: 05/30/2013) |
|---|---|---|
| 05/30/2013 | 21 | MINUTE ORDER: Due to a conflict, the Scheduling Conference 6/7/2013 1:30 PM is vacated. Scheduling Conference reset for 6/10/2013 10:30 AM in Courtroom A 502 before Magistrate Judge Michael J. Watanabe. By Magistrate Judge Michael J. Watanabe on 5/30/2013. (mjwcd) (Entered: 05/30/2013) |
| 05/30/2013 | 45 | AMENDED COURTROOM MINUTES/MINUTE ORDER for proceedings held before Magistrate Judge Michael J. Watanabe: Amended re 20 Status Conference. Amended to add date and location of hearing only. Court Reporter: FTR – Ellen E. Miller. FTR: Courtroom A502. (mjwcd) (Entered: 07/02/2013) |
| 05/31/2013 | 22 | AMENDED COMPLAINT against All Defendants, filed by All Plaintiffs.(Westfall, Richard) Modified on 6/3/2013 to correct filers(mnfsl, ). (Entered: 05/31/2013) |
| 06/06/2013 | 23 | NOTICE of Entry of Appearance by Kathleen L. Spalding on behalf of John W. Hickenlooper (Spalding, Kathleen) (Entered: 06/06/2013) |
| 06/07/2013 | 24 | Proposed Scheduling Order by Plaintiff Magpul Industries. (Abbott, Douglas) (Entered: 06/07/2013) |
| 06/07/2013 | 25 | ANSWER to 22 Amended Complaint *FOR DECLARATORY AND INJUNCTIVE RELIEF* by John W. Hickenlooper.(Grove, Matthew) (Entered: 06/07/2013) |
| 06/10/2013 | 26 | MOTION for Order to *Certify Questions to Colorado Supreme Court* by Defendant John W. Hickenlooper. (Attachments: # 1 Proposed Order (PDF Only) Proposed preliminary injunction and order certifying questions to Colorado Supreme Court, # 2 Exhibit Attachment 1 (Technical Guidance))(Grove, Matthew) (Entered: 06/10/2013) |
| 06/10/2013 | 27 | COURTROOM MINUTES/MINUTE ORDER for proceedings held before Magistrate Judge Michael J. Watanabe: Scheduling Conference held on 6/10/2013. Discovery due by 11/1/2013. Dispositive Motions due by 12/2/2013. Parties shall file Scheduling Order in its final form for the Court's signature on or before 6/17/2013 *nunc pro tunc* 6/10/2013. Court Reporter: FTR – Ellen E. Miller. FTR: Courtroom A502. (mjwcd) (Entered: 06/10/2013) |
| 06/10/2013 | 44 | AMENDED COURTROOM MINUTES/MINUTE ORDER for proceedings held before Magistrate Judge Michael J. Watanabe: Amended re 27 Scheduling Conference. Amended to add date and location information only. Court Reporter: FTR – Ellen E. Miller. FTR: Courtroom A502. (mjwcd) Modified on 7/2/2013 to show Courtroom Minutes/Minute Order as document being amended (mjwcd). (Entered: 07/02/2013) |
| 06/11/2013 | 28 | MINUTE ORDER Telephonic Status Conference set for 6/13/2013 01:30 PM before Magistrate Judge Michael J. Watanabe, by Magistrate Judge Michael J. Watanabe on 6/11/2013. (mjwcd) (Entered: 06/11/2013) |
| 06/12/2013 | 29 | WITHDRAWN – MOTION for Preliminary Injunction by Plaintiffs David Bayne, Colorado Farm Bureau, Colorado Outfitters Association, Colorado Youth Outdoors, Dylan Harrell, Outdoor Buddies, Inc., Women for Concealed Carry. (Attachments: # 1 Exhibit, # 2 Exhibit)(Krumholz, Peter) Modified on 7/15/2013 to withdraw pursuant to Order dated 7/12/2013 (klyon, ). (Entered: 06/12/2013) |
| 06/13/2013 | 30 | COURTROOM MINUTES/MINUTE ORDER for proceedings held before Magistrate Judge Michael J. Watanabe: Telephonic Status Conference held on 6/13/2013. Court Reporter: FTR – Ellen E. Miller. FTR: Courtroom A502. (mjwcd) (Entered: 06/13/2013) |
| 06/13/2013 | 31 | ORDER SETTING HEARING: The Court will conduct a non–evidentiary law and motion hearing on the Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction 29 on 6/17/2013 at 04:30 PM. The parties shall be prepared to address: (i) whether determination of any provisional injunctive relief should be consolidated with an expedited trial on the merits pursuant to Fed. R. Civ. P 65(a)(2); (ii) what factual issues relevant to the applicable preliminary injunction factors are in dispute, such that an evidentiary hearing is necessary; and (iii) to the |

| | | extent an evidentiary hearing is necessary, how much time is necessary for that hearing. By Chief Judge Marcia S. Krieger on 6/13/13. Text Only Entry (msklc2, ) (Entered: 06/13/2013) |
|---|---|---|
| 06/13/2013 | 46 | AMENDED COURTROOM MINUTES/MINUTE ORDER for proceedings held before Magistrate Judge Michael J. Watanabe: Amended re 30 Status Conference. Amended to add date and location information for hearing only. Court Reporter: FTR – Ellen E. Miller. FTR: Courtroom A–502. (mjwcd) (Entered: 07/02/2013) |
| 06/14/2013 | 32 | RESPONSE to 26 MOTION for Order to *Certify Questions to Colorado Supreme Court* filed by Plaintiffs David Bayne, Colorado Farm Bureau, Colorado Outfitters Association, Dylan Harrell, Outdoor Buddies, Inc., Women for Concealed Carry. (Krumholz, Peter) (Entered: 06/14/2013) |
| 06/17/2013 | 33 | Proposed Scheduling Order by Plaintiffs Magpul Industries, National Shooting Sports Foundation. (Abbott, Douglas) (Entered: 06/17/2013) |
| 06/17/2013 | 34 | MINUTE ENTRY for Law and Motion Hearing held before Chief Judge Marcia S. Krieger on 6/17/2013. One day Evidentiary Hearing set for 7/10/2013 09:00 AM in Courtroom A 901 before Chief Judge Marcia S. Krieger. Other matters addressed and deadlines imposed are set forth in the Minutes. Court Reporter: Terri Lindblom. (mskcd) (Entered: 06/18/2013) |
| 06/18/2013 | 35 | Proposed Scheduling Order by Plaintiffs Magpul Industries, National Shooting Sports Foundation. (Abbott, Douglas) (Entered: 06/18/2013) |
| 06/18/2013 | 36 | SCHEDULING ORDER: Discovery due by 11/1/2013. Dispositive Motions due by 12/2/2013. By Magistrate Judge Michael J. Watanabe on 6/18/2013. (klyon, ) (Entered: 06/18/2013) |
| 06/20/2013 | 37 | BRIEF in Support of 29 MOTION for Preliminary Injunction filed by Plaintiffs 2nd Amendment Gunsmith &Shooter Supply, LLC, David Bayne, Jim Beicker, Rick Besecker, Ronald Bruce, Burrud Arms Inc., David Campbell, James (Jim) Casias, Miles Clark, Colorado Farm Bureau, Colorado Outfitters Association, Colorado State Shooting Association, Colorado Youth Outdoors, John B. Cooke, James Crone, Douglas Darr, Chad Day, Rick Dunlap, David Encinias, Mike Ensminger, James Faull, Rod Fenske, Scott Fischer, Forrest Frazee, Peter Gonzalez, Goods for the Woods, Grand Prix Guns, Green Mountain Guns, Hamilton Family Enterprises, Inc., Dylan Harrell, Bruce W. Hartman, Shayne Heap, Stan Hilkey, Fred Hosselkus, Tim Jantz, Jerry's Outdoor Sports, Fred Jobe, Chris S. Johnson, Donald Krueger, Larry Kuntz, Sue Kurtz, Magpul Industries, Terry Maketa, Jerry Martin, Dominic Mattivi, Jr, Fred D. McKee, Amos Medina, Ted B. Mink, John Minor, National Shooting Sports Foundation, Tom Nestor, Bruce Newman, Mike Norris, Brian E. Norton, Outdoor Buddies, Inc., Randy Peck, Brett L. Powell, Ken Putnam, Tom Ridnour, Grayson Robinson, Rocky Mountain Shooters Supply, Duke Schirard, Justin Smith, Specialty Sports &Supply, Dennis Spruell, Dave Stong, David Strumillo, USA Liberty Arms, Charles "Rob" Urbach, Lou Vallario, David A. Weaver, Fred Wegener, Garrett Wiggins, Women for Concealed Carry, Si Woodruff. (Colin, Marc) (Entered: 06/20/2013) |
| 06/20/2013 | 38 | CERTIFICATE *of Service* re: 37 Brief in Support of Motion,,,,, by Plaintiffs 2nd Amendment Gunsmith &Shooter Supply, LLC, David Bayne, Jim Beicker, Rick Besecker, Ronald Bruce, Burrud Arms Inc., David Campbell, James (Jim) Casias, Miles Clark, Colorado Farm Bureau, Colorado Outfitters Association, Colorado State Shooting Association, Colorado Youth Outdoors, John B. Cooke, James Crone, Douglas Darr, Chad Day, Rick Dunlap, David Encinias, Mike Ensminger, James Faull, Rod Fenske, Scott Fischer, Forrest Frazee, Peter Gonzalez, Goods for the Woods, Grand Prix Guns, Green Mountain Guns, Hamilton Family Enterprises, Inc., Dylan Harrell, Bruce W. Hartman, Shayne Heap, Stan Hilkey, Fred Hosselkus, Tim Jantz, Jerry's Outdoor Sports, Fred Jobe, Chris S. Johnson, Donald Krueger, Larry Kuntz, Sue Kurtz, Magpul Industries, Terry Maketa, Jerry Martin, Dominic Mattivi, Jr, Fred D. McKee, Amos Medina, Ted B. Mink, John Minor, National Shooting Sports Foundation, Tom Nestor, Bruce Newman, Mike Norris, Brian E. Norton, Outdoor Buddies, Inc., Randy Peck, Brett L. Powell, Ken Putnam, Tom Ridnour, Grayson Robinson, Rocky Mountain Shooters Supply, Duke Schirard, Justin Smith, Specialty Sports &Supply, Dennis Spruell, Dave Stong, |

| | | |
|---|---|---|
| | | David Strumillo, USA Liberty Arms, Charles "Rob" Urbach, Lou Vallario, David A. Weaver, Fred Wegener, Garrett Wiggins, Women for Concealed Carry, Si Woodruff. (Colin, Marc) (Entered: 06/20/2013) |
| 06/21/2013 | 39 | REPLY to Response to 26 MOTION for Order to *Certify Questions to Colorado Supreme Court* filed by Defendant John W. Hickenlooper. (Domenico, Daniel) (Entered: 06/21/2013) |
| 06/24/2013 | 40 | BRIEF in Opposition to 29 MOTION for Preliminary Injunction filed by Defendant John W. Hickenlooper. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H)(Fero, Jonathan) (Entered: 06/24/2013) |
| 06/27/2013 | 41 | REPLY to Response to 29 MOTION for Preliminary Injunction *on behalf of all Plaintiffs* filed by Plaintiffs David Bayne, Colorado Farm Bureau, Colorado Outfitters Association, Colorado Youth Outdoors, Dylan Harrell, Outdoor Buddies, Inc., Women for Concealed Carry. (Attachments: # 1 Affidavit Exhibit A to Reply, # 2 Affidavit Exhibit B to Reply, # 3 Affidavit Exhibit C to Reply, # 4 Affidavit Exhibit D to Reply)(Krumholz, Peter) (Entered: 06/27/2013) |
| 07/01/2013 | 42 | ORDER: Having reviewed the briefing found at 29 , 37 , 40 , and 41 , and upon the current showing, the Court declines to impose an injunction until the parties have an opportunity to present evidence at the hearing scheduled for July 10, 2013. By Chief Judge Marcia S. Krieger on 07/01/2013. Text Only Entry (msklc3, ) (Entered: 07/01/2013) |
| 07/01/2013 | 43 | Unopposed MOTION to Amend/Correct/Modify *Amended Complaint* by Plaintiffs Jim Beicker, Rick Besecker, Ronald Bruce, David Campbell, James (Jim) Casias, Miles Clark, John B. Cooke, James Crone, Douglas Darr, Chad Day, Rick Dunlap, David Encinias, Mike Ensminger, James Faull, Rod Fenske, Scott Fischer, Forrest Frazee, Peter Gonzalez, Bruce W. Hartman, Shayne Heap, Stan Hilkey, Fred Hosselkus, Tim Jantz, Fred Jobe, Chris S. Johnson, Donald Krueger, Larry Kuntz, Sue Kurtz, Terry Maketa, Jerry Martin, Dominic Mattivi, Jr, Fred D. McKee, Amos Medina, Ted B. Mink, John Minor, Tom Nestor, Bruce Newman, Mike Norris, Brian E. Norton, Randy Peck, Brett L. Powell, Ken Putnam, Tom Ridnour, Grayson Robinson, Duke Schirard, Justin Smith, Dennis Spruell, Dave Stong, David Strumillo, Charles "Rob" Urbach, Lou Vallario, David A. Weaver, Fred Wegener, Garrett Wiggins, Si Woodruff. (Attachments: # 1 Proposed Document Second Amended Complaint)(Kopel, David) (Entered: 07/01/2013) |
| 07/05/2013 | 47 | Joint MOTION for Protective Order by Plaintiffs 2nd Amendment Gunsmith &Shooter Supply, LLC, David Bayne, Jim Beicker, Rick Besecker, Ronald Bruce, Burrud Arms Inc., David Campbell, James (Jim) Casias, Miles Clark, Colorado Farm Bureau, Colorado Outfitters Association, Colorado State Shooting Association, Colorado Youth Outdoors, John B. Cooke, James Crone, Douglas Darr, Chad Day, Rick Dunlap, David Encinias, Mike Ensminger, James Faull, Rod Fenske, Scott Fischer, Forrest Frazee, Peter Gonzalez, Goods for the Woods, Grand Prix Guns, Green Mountain Guns, Hamilton Family Enterprises, Inc., Dylan Harrell, Bruce W. Hartman, Shayne Heap, Stan Hilkey, Fred Hosselkus, Tim Jantz, Jerry's Outdoor Sports, Fred Jobe, Chris S. Johnson, Donald Krueger, Larry Kuntz, Sue Kurtz, Magpul Industries, Terry Maketa, Jerry Martin, Dominic Mattivi, Jr, Fred D. McKee, Amos Medina, Ted B. Mink, John Minor, National Shooting Sports Foundation, Tom Nestor, Bruce Newman, Mike Norris, Brian E. Norton, Outdoor Buddies, Inc., Randy Peck, Brett L. Powell, Ken Putnam, Tom Ridnour, Grayson Robinson, Rocky Mountain Shooters Supply, Duke Schirard, Justin Smith, Specialty Sports &Supply, Dennis Spruell, Dave Stong, David Strumillo, USA Liberty Arms, Charles "Rob" Urbach, Lou Vallario, David A. Weaver, Fred Wegener, Garrett Wiggins, Women for Concealed Carry, Si Woodruff, Defendant John W. Hickenlooper. (Attachments: # 1 Exhibit A)(Colin, Marc) (Entered: 07/05/2013) |
| 07/08/2013 | 48 | MEMORANDUM regarding 47 Joint MOTION for Protective Order filed by 2nd Amendment Gunsmith &Shooter Supply, LLC, David Campbell, John Minor, Colorado Farm Bureau, Bruce Newman, Ronald Bruce, Dominic Mattivi, Jr., David Strumillo, Burrud Arms Inc., Tim Jantz, Chad Day, David Encinias, John B. Cooke, Grand Prix Guns, Larry Kuntz, Mike Norris, Colorado Youth Outdoors, |

| | | |
|---|---|---|
| | | Bruce W. Hartman, Randy Peck, Chris S. Johnson, Outdoor Buddies, Inc., Mike Ensminger, Stan Hilkey, Colorado Outfitters Association, Rocky Mountain Shooters Supply, Peter Gonzalez, Donald Krueger, Scott Fischer, Grayson Robinson, Specialty Sports &Supply, David Bayne, Justin Smith, Fred Hosselkus, Jim Beicker, Brett L. Powell, Colorado State Shooting Association, Goods for the Woods, Dave Stong, Charles "Rob" Urbach, Rod Fenske, Ted B. Mink, Garrett Wiggins, Fred Jobe, Ken Putnam, Women for Concealed Carry, Tom Ridnour, Si Woodruff, Jerry Martin, Hamilton Family Enterprises, Inc., John W. Hickenlooper, Brian E. Norton, Rick Dunlap, James (Jim) Casias, Rick Besecker, James Crone, Miles Clark, National Shooting Sports Foundation, Sue Kurtz, Amos Medina, Douglas Darr, Green Mountain Guns, Duke Schirard, Lou Vallario, Jerry's Outdoor Sports, Dylan Harrell, USA Liberty Arms, Forrest Frazee, Magpul Industries, Fred D. McKee, Fred Wegener, Dennis Spruell, James Faull, Terry Maketa, David A. Weaver, Shayne Heap, Tom Nestor. Motions referred to Magistrate Judge Michael J. Watanabe by Chief Judge Marcia S. Krieger on 7/8/13. Text Only Entry (msksec, ) (Entered: 07/08/2013) |
| 07/08/2013 | 49 | MINUTE ORDER granting 47 Joint Motion for Protective Order. The written Stipulated Protective Order (47–1) is approved as amended in paragraphs k., l., and p. and made an Order of Court. By Magistrate Judge Michael J. Watanabe on 7/8/2013.(mjwcd) (Entered: 07/08/2013) |
| 07/08/2013 | 50 | STIPULATED PROTECTIVE ORDER entered by Magistrate Judge Michael J. Watanabe on 7/8/2013. (mjwcd) (Entered: 07/08/2013) |
| 07/08/2013 | 51 | Witness List by Plaintiffs David Bayne, Colorado Farm Bureau, Colorado Outfitters Association, Dylan Harrell, Outdoor Buddies, Inc., Women for Concealed Carry. (Krumholz, Peter) (Entered: 07/08/2013) |
| 07/08/2013 | 52 | Exhibit List by Plaintiffs David Bayne, Colorado Farm Bureau, Colorado Outfitters Association, Dylan Harrell, Outdoor Buddies, Inc., Women for Concealed Carry. (Krumholz, Peter) (Entered: 07/08/2013) |
| 07/08/2013 | 53 | STIPULATION *of Undisputed Facts* by Plaintiffs David Bayne, Colorado Farm Bureau, Colorado Outfitters Association, Colorado Youth Outdoors, Dylan Harrell, Outdoor Buddies, Inc., Women for Concealed Carry. (Krumholz, Peter) (Entered: 07/08/2013) |
| 07/09/2013 | 54 | ORDER WITH REGARD TO HEARING ON PRELIMINARY INJUNCTION MOTION SCHEDULED FOR JULY 11: The hearing will begin at 9:00 a.m. and conclude on or before 5:00 p.m. For purposes of the presentation at this hearing, the Movant(s), collectively, will be deemed a party and should coordinate their presentation. The Movant(s), on one hand, and the Respondent, on the other hand, shall each have three hours for presentation, including opening statements, presentation of evidence (direct, cross and re–direct examination), and closing arguments. The allocation of such time is entirely within the discretion of the party. If more than one attorney for a Movant wishes to examine a witness, the examination will be limited to questions not already asked by an attorney for another Movant. The time utilized for any evidentiary objections will be attributed to the party making them. The time used for any rulings will be divided equally between the parties. Time will be calculated on a chess clock by the Courtroom Deputy. Parties may confer with the Courtroom Deputy as to how much time they have consumed or have remaining. At the close of the hearing, the Court anticipates taking the matter under advisement and issuing a written ruling. by Chief Judge Marcia S. Krieger on 7/9/13. Text Only Entry (msksec, ) (Entered: 07/09/2013) |
| 07/09/2013 | 55 | ORDER CORRECTING 54 Order: The hearing date cited is incorrect. The hearing remains set for July 10, 2013, at 9:00 a.m. by Chief Judge Marcia S. Krieger on 7/9/13. Text Only Entry (msksec, ) (Entered: 07/09/2013) |
| 07/09/2013 | 56 | WITHDRAWN – Stipulated MOTION for Preliminary Injunction *and Withdrawal of Plaintiffs' Motion for Preliminary Injunction* by Plaintiffs 2nd Amendment Gunsmith &Shooter Supply, LLC, David Bayne, Jim Beicker, Rick Besecker, Ronald Bruce, Burrud Arms Inc., David Campbell, James (Jim) Casias, Miles Clark, Colorado Farm Bureau, Colorado Outfitters Association, Colorado State Shooting Association, Colorado Youth Outdoors, John B. Cooke, James Crone, |

| | | |
|---|---|---|
| | | Douglas Darr, Chad Day, Rick Dunlap, David Encinias, Mike Ensminger, James Faull, Rod Fenske, Scott Fischer, Forrest Frazee, Peter Gonzalez, Goods for the Woods, Grand Prix Guns, Green Mountain Guns, Hamilton Family Enterprises, Inc., Dylan Harrell, Bruce W. Hartman, Shayne Heap, Stan Hilkey, Fred Hosselkus, Tim Jantz, Jerry's Outdoor Sports, Fred Jobe, Chris S. Johnson, Donald Krueger, Larry Kuntz, Sue Kurtz, Magpul Industries, Terry Maketa, Jerry Martin, Dominic Mattivi, Jr, Fred D. McKee, Amos Medina, Ted B. Mink, John Minor, National Shooting Sports Foundation, Tom Nestor, Bruce Newman, Mike Norris, Brian E. Norton, Outdoor Buddies, Inc., Randy Peck, Brett L. Powell, Ken Putnam, Tom Ridnour, Grayson Robinson, Rocky Mountain Shooters Supply, Duke Schirard, Justin Smith, Specialty Sports &Supply, Dennis Spruell, Dave Stong, David Strumillo, USA Liberty Arms, Charles "Rob" Urbach, Lou Vallario, David A. Weaver, Fred Wegener, Garrett Wiggins, Women for Concealed Carry, Si Woodruff, Defendant John W. Hickenlooper. (Attachments: #_1 Proposed Order (PDF Only), #_2 Exhibit Attachment 1)(Fero, Jonathan) Modified on 7/11/2013 to withdraw pursuant to Minutes dated 7/10/2013 (klyon, ). (Entered: 07/09/2013) |
| 07/10/2013 | 57 | MINUTE ENTRY for hearing held before Chief Judge Marcia S. Krieger on 7/10/2013. 56 Stipulated Motion for Preliminary Injunction is WITHDRAWN. For the reasons stated on the record, there will be no hearing on the Motion for Preliminary Injunction (Doc. #29). Court Reporter: Terri Lindblom. (mskcd) (Entered: 07/10/2013) |
| 07/10/2013 | 58 | ORDER granting 43 Motion to Amend/Correct/Modify Amended Complaint. By Chief Judge Marcia S. Krieger on 07/10/2013. Text Only Entry(msklc3, ) (Entered: 07/10/2013) |
| 07/11/2013 | 59 | MOTION to Withdraw Document re 29 MOTION for Preliminary Injunction by Plaintiffs Magpul Industries, National Shooting Sports Foundation. (Attachments: #_1 Exhibit)(Abbott, Douglas) (Entered: 07/11/2013) |
| 07/12/2013 | 60 | ORDER granting 59 Motion to Withdraw Document. The Motion to Withdraw is GRANTED, and 29 Motion for Preliminary Injunction is hereby WITHDRAWN. The Clerk of Court shall amend the docket accordingly. By Chief Judge Marcia S. Krieger on 07/12/2013. Text Only Entry(msklc3, ) (Entered: 07/12/2013) |
| 07/17/2013 | 61 | ORDER denying 26 Motion for Order for Certification of Questions to the Colorado Supreme Court. The Defendant requests that two questions be certified to the Colorado Supreme Court, seeking an interpretation of HB–1224: (1) does the bills definition of large–capacity magazine amount to a ban on functional magazines for most handguns and many rifles, or does it apply only to magazines that are principally used with extensions or devices that increase the combined capacity to more than 15 rounds, and (2) does the grandfather clause contained in HB 13–1224, which applies when an owner maintains continuous possession of a large capacity magazine after July 1, 2013, apply when the owner allows another person to temporarily hold, use, or share it for lawful purposes? This Court may, in its discretion, certify questions to the Colorado Supreme Court under Colorado Appellate Rule 21.1. The rule permits certification if there is involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court. Colo.R.App.P. 21.1. The Court recognizes that there are unsettled questions of law at issue in this case. However, the Court declines to certify these questions. In light of the nature of the challenges brought and the context of the case as a whole, the Court finds that clarification by the Colorado Supreme Court on the specific questions posed will not be outcome–determinative of the case. Accordingly, 26 Motion for Certification of Questions of Law to the Colorado Supreme Court is DENIED. by Chief Judge Marcia S. Krieger on 7/17/2013. Text Only Entry(msk, ) (Entered: 07/17/2013) |
| 07/18/2013 | 62 | Second AMENDED COMPLAINT for Declaratory and Injunctive Relief against John W. Hickenlooper, filed by Ted B. Mink, Rick Dunlap, Hamilton Family Enterprises, Inc., Jim Beicker, Jerry's Outdoor Sports, Dennis Spruell, James Crone, Larry Kuntz, Grand Prix Guns, Brett L. Powell, Rod Fenske, Colorado Outfitters Association, Si Woodruff, Goods for the Woods, National Shooting Sports Foundation, Women for Concealed Carry, Duke Schirard, Mike Ensminger, |

|  |  | Forrest Frazee, Fred Wegener, Shayne Heap, Amos Medina, Tom Nestor, David Bayne, David Encinias, John Minor, David Strumillo, Magpul Industries, Chad Day, Peter Gonzalez, Fred Hosselkus, James (Jim) Casias, Outdoor Buddies, Inc., Colorado Farm Bureau, Specialty Sports &Supply, Grayson Robinson, Dylan Harrell, Brian E. Norton, Colorado State Shooting Association, Douglas Darr, Rocky Mountain Shooters Supply, Green Mountain Guns, 2nd Amendment Gunsmith &Shooter Supply, LLC, James Faull, Terry Maketa, John B. Cooke, Stan Hilkey, Donald Krueger, Tom Ridnour, Scott Fischer, Colorado Youth Outdoors, Lou Vallario, USA Liberty Arms, Burrud Arms Inc., Miles Clark, Fred Jobe, Garrett Wiggins, Rick Besecker, Ronald Bruce, David Campbell, Chris S. Johnson, Fred D. McKee, Ken Putnam, Bruce Newman, Justin Smith, Sue Kurtz, Jerry Martin, Mike Norris, Tim Jantz, Dominic Mattivi, Jr, David A. Weaver, Dave Stong, Randy Peck, Charles "Rob" Urbach, Bruce W. Hartman.(klyon, ) (Entered: 07/18/2013) |
| 07/24/2013 | 63 | NOTICE of Entry of Appearance by John Tien Yau Lee on behalf of All Defendants (Lee, John) (Entered: 07/24/2013) |
| 08/01/2013 | 64 | MOTION to Dismiss *Claims Two, Three, and Four, and to Dismiss Sheriffs as Plaintiffs Acting in their Official Capacities* by Defendant John W. Hickenlooper. (Attachments: # 1 Exhibit A)(Grove, Matthew) (Entered: 08/01/2013) |
| 08/01/2013 | 65 | ANSWER to 62 Amended Complaint,,,,, by John W. Hickenlooper.(Grove, Matthew) (Entered: 08/01/2013) |
| 08/02/2013 | 66 | Expert Witness Designation *of Gary Kleck, Massad Ayoob, Michael Shain, and Kevin Davis* by Plaintiffs 2nd Amendment Gunsmith &Shooter Supply, LLC, David Bayne, Jim Beicker, Rick Besecker, Ronald Bruce, Burrud Arms Inc., David Campbell, James (Jim) Casias, Miles Clark, Colorado Farm Bureau, Colorado Outfitters Association, Colorado State Shooting Association, Colorado Youth Outdoors, John B. Cooke, James Crone, Douglas Darr, Chad Day, Rick Dunlap, David Encinias, Mike Ensminger, James Faull, Rod Fenske, Scott Fischer, Forrest Frazee, Peter Gonzalez, Goods for the Woods, Grand Prix Guns, Green Mountain Guns, Hamilton Family Enterprises, Inc., Dylan Harrell, Bruce W. Hartman, Shayne Heap, Stan Hilkey, Fred Hosselkus, Tim Jantz, Jerry's Outdoor Sports, Fred Jobe, Chris S. Johnson, Rodney Johnson, Donald Krueger, Larry Kuntz, Sue Kurtz, Magpul Industries, Terry Maketa, Jerry Martin, Dominic Mattivi, Jr, Fred D. McKee, Amos Medina, Ted B. Mink, John Minor, National Shooting Sports Foundation, Tom Nestor, Bruce Newman, Mike Norris, Brian E. Norton, Outdoor Buddies, Inc., Randy Peck, Brett L. Powell, Ken Putnam, Tom Ridnour, Grayson Robinson, Rocky Mountain Shooters Supply, Duke Schirard, Justin Smith, Specialty Sports &Supply, Dennis Spruell, Dave Stong, David Strumillo, USA Liberty Arms, Charles "Rob" Urbach, Lou Vallario, David A. Weaver, Fred Wegener, Garrett Wiggins, Women for Concealed Carry, Si Woodruff. (Kopel, David) (Entered: 08/02/2013) |
| 08/09/2013 | 67 | NOTICE of Entry of Appearance by Jonathon Michael Watson on behalf of 2nd Amendment Gunsmith &Shooter Supply, LLC, Burrud Arms Inc., Goods for the Woods, Grand Prix Guns, Green Mountain Guns, Jerry's Outdoor Sports, Rocky Mountain Shooters Supply, Specialty Sports &Supply, USA Liberty Arms (Watson, Jonathon) (Entered: 08/09/2013) |
| 08/22/2013 | 68 | MOTION for Leave to *Motion To File Amicus Curiae Brief In Opposition To Defendant's Motion to Dismiss Sheriff's As Plaintiffs Acting in Their Official Capacity* by Interested Party Board of County Commissioners for Mesa County Colorado. (Attachments: # 1 Proposed Document Amicus Brief)(Dechant, Maurice) (Entered: 08/22/2013) |
| 08/22/2013 | 69 | RESPONSE to 64 MOTION to Dismiss *Claims Two, Three, and Four, and to Dismiss Sheriffs as Plaintiffs Acting in their Official Capacities* filed by Plaintiffs 2nd Amendment Gunsmith &Shooter Supply, LLC, David Bayne, Burrud Arms Inc., Colorado Farm Bureau, Colorado Outfitters Association, Colorado State Shooting Association, Colorado Youth Outdoors, Goods for the Woods, Grand Prix Guns, Green Mountain Guns, Hamilton Family Enterprises, Inc., Dylan Harrell, Jerry's Outdoor Sports, Magpul Industries, National Shooting Sports Foundation, Outdoor Buddies, Inc., Rocky Mountain Shooters Supply, Specialty |

| | | |
|---|---|---|
| | | Sports &Supply, USA Liberty Arms, Women for Concealed Carry. (Attachments: #_1 Exhibit Exhibit A to Response, #_2 Exhibit Exhibit B to Response)(Krumholz, Peter) (Entered: 08/22/2013) |
| 08/22/2013 | 70 | BRIEF in Opposition to_64 MOTION to Dismiss *Claims Two, Three, and Four, and to Dismiss Sheriffs as Plaintiffs Acting in their Official Capacities* filed by Plaintiffs Jim Beicker, Rick Besecker, Ronald Bruce, David Campbell, James (Jim) Casias, Miles Clark, John B. Cooke, James Crone, Douglas Darr, Chad Day, Rick Dunlap, David Encinias, Mike Ensminger, James Faull, Rod Fenske, Scott Fischer, Forrest Frazee, Peter Gonzalez, Bruce W. Hartman, Shayne Heap, Stan Hilkey, Fred Hosselkus, Tim Jantz, Fred Jobe, Chris S. Johnson, Rodney Johnson, Donald Krueger, Larry Kuntz, Sue Kurtz, Terry Maketa, Jerry Martin, Dominic Mattivi, Jr, Fred D. McKee, Amos Medina, Ted B. Mink, John Minor, Tom Nestor, Bruce Newman, Mike Norris, Brian E. Norton, Randy Peck, Brett L. Powell, Ken Putnam, Tom Ridnour, Grayson Robinson, Duke Schirard, Justin Smith, Dennis Spruell, Dave Stong, David Strumillo, Charles "Rob" Urbach, Lou Vallario, David A. Weaver, Fred Wegener, Garrett Wiggins, Si Woodruff. (Attachments: #_1 Exhibit Sheriff Bruce interrogatory, #_2 Exhibit Sheriff Woodruff interrogatory, #_3 Exhibit Sheriff Crone interrogatory, #_4 Exhibit Sheriff Stong interrogatory, #_5 Exhibit Sheriff Campbell interrogatory, #_6 Exhibit Sheriff Jobe interrogatory, #_7 Exhibit Sheriff Nestor interrogatory, #_8 Exhibit Sheriff Logan interrogatory, #_9 Exhibit Sheriff Spruell interrogatory, #_10 Exhibit Sheriff Faull interrogatory, #_11 Exhibit Sheriff Smith interrogatory, #_12 Exhibit Sheriff McKee interrogatory, #_13 Exhibit Sheriff Weaver interrogatory, #_14 Exhibit Sheriff Casias interrogatory, #_15 Exhibit Sheriff Beicker interrogatory, #_16 Exhibit Legislative testimony, #_17 Exhibit Ayoob expert report)(Kopel, David) (Entered: 08/22/2013) |
| 08/27/2013 | 71 | Unopposed MOTION for Extension of Time to *Amend Scheduling Order with Respect to Deadline for Rebuttal Expert Reports* by Defendant John W. Hickenlooper. (Fero, Jonathan) (Entered: 08/27/2013) |
| 08/28/2013 | 72 | MEMORANDUM regarding_71 Unopposed MOTION for Extension of Time to *Amend Scheduling Order with Respect to Deadline for Rebuttal Expert Reports* filed by John W. Hickenlooper. Motions referred to Magistrate Judge Michael J. Watanabe by Chief Judge Marcia S. Krieger on 8/28/13. Text Only Entry (msksec, ) (Entered: 08/28/2013) |
| 08/28/2013 | 73 | NOTICE of Entry of Appearance by Molly Allen Moats on behalf of John W. Hickenlooper (Moats, Molly) (Entered: 08/28/2013) |
| 08/28/2013 | 74 | MINUTE ORDER granting_71 Unopposed Motion to Amend Scheduling Order With Respect to Deadline for Rebuttal Expert Reports. The Scheduling Order (Docket No. 36 ) is thus amended such that the deadline for designation of all rebuttal experts and for providing opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) is extended from 9/3/2013, up to and including 9/13/2013. By Magistrate Judge Michael J. Watanabe on 8/28/2013.(klyon, ) (Entered: 08/28/2013) |
| 09/05/2013 | 75 | REPLY to Response to_64 MOTION to Dismiss *Claims Two, Three, and Four, and to Dismiss Sheriffs as Plaintiffs Acting in their Official Capacities* filed by Defendant John W. Hickenlooper. (Lee, John) (Entered: 09/05/2013) |
| 09/17/2013 | 76 | Unopposed MOTION for Hearing/Conference by Defendant John W. Hickenlooper. (Fero, Jonathan) (Entered: 09/17/2013) |
| 09/17/2013 | 77 | MEMORANDUM regarding_76 Unopposed MOTION for Hearing/Conference filed by John W. Hickenlooper. Motions referred to Magistrate Judge Michael J. Watanabe by Chief Judge Marcia S. Krieger on 9/17/13. Text Only Entry (msksec, ) (Entered: 09/17/2013) |
| 09/17/2013 | 78 | MINUTE ORDER granting_76 Unopposed Motion for Discovery Status Conference With Magistrate Judge. A Discovery StatusConference shall be held on Monday, 9/23/2013, at 2:30 p.m. beforeMagistrate Judge Watanabe in Courtroom A−502, Fifth Floor, Alfred A. Arraj U.S.Courthouse, 901 19th Street, Denver, Colorado 80294. By Magistrate Judge Michael J. Watanabe on 9/17/2013.(klyon, ) (Entered: 09/17/2013) |

| | | |
|---|---|---|
| 09/20/2013 | 79 | RESPONSE to 76 Unopposed MOTION for Hearing/Conference *with Magistrate Judge* filed by Plaintiffs David Bayne, Colorado Farm Bureau, Colorado Outfitters Association, Dylan Harrell, Outdoor Buddies, Inc., Women for Concealed Carry. (Attachments: # 1 Exhibit Attachment A, # 2 Exhibit Attachment B)(Krumholz, Peter) (Entered: 09/20/2013) |
| 09/23/2013 | 80 | MINUTE ORDER Due to an unexpected conflict, Status Conference 9/23/2013 02:30 PM is vacated. Status Conference reset for 9/26/2013 09:00 AM in Courtroom A 502 before Magistrate Judge Michael J. Watanabe. By Magistrate Judge Michael J. Watanabe on 9/23/2013. (mjwcd) (Entered: 09/23/2013) |
| 09/25/2013 | 81 | TRIAL PREPARATION ORDER – CIVIL by Chief Judge Marcia S. Krieger on 9/25/13. (msksec, ) (Entered: 09/25/2013) |
| 09/25/2013 | 82 | MOTION for Protective Order by Defendant John W. Hickenlooper. (Attachments: # 1 Exhibit)(Grove, Matthew) (Entered: 09/25/2013) |
| 09/25/2013 | 83 | NOTICE of Entry of Appearance by Stephanie Lindquist Scoville on behalf of John W. Hickenlooper (Scoville, Stephanie) (Entered: 09/25/2013) |
| 09/25/2013 | 84 | MEMORANDUM regarding 82 MOTION for Protective Order filed by John W. Hickenlooper. Motions referred to Magistrate Judge Michael J. Watanabe by Chief Judge Marcia S. Krieger on 9/25/13. Text Only Entry (msksec, ) (Entered: 09/25/2013) |
| 09/26/2013 | 85 | COURTROOM MINUTES/MINUTE ORDER for proceedings held before Magistrate Judge Michael J. Watanabe: Status Conference held on 9/26/2013. Scheduling Order 36 is amended. Dispositive Motions due by 12/12/2013. Plaintiffs shall have up to and including 10/4/2013 to respond to 82 Defendant's Motion for Protective order. Court Reporter: FTR – Ellen E. Miller. FTR: Courtroom A502. (mjwcd) (Entered: 09/26/2013) |
| 10/04/2013 | 86 | RESPONSE to 82 MOTION for Protective Order filed by Plaintiffs David Bayne, Colorado Farm Bureau, Colorado Outfitters Association, Dylan Harrell, Outdoor Buddies, Inc., Women for Concealed Carry. (Attachments: # 1 Exhibit)(Westfall, Richard) (Entered: 10/04/2013) |
| 10/08/2013 | 87 | REPLY to Response to 82 MOTION for Protective Order filed by Defendant John W. Hickenlooper. (Grove, Matthew) (Entered: 10/08/2013) |
| 10/10/2013 | 88 | ORDER granting 68 Motion for Leave to File an Amicus Brief. No opposition having been interposed, the Motion is GRANTED. The Defendant shall have 14 days in which to supplement its Reply to address this Brief. by Chief Judge Marcia S. Krieger on 10/10/2013. Text Only Entry(msk, ) (Entered: 10/10/2013) |
| 10/24/2013 | 89 | Unopposed MOTION for Extension of Time to *respond to Mesa County Commissioners' amicus brief* by Defendant John W. Hickenlooper. (Attachments: # 1 Proposed Order (PDF Only))(Spalding, Kathleen) (Entered: 10/24/2013) |
| 10/25/2013 | 90 | ORDER granting 89 Unopposed Motion for Extension of Time to Respond to Mesa County Commissioners' Amicus Brief. Extension granted up to and including November 1, 2013. by Chief Judge Marcia S. Krieger on 10/25/13. Text Only Entry(msksec, ) (Entered: 10/25/2013) |
| 10/28/2013 | 91 | ORDER granting 82 Defendant Hickenlooper's Motion for Protective Order. Plaintiffs are not permitted to take the deposition of Defendant Governor John W. Hickenlooper; each party shall pay their own attorney fees and costs for this motion, by Magistrate Judge Michael J. Watanabe on 10/28/2013.(mjwcd) (Entered: 10/28/2013) |
| 11/01/2013 | 92 | SURREPLY re 64 MOTION to Dismiss *Claims Two, Three, and Four, and to Dismiss Sheriffs as Plaintiffs Acting in their Official Capacities* filed by Defendant John W. Hickenlooper. (Lee, John) (Entered: 11/01/2013) |
| 11/07/2013 | 93 | Unopposed MOTION for Discovery *Cutoff Extension* by Defendant John W. Hickenlooper. (Attachments: # 1 Proposed Order (PDF Only))(Grove, Matthew) (Entered: 11/07/2013) |

| 11/08/2013 | 94 | MEMORANDUM regarding 93 Unopposed MOTION for Discovery *Cutoff Extension* filed by John W. Hickenlooper. Motions referred to Magistrate Judge Michael J. Watanabe by Chief Judge Marcia S. Krieger on 11/8/13. Text Only Entry (msksec, ) (Entered: 11/08/2013) |
|---|---|---|
| 11/12/2013 | 95 | MINUTE ORDER granting 93 defendant's Unopposed Motion for Extension of Discovery Deadline. Scheduling Order 36 is amended. Discovery due by 11/13/2013. By Magistrate Judge Michael J. Watanabe on 11/12/2013.(mjwcd) (Entered: 11/12/2013) |
| 11/27/2013 | 96 | Opinon and ORDER granting in part and denying in part Defendant's 64 Motion to Dismiss. The Defendant's Motion to Dismiss is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED with respect to all claims asserted by the Sheriffs. The claims are DISMISSED without prejudice. Any Sheriff shall have 14 days from the date of this Order in which to seek to join the action in an individual capacity. The motion is GRANTED with respect to the Plaintiffs' claim that the phrase "designed to be readily converted," found in § 18–12–301(2)(a)(I), is unconstitutionally vague, and the claim is DISMISSED. The claims proceeding in this case are (1) Second Amendment challenges to §§ 18–12–301 et seq. and § 18–12–112; (2) a claim for unconstitutional vagueness as to the phrase "continuous possession," § 18–12–302(2)(a)(II); and (3) the ADA claims. By Chief Judge Marcia S. Krieger on 11/27/2013.(klyon, ) (Entered: 11/27/2013) |
| 12/04/2013 | 97 | MOTION for Extension of Time to *File Dispositive Motions* by Defendant John W. Hickenlooper. (Attachments: # 1 Proposed Order (PDF Only))(Spalding, Kathleen) (Entered: 12/04/2013) |
| 12/06/2013 | 98 | RESPONSE to 97 MOTION for Extension of Time to *File Dispositive Motions* filed by Plaintiffs David Bayne, Colorado Farm Bureau, Colorado Outfitters Association, Colorado Youth Outdoors, Dylan Harrell, Outdoor Buddies, Inc., Women for Concealed Carry. (Krumholz, Peter) (Entered: 12/06/2013) |
| 12/09/2013 | 99 | ORDER AND NOTICE OF LAW AND MOTION HEARING: The following matter is set for a non–evidentiary hearing on the law and motion calendar for **12/19/2013 at 03:00 PM** in Courtroom A 901 before Chief Judge Marcia S. Krieger. Counsel shall bring their calendars and be prepared to address the 97 MOTION for Extension of Time to *File Dispositive Motions* filed by John W. Hickenlooper. by Chief Judge Marcia S. Krieger on 12/9/13. Text Only Entry (msksec, ) (Entered: 12/09/2013) |
| 12/09/2013 | 100 | ORDER AMENDING 99 Order: Pursuant to Fed. R. Civ. P. 16(a) and (c), the parties shall be prepared to address (1) whether any (and if so, what) matter is appropriate for consideration under Rule 56, (2) how summary adjudication under Rule 56 would streamline or avoid trial, (3) what issues or claims should be tried, (4) whether a separate trial under Rule 42(b) is appropriate for any claim, (5) when a proposed final pretrial order should be submitted and a final pretrial conference held, and (6) any other way the just, speedy, and inexpensive disposition of the action may be accomplished. by Chief Judge Marcia S. Krieger on 12/9/13. Text Only Entry (msksec, ) (Entered: 12/09/2013) |
| 12/09/2013 | 101 | ORDER granting 97 Motion for Extension of Time. The motion is GRANTED until a date to be determined at the law and motion hearing set for 12/19/2013. By Chief Judge Marcia S. Krieger on 12/9/13. Text Only Entry(msklc3, ) (Entered: 12/09/2013) |
| 12/09/2013 | 102 | Unopposed MOTION to Amend/Correct/Modify 96 Order on Motion to Dismiss,,, by Plaintiffs 2nd Amendment Gunsmith &Shooter Supply, LLC, David Bayne, Jim Beicker, Rick Besecker, Ronald Bruce, Burrud Arms Inc., David Campbell, James (Jim) Casias, Miles Clark, Colorado Farm Bureau, Colorado Outfitters Association, Colorado State Shooting Association, Colorado Youth Outdoors, John B. Cooke, James Crone, Douglas Darr, Chad Day, Rick Dunlap, David Encinias, Mike Ensminger, James Faull, Rod Fenske, Scott Fischer, Forrest Frazee, Peter Gonzalez, Goods for the Woods, Grand Prix Guns, Green Mountain Guns, Hamilton Family Enterprises, Inc., Dylan Harrell, Bruce W. Hartman, Shayne Heap, Stan Hilkey, Fred Hosselkus, Tim Jantz, Jerry's Outdoor Sports, Fred Jobe, Chris S. Johnson, Rodney Johnson, Donald Krueger, Larry Kuntz, Sue Kurtz, Magpul Industries, Terry Maketa, Jerry Martin, Dominic Mattivi, Jr, Fred D. |

| | | |
|---|---|---|
| | | McKee, Amos Medina, Ted B. Mink, John Minor, National Shooting Sports Foundation, Tom Nestor, Bruce Newman, Mike Norris, Brian E. Norton, Outdoor Buddies, Inc., Randy Peck, Brett L. Powell, Ken Putnam, Tom Ridnour, Grayson Robinson, Rocky Mountain Shooters Supply, Duke Schirard, Justin Smith, Specialty Sports &Supply, Dennis Spruell, Dave Stong, David Strumillo, USA Liberty Arms, Charles "Rob" Urbach, Lou Vallario, David A. Weaver, Fred Wegener, Garrett Wiggins, Women for Concealed Carry, Si Woodruff. (Krumholz, Peter) (Entered: 12/09/2013) |
| 12/10/2013 | <u>103</u> | NOTICE re 99 Order, *Concerning Unavailability of Counsel* by Plaintiffs David Bayne, Colorado Farm Bureau, Colorado Outfitters Association, Colorado Youth Outdoors, Dylan Harrell, Outdoor Buddies, Inc., Women for Concealed Carry (Krumholz, Peter) (Entered: 12/10/2013) |
| 12/11/2013 | <u>104</u> | MOTION for Joinder , MOTION for Leave to *File 3d Amended Complaint* by Plaintiffs Jim Beicker, Rick Besecker, Ronald Bruce, David Campbell, James (Jim) Casias, Miles Clark, John B. Cooke, James Crone, Douglas Darr, Chad Day, Rick Dunlap, David Encinias, Mike Ensminger, James Faull, Rod Fenske, Scott Fischer, Forrest Frazee, Peter Gonzalez, Bruce W. Hartman, Shayne Heap, Stan Hilkey, Fred Hosselkus, Tim Jantz, Fred Jobe, Chris S. Johnson, Rodney Johnson, Donald Krueger, Larry Kuntz, Sue Kurtz, Terry Maketa, Jerry Martin, Dominic Mattivi, Jr, Fred D. McKee, Amos Medina, Ted B. Mink, John Minor, Tom Nestor, Bruce Newman, Mike Norris, Brian E. Norton, Randy Peck, Brett L. Powell, Ken Putnam, Tom Ridnour, Grayson Robinson, Duke Schirard, Justin Smith, Dennis Spruell, Dave Stong, David Strumillo, Charles "Rob" Urbach, Lou Vallario, David A. Weaver, Fred Wegener, Garrett Wiggins, Si Woodruff. (Attachments: #<u>1</u> Exhibit 3d Am. Complaint, with strikethroughs, #<u>2</u> Deposition Excerpts Exhibit C. Wagner deposition, #<u>3</u> Exhibit Exhibit D. AG response to FFL discovery, #<u>4</u> Exhibit Exhibit E. AG response to Sheriffs discovery, #<u>5</u> Exhibit Exhibit F. CBI documents, #<u>6</u> Deposition Excerpts Exhibit G. Sloan deposition, #<u>7</u> Exhibit Exhibit H. AG response to 2d non–profit discovery, #<u>8</u> Exhibit Exhibit I. AG response to 1st non–profit discovery)(Kopel, David) (Entered: 12/11/2013) |
| 12/11/2013 | <u>105</u> | Unopposed MOTION for Leave to Restrict Document as to docket entry #<u>106</u> *(Exhibits Ato 3d Am. Complaint* by Plaintiffs Jim Beicker, Rick Besecker, Ronald Bruce, David Campbell, James (Jim) Casias, Miles Clark, John B. Cooke, James Crone, Douglas Darr, Chad Day, Rick Dunlap, David Encinias, Mike Ensminger, James Faull, Rod Fenske, Scott Fischer, Forrest Frazee, Peter Gonzalez, Bruce W. Hartman, Shayne Heap, Stan Hilkey, Fred Hosselkus, Tim Jantz, Fred Jobe, Chris S. Johnson, Rodney Johnson, Donald Krueger, Larry Kuntz, Sue Kurtz, Terry Maketa, Jerry Martin, Dominic Mattivi, Jr, Fred D. McKee, Amos Medina, Ted B. Mink, John Minor, Tom Nestor, Bruce Newman, Mike Norris, Brian E. Norton, Randy Peck, Brett L. Powell, Ken Putnam, Tom Ridnour, Grayson Robinson, Duke Schirard, Justin Smith, Dennis Spruell, Dave Stong, David Strumillo, Charles "Rob" Urbach, Lou Vallario, David A. Weaver, Fred Wegener, Garrett Wiggins, Si Woodruff. (Kopel, David) Modified on 12/12/2013 to correct linkage(klyon, ). (Entered: 12/11/2013) |
| 12/11/2013 | <u>106</u> | RESTRICTED DOCUMENT – Level 1: by Plaintiffs Jim Beicker, Rick Besecker, Ronald Bruce, David Campbell, James (Jim) Casias, Miles Clark, John B. Cooke, James Crone, Douglas Darr, Chad Day, Rick Dunlap, David Encinias, Mike Ensminger, James Faull, Rod Fenske, Scott Fischer, Forrest Frazee, Peter Gonzalez, Bruce W. Hartman, Shayne Heap, Stan Hilkey, Fred Hosselkus, Tim Jantz, Fred Jobe, Chris S. Johnson, Rodney Johnson, Donald Krueger, Larry Kuntz, Sue Kurtz, Terry Maketa, Jerry Martin, Dominic Mattivi, Jr, Fred D. McKee, Amos Medina, Ted B. Mink, John Minor, Tom Nestor, Bruce Newman, Mike Norris, Brian E. Norton, Randy Peck, Brett L. Powell, Ken Putnam, Tom Ridnour, Grayson Robinson, Duke Schirard, Justin Smith, Dennis Spruell, Dave Stong, David Strumillo, Charles "Rob" Urbach, Lou Vallario, David A. Weaver, Fred Wegener, Garrett Wiggins, Si Woodruff.. Motions due by 12/30/2013. (Attachments: #<u>1</u> Exhibit Exhibit B. Sheriff Declarations)(Kopel, David) (Entered: 12/11/2013) |
| 12/11/2013 | 109 | Exhibits in Support of <u>62</u> Amended Complaint, by Plaintiffs 2nd Amendment Gunsmith &Shooter Supply, LLC, David Bayne, Burrud Arms Inc., Colorado Farm Bureau, Colorado Outfitters Association, Colorado State Shooting Association, |

| | | |
|---|---|---|
| | | Colorado Youth Outdoors, Goods for the Woods, Grand Prix Guns, Green Mountain Guns, Hamilton Family Enterprises, Inc., Dylan Harrell, Jerry's Outdoor Sports, Magpul Industries, National Shooting Sports Foundation, Outdoor Buddies, Inc., Rocky Mountain Shooters Supply, Specialty Sports &Supply, David Strumillo, USA Liberty Arms, Women for Concealed Carry. (Public Entry for 106 Restricted Document – Level 1) (Text only entry) (klyon, ) (Entered: 12/12/2013) |
| 12/12/2013 | 107 | ORDER denying 102 Motion to Amend/Correct/Modify. Having reviewed the Second Amended Complaint, the Court finds that under the standards of Ashcroft v. Iqbal, 556 U.S. 663 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), there is no plausible claim stated by any individual currently serving as sheriff. Therefore, no further clarification or modification of the Courts November 27, 2013, Order 96 on the Motion to Dismiss is appropriate. The motion is DENIED. By Chief Judge Marcia S. Krieger on 12/12/2013. Text Only Entry(msklc3, ) (Entered: 12/12/2013) |
| 12/12/2013 | 108 | ORDER: The motions filed at 104 and 105 will be heard at the Law and Motion hearing set for 12/19/2013 at 03:00 PM in Courtroom A 901 before Chief Judge Marcia S. Krieger. By Chief Judge Marcia S. Krieger on 12/12/2013. Text Only Entry (msklc3, ) (Entered: 12/12/2013) |
| 12/12/2013 | 110 | NOTICE *Concerning Unavailability for December 19 Non−Evidentiary Hearing* by Plaintiffs 2nd Amendment Gunsmith &Shooter Supply, LLC, Burrud Arms Inc., Goods for the Woods, Grand Prix Guns, Green Mountain Guns, Jerry's Outdoor Sports, Rocky Mountain Shooters Supply, Specialty Sports &Supply, USA Liberty Arms (Colin, Marc) (Entered: 12/12/2013) |
| 12/17/2013 | 111 | NOTICE re 106 Restricted Document – Level 1,,, 105 Unopposed MOTION for Leave to Restrict Document as to docket entry # 104 *(Exhibits Ato 3d Am. Complaint* by Plaintiffs Jim Beicker, Rick Besecker, Ronald Bruce, David Campbell, James (Jim) Casias, Miles Clark, John B. Cooke, James Crone, Douglas Darr, Chad Day, Rick Dunlap, David Encinias, Mike Ensminger, James Faull, Rod Fenske, Scott Fischer, Forrest Frazee, Peter Gonzalez, Bruce W. Hartman, Shayne Heap, Stan Hilkey, Fred Hosselkus, Tim Jantz, Fred Jobe, Chris S. Johnson, Rodney Johnson, Donald Krueger, Larry Kuntz, Sue Kurtz, Terry Maketa, Jerry Martin, Dominic Mattivi, Jr, Fred D. McKee, Amos Medina, Ted B. Mink, John Minor, Tom Nestor, Bruce Newman, Mike Norris, Brian E. Norton, Randy Peck, Brett L. Powell, Ken Putnam, Tom Ridnour, Grayson Robinson, Duke Schirard, Justin Smith, Dennis Spruell, Dave Stong, David Strumillo, Charles "Rob" Urbach, Lou Vallario, David A. Weaver, Fred Wegener, Garrett Wiggins, Si Woodruff (Kopel, David) (Entered: 12/17/2013) |
| 12/18/2013 | 112 | RESPONSE to 104 MOTION for Joinder MOTION for Leave to *File 3d Amended Complaint* filed by Defendant John W. Hickenlooper. (Grove, Matthew) (Entered: 12/18/2013) |
| 12/18/2013 | 113 | REPLY to Response to 104 MOTION for Joinder MOTION for Leave to *File 3d Amended Complaint and Motion for Leave to File Substitute Third Amended Complaint* filed by Plaintiffs Jim Beicker, Rick Besecker, Ronald Bruce, David Campbell, James (Jim) Casias, Miles Clark, John B. Cooke, James Crone, Douglas Darr, Chad Day, Rick Dunlap, David Encinias, Mike Ensminger, James Faull, Rod Fenske, Scott Fischer, Forrest Frazee, Peter Gonzalez, Bruce W. Hartman, Shayne Heap, Stan Hilkey, Fred Hosselkus, Tim Jantz, Fred Jobe, Chris S. Johnson, Rodney Johnson, Donald Krueger, Larry Kuntz, Sue Kurtz, Terry Maketa, Jerry Martin, Dominic Mattivi, Jr, Fred D. McKee, Amos Medina, Ted B. Mink, John Minor, Tom Nestor, Bruce Newman, Mike Norris, Brian E. Norton, Randy Peck, Brett L. Powell, Ken Putnam, Tom Ridnour, Grayson Robinson, Duke Schirard, Justin Smith, Dennis Spruell, Dave Stong, David Strumillo, Charles "Rob" Urbach, Lou Vallario, David A. Weaver, Fred Wegener, Garrett Wiggins, Si Woodruff. (Attachments: # 1 Exhibit Substitute 3d Amended Complaint)(Kopel, David) (Entered: 12/18/2013) |
| 12/19/2013 | 114 | NOTICE of Change of Address/Contact Information by Richard A. Westfall (Westfall, Richard) (Entered: 12/19/2013) |

| | | |
|---|---|---|
| 12/19/2013 | 115 | MINUTE ENTRY for Law and Motion Hearing held before Chief Judge Marcia S. Krieger on 12/19/2013. 104 Motion for Joinder is GRANTED in part and DENIED in part; 105 Motion for Leave to Restrict is DENIED, but the exhibits will remain under restriction. Proposed Pretrial Order due by 1/31/2014; Final Pretrial Conference set for 2/20/2014 03:00 PM; Bench Trial (10 days) set for 3/31/2014 – o4/04/14 and 04/07/2014 – 04/11/2014 at 08:30 AM in Courtroom A 901 before Chief Judge Marcia S. Krieger. Other matters addressed or deadlines imposed are set forth in the Minutes. Court Reporter: Terri Lindblom. (mskcd) (Entered: 12/20/2013) |
| 12/23/2013 | 116 | AMENDED COMPLAINT *(Fourth)* against All Defendants, filed by Hamilton Family Enterprises, Inc., Jerry's Outdoor Sports, Larry Kuntz, Colorado Outfitters Association, Goods for the Woods, National Shooting Sports Foundation, Women for Concealed Carry, David Bayne, David Strumillo, Peter Gonzalez, Magpul Industries, Outdoor Buddies, Inc., Colorado Farm Bureau, Dylan Harrell, Specialty Sports &Supply, Colorado State Shooting Association, Douglas Darr, Rocky Mountain Shooters Supply, Green Mountain Guns, 2nd Amendment Gunsmith &Shooter Supply, LLC, James Faull, John B. Cooke, Stan Hilkey, Donald Krueger, Colorado Youth Outdoors, Burrud Arms Inc., USA Liberty Arms, Fred Jobe, Ken Putnam, Sue Kurtz, Dave Stong.(Kopel, David) (Entered: 12/23/2013) |
| 01/03/2014 | 117 | *Objections and* ANSWER to 116 Amended Complaint,, by John W. Hickenlooper.(Grove, Matthew) (Entered: 01/03/2014) |
| 01/15/2014 | 118 | Joint MOTION to Strike *Expert Opinions Per FRE 702* by Plaintiffs 2nd Amendment Gunsmith &Shooter Supply, LLC, David Bayne, Burrud Arms Inc., Colorado Farm Bureau, Colorado Outfitters Association, Colorado State Shooting Association, Colorado Youth Outdoors, John B. Cooke, Douglas N. Darr, James Faull, Peter Gonzalez, Goods for the Woods, Green Mountain Guns, Hamilton Family Enterprises, Inc., Dylan Harrell, Stan Hilkey, Jerry's Outdoor Sports, Fred Jobe, Donald Krueger, Larry Kuntz, Sue Kurtz, Magpul Industries, National Shooting Sports Foundation, Outdoor Buddies, Inc., Ken Putnam, Rocky Mountain Shooters Supply, Specialty Sports &Supply, Dave Stong, David Strumillo, USA Liberty Arms, Women for Concealed Carry, Interested Party Board of County Commissioners for Mesa County Colorado. (Watson, Jonathon) (Entered: 01/15/2014) |
| 01/31/2014 | 119 | Proposed Pretrial Order *filed jointly by all parties* by Plaintiffs John B. Cooke, Douglas N. Darr, James Faull, Peter Gonzalez, Stan Hilkey, Fred Jobe, Donald Krueger, Larry Kuntz, Sue Kurtz, Ken Putnam, Dave Stong, David Strumillo. (Attachments: # 1 Exhibit Addendum A. Witness list, # 2 Exhibit Addendum B. Exhibit list)(Kopel, David) (Entered: 01/31/2014) |
| 02/11/2014 | 120 | Unopposed MOTION to Withdraw as Attorney by Plaintiffs 2nd Amendment Gunsmith &Shooter Supply, LLC, Burrud Arms Inc., Goods for the Woods, Green Mountain Guns, Jerry's Outdoor Sports, Rocky Mountain Shooters Supply, Specialty Sports &Supply, USA Liberty Arms. (Watson, Jonathon) (Entered: 02/11/2014) |
| 02/12/2014 | 121 | MEMORANDUM regarding 120 Unopposed MOTION to Withdraw as Attorney filed by 2nd Amendment Gunsmith &Shooter Supply, LLC, Green Mountain Guns, Goods for the Woods, Specialty Sports &Supply, Jerry's Outdoor Sports, USA Liberty Arms, Rocky Mountain Shooters Supply, Burrud Arms Inc.Motions referred to Magistrate Judge Michael J. Watanabe by Chief Judge Marcia S. Krieger on 2/12/14. Text Only Entry (msksec, ) (Entered: 02/12/2014) |
| 02/12/2014 | 122 | MINUTE ORDER granting 120 Motion to Withdraw as Attorney. Attorney Jonathon Michael Watson terminated, by Magistrate Judge Michael J. Watanabe on 2/12/2014. Text Only Entry(mjwcd) (Entered: 02/12/2014) |
| 02/14/2014 | 123 | WITHDRAWN – Unopposed MOTION for Order to *Close Courtroom during Portions of Testimony by Aurora Police Chief Daniel Oates* by Defendant John W. Hickenlooper. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Grove, Matthew) Modified on 4/8/2014 to withdraw pursuant to Minute Entry dated 4/7/2014. (klyon, ). (Entered: 02/14/2014) |

| 02/14/2014 | 124 | WITHDRAWN – Unopposed MOTION for Leave to Restrict by Plaintiffs John B. Cooke, Douglas N. Darr, James Faull, Peter Gonzalez, Stan Hilkey, Fred Jobe, Donald Krueger, Larry Kuntz, Sue Kurtz, Ken Putnam, Dave Stong, David Strumillo. (Kopel, David) Modified on 2/21/2014 to withdraw pursuant to Minute Entry dated 2/20/2014 (klyon, ). (Entered: 02/14/2014) |
|---|---|---|
| 02/20/2014 | 125 | Exhibit List *Amended* by Defendant John W. Hickenlooper. (Grove, Matthew) (Entered: 02/20/2014) |
| 02/20/2014 | 126 | NOTICE of Entry of Appearance by LeeAnn Morrill on behalf of John W. HickenlooperAttorney LeeAnn Morrill added to party John W. Hickenlooper(pty:dft) (Morrill, LeeAnn) (Entered: 02/20/2014) |
| 02/20/2014 | 127 | MINUTE ENTRY for Final Pretrial Conference held before Chief Judge Marcia S. Krieger on 2/20/2014. 124 Motion for Leave to Restrict is WITHDRAWN. Other matters addressed, including deadlines, if any, are set forth in the Minutes. Court Reporter: Terri Lindblom. (pglov) (Entered: 02/20/2014) |
| 02/26/2014 | 128 | NOTICE of Entry of Appearance by David Robert Frankel on behalf of Board of County Commissioners for Mesa County ColoradoAttorney David Robert Frankel added to party Board of County Commissioners for Mesa County Colorado(pty:ip) (Frankel, David) (Entered: 02/26/2014) |
| 02/28/2014 | 129 | Witness List *Amended Joint Witness List* by Plaintiffs 2nd Amendment Gunsmith &Shooter Supply, LLC, David Bayne, Jim Beicker, Rick Besecker, Ronald Bruce, Burrud Arms Inc., David Campbell, James (Jim) Casias, Miles Clark, Colorado Farm Bureau, Colorado Outfitters Association, Colorado State Shooting Association, Colorado Youth Outdoors, John B. Cooke, John B. Cooke, James Crone, Douglas N. Darr, Chad Day, Rick Dunlap, David Encinias, Mike Ensminger, James Faull, Rod Fenske, Scott Fischer, Forrest Frazee, Peter Gonzalez, Goods for the Woods, Grand Prix Guns, Green Mountain Guns, Hamilton Family Enterprises, Inc., Dylan Harrell, Bruce W. Hartman, Shayne Heap, Stan Hilkey, Fred Hosselkus, Tim Jantz, Jerry's Outdoor Sports, Fred Jobe, Chris S. Johnson, Rodney Johnson, Donald Krueger, Larry Kuntz, Sue Kurtz, Magpul Industries, Terry Maketa, Jerry Martin, Dominic Mattivi, Jr, Fred D. McKee, Amos Medina, Ted B. Mink, John Minor, National Shooting Sports Foundation, Tom Nestor, Bruce Newman, Mike Norris, Brian E. Norton, Outdoor Buddies, Inc., Randy Peck, Brett L. Powell, Ken Putnam, Tom Ridnour, Grayson Robinson, Rocky Mountain Shooters Supply, Duke Schirard, Justin Smith, Specialty Sports &Supply, Dennis Spruell, Dave Stong, David Strumillo, USA Liberty Arms, Charles "Rob" Urbach, Lou Vallario, David A. Weaver, Fred Wegener, Garrett Wiggins, Women for Concealed Carry, Si Woodruff. (Krumholz, Peter) (Entered: 02/28/2014) |
| 03/03/2014 | 130 | First MOTION to Withdraw as Attorney by Defendant Mesa County, Board of County Commissioners. (Attachments: # 1 Proposed Order (PDF Only))(Frankel, David) (Entered: 03/03/2014) |
| 03/03/2014 | 131 | MEMORANDUM regarding 130 First MOTION to Withdraw as Attorney filed by Mesa County, Board of County Commissioners. Motions referred to Magistrate Judge Michael J. Watanabe by Chief Judge Marcia S. Krieger on 3/3/14. Text Only Entry (msksec, ) (Entered: 03/03/2014) |
| 03/03/2014 | 132 | MINUTE ORDER granting 130 Motion to Withdraw as Attorney. Attorney Maurice L. Dechant terminated. By Magistrate Judge Michael J. Watanabe on 3/3/2014. Text Only Entry(mjwcd) (Entered: 03/03/2014) |
| 03/07/2014 | 133 | MOTION to Dismiss *Count I and Certain Plaintiffs for Lack of Standing* by Defendant John W. Hickenlooper. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H)(Grove, Matthew) (Entered: 03/07/2014) |
| 03/14/2014 | 134 | RESPONSE to 133 MOTION to Dismiss *Count I and Certain Plaintiffs for Lack of Standing* filed by Plaintiffs David Bayne, Colorado Farm Bureau, Colorado Outfitters Association, Dylan Harrell, Outdoor Buddies, Inc., Women for Concealed Carry. (Westfall, Richard) (Entered: 03/14/2014) |

| 03/14/2014 | 135 | TRIAL BRIEF by Defendant John W. Hickenlooper. (Grove, Matthew) (Entered: 03/14/2014) |
|---|---|---|
| 03/14/2014 | 136 | TRIAL BRIEF by Plaintiffs John B. Cooke, Douglas N. Darr, James Faull, Peter Gonzalez, Stan Hilkey, Fred Jobe, Donald Krueger, Larry Kuntz, Sue Kurtz, Ken Putnam, Dave Stong, David Strumillo. (Kopel, David) (Entered: 03/14/2014) |
| 03/19/2014 | 137 | MOTION in Limine *or, in the Alternative, Forthwith Motion for Bifurcation and Continuance With Respect to Plaintiffs' Fifth Claim for Relief* by Defendant John W. Hickenlooper. (Grove, Matthew) (Entered: 03/19/2014) |
| 03/21/2014 | 138 | RESPONSE to 137 MOTION in Limine *or, in the Alternative, Forthwith Motion for Bifurcation and Continuance With Respect to Plaintiffs' Fifth Claim for Relief* filed by Plaintiffs David Bayne, Colorado Farm Bureau, Colorado Outfitters Association, Dylan Harrell, Outdoor Buddies, Inc., Women for Concealed Carry. (Westfall, Richard) (Entered: 03/21/2014) |
| 03/21/2014 | 139 | REPLY to Response to 137 MOTION in Limine *or, in the Alternative, Forthwith Motion for Bifurcation and Continuance With Respect to Plaintiffs' Fifth Claim for Relief* filed by Defendant John W. Hickenlooper. (Grove, Matthew) (Entered: 03/21/2014) |
| 03/21/2014 | 140 | ORDER on 137 Motion in Limine, the Plaintiffs' Response, and the Defendant's Reply. Having considered the parties' joint final pretrial order, and the Plaintiffs' trial brief, specifically footnote 5 and pages 18–20, the Court finds that the trial brief asserts a new contention that C.R.S.§ 18–12–112 is unconstitutional. The new contention pertains to Colorado citizens aged 18–20 years old, and the interplay of §18–12–112 with applicable federal law. Such contention was not disclosed in any of the five versions of the Plaintiffs' complaint, nor was it disclosed in the final pretrial order found at Docket #119, which was approved by this Court. Whether such contention is construed as a claim or theory, it exceeds the scope of the arguments and evidence to be tried beginning March 31, 2014. In the exercise of the Court's discretion, see Hullman v. Bd. of Trustees, 950 F.2d 665, 668 (10th Cir. 1999), the Court GRANTS the Defendant's Motion in Limine and excludes all evidence pertinent thereto. By Chief Judge Marcia S. Krieger on 3/21/2014. Text Only Entry(msklc3, ) (Entered: 03/21/2014) |
| 03/25/2014 | 141 | Joint MOTION for Order to *Use or Display Firearms Magazines at Trial* by Defendant John W. Hickenlooper. (Spalding, Kathleen) (Entered: 03/25/2014) |
| 03/26/2014 | 142 | ORDER granting 141 Joint Motion Concerning the Use or Display of Firearms Magazines at Trial. Failure to follow the issued protocol will result in the denial of any firearm and/or magazine being permitted into the courthouse for purposes of use at trial. by Chief Judge Marcia S. Krieger on 3/26/14.(msksec, ) (Entered: 03/26/2014) |
| 03/31/2014 | 143 | MINUTE ENTRY for Bench Trial Day One held before Chief Judge Marcia S. Krieger on 3/31/2014. Oral motion for sequestration of non–party lay witnesses for remainder of trial is GRANTED. Opening statements. Witness testimony, exhibits received/refused and other matters addressed are set forth in the Minutes. Trial continues. Court Reporter: Terri Lindblom. (pglov) (Entered: 03/31/2014) |
| 04/01/2014 | 144 | WITHDRAWN – MOTION in Limine *to Exclude Evidence Related to Three Plaintiffs at Trial* by Defendant John W. Hickenlooper. (Attachments: #1 Exhibit A, #2 Exhibit B, #3 Exhibit C, #4 Exhibit D, #5 Exhibit E, #6 Exhibit F)(Morrill, LeeAnn) Modified on 4/8/2014 to withdraw pursuant to Minute Entry dated 4/7/2014, ). (Entered: 04/01/2014) |
| 04/01/2014 | 145 | MINUTE ENTRY for Bench Trial Day Two held before Chief Judge Marcia S. Krieger on 4/1/2014. Witness testimony, exhibits received/refused and other matters addressed are set forth in the Minutes. Trial continues. Court Reporter: Terri Lindblom. (rkeec) Modified on 4/3/2014 to reflect date of 4/1/2014(rkeec). (Entered: 04/03/2014) |
| 04/01/2014 | 146 | MINUTE ENTRY for proceedings held before Chief Judge Marcia S. Krieger: Amended re 145 Bench Trial – Held. Amended to reflect correct Magistrate Judge in case caption. Court Reporter: Terri Lindblom. (rkeec) (Entered: 04/03/2014) |

| 04/02/2014 | 147 | MINUTE ENTRY for Bench Trial Day Three held before Chief Judge Marcia S. Krieger on 4/2/2014. Witness testimony, exhibits received/refused and other matters addressed are set forth in the Minutes. Court Reporter: Terri Lindblom. (rkeec) (Entered: 04/03/2014) |
|---|---|---|
| 04/03/2014 | 151 | MINUTE ENTRY for Bench Trial Day Four held before Chief Judge Marcia S. Krieger held on 4/3/2014. Defendant's oral Rule 52 motion as to Plaintiffs' claim under the Americans With Disabilities Act is DEFERRED UNTIL THE CLOSE OF THE PRESENTATION OF THE EVIDENCE. Witness testimony, exhibits received/refused and other matters addressed are set forth in the Minutes. Trial continues. Court Reporter: Terri Lindblom. (rkeec) (Entered: 04/07/2014) |
| 04/04/2014 | 152 | MINUTE ENTRY for Bench Trial Day Five held before Chief Judge Marcia S. Krieger held on 4/4/2014. Witness testimony, exhibits received/refused and other matters addressed are set forth in the Minutes. Trial continues. Court Reporter: Terri Lindblom. (rkeec) (Entered: 04/07/2014) |
| 04/06/2014 | 148 | WITHDRAWN – MOTION in Limine *to Exclude Certain Trial Exibits* by Plaintiffs David Bayne, Colorado Farm Bureau, Dylan Harrell, Outdoor Buddies, Inc., Women for Concealed Carry. (Westfall, Richard) Modified on 4/10/2014 to withdraw pursuant to Minute Entry dated 4/9/2014 (klyon, ). (Entered: 04/06/2014) |
| 04/06/2014 | 149 | SUPPLEMENT/AMENDMENT to 148 MOTION in Limine *to Exclude Certain Trial Exibits* by Plaintiffs David Bayne, Colorado Farm Bureau, Colorado Outfitters Association, Dylan Harrell, Outdoor Buddies, Inc., Women for Concealed Carry. (Westfall, Richard) (Entered: 04/06/2014) |
| 04/07/2014 | 150 | MOTION in Limine *to Exclude Untimely Disclosed Expert Opinion Testimony* by Plaintiffs David Bayne, Colorado Farm Bureau, Colorado Outfitters Association, Dylan Harrell, Outdoor Buddies, Inc., Women for Concealed Carry. (Westfall, Richard) (Entered: 04/07/2014) |
| 04/07/2014 | 153 | MINUTE ENTRY for Bench Trial Day Six held before Chief Judge Marcia S. Krieger on 4/7/2014. Witness testimony, exhibits received/refused/withdrawn or ruling reserved and other matters addressed are set forth in the Minutes. Oral motion in limine is DENIED as set forth in the record. 123 Motion for Order and 144 Motion in Limine are both WITHDRAWN. Trial continues. Court Reporter: Terri Lindblom. (pglov) (Entered: 04/08/2014) |
| 04/08/2014 | 154 | MINUTE ENTRY for Bench Trial Day 7 held before Chief Judge Marcia S. Krieger on 4/8/2014. Witness testimony, exhibits received/refused/withdrawn and other matters addressed are set forth in the Minutes. Trial continues. Court Reporter: Teri Lindblom. (pglov) (Entered: 04/09/2014) |
| 04/09/2014 | 155 | MINUTE ENTRY for Bench Trial Day 8 held before Chief Judge Marcia S. Krieger on 4/9/2014. Witness testimony, exhibits received/refused/withdrawn and other matters addressed are set forth in the Minutes. 148 Motion in Limine is WITHDRAWN; 150 Motion in Limine is DENIED. Trial continues. Court Reporter: Terri Lindblom. (pglov) (Entered: 04/10/2014) |
| 04/10/2014 | 156 | MINUTE ENTRY for Bench Trial Day 9 held before Chief Judge Marcia S. Krieger completed on 4/10/2014. Evidence concluded, closing and rebuttal arguments. The Court takes the matter under advisement. Bench Trial completed. Court Reporter: Terri Lindblom. (pglov) (Entered: 04/11/2014) |
| 05/06/2014 | 157 | Unopposed MOTION to Dismiss Party *Stan Hilkey* by Plaintiff Stan Hilkey. (Kopel, David) (Entered: 05/06/2014) |
| 05/08/2014 | 158 | ORDER granting 157 Motion to Dismiss Party. Party Stan Hilkey terminated. by Chief Judge Marcia S. Krieger on 5/8/14. Text Only Entry(msksec, ) (Entered: 05/08/2014) |
| 06/26/2014 | 159 | Findings of Fact, Conclusions of Law, and Order by Chief Judge Marcia S. Krieger on 6/26/14: 133 Motion to Dismiss is denied, 118 Joint Motion to Strike Expert Opinions Per FRE 702 is granted in part and denied in part, and Colorado Revised Statutes § 18–12–112 and § 18–12–302 are compliant with the provisions of the Second and Fourteenth Amendments to the United States Constitution. (dkals, ) (Entered: 06/26/2014) |

| 06/26/2014 | <u>160</u> | JUDGMENT in favor of Defendant John W. Hickenlooper and against all Plaintiffs with costs, pursuant to <u>159</u> Findings of Fact, Conclusions of Law, and Order, by Chief Judge Marcia S. Krieger on 6/26/14. (dkals, ) (Entered: 06/26/2014) |
|---|---|---|
| 06/27/2014 | <u>161</u> | Unopposed MOTION for Extension of Time to *Extend Fed.R.Civ.P. 54 Filing Deadline* by Defendant John W. Hickenlooper. (Attachments: #<u>1</u> Proposed Order (PDF Only))(Spalding, Kathleen) (Entered: 06/27/2014) |
| 06/30/2014 | 162 | ORDER granting <u>161</u> Unopposed Motion for Extension of Time. Extension granted up to and including July 24, 2014. by Chief Judge Marcia S. Krieger on 6/30/14. Text Only Entry(msksec, ) (Entered: 06/30/2014) |
| 07/24/2014 | <u>163</u> | Proposed Bill of Costs by Defendant John W. Hickenlooper. (Attachments: #<u>1</u> Exhibit A, #<u>2</u> Appendix 1, #<u>3</u> Appendix 2, #<u>4</u> Appendix 3, #<u>5</u> Appendix 4)(Spalding, Kathleen) (Entered: 07/24/2014) |
| 07/28/2014 | <u>164</u> | NOTICE OF APPEAL as to <u>159</u> Order on Motion to Strike,, Order on Motion to Dismiss, <u>160</u> Judgment by Plaintiffs David Bayne, Colorado Farm Bureau, Colorado Outfitters Association, Dylan Harrell, Outdoor Buddies, Inc., Women for Concealed Carry (Filing fee $ 505, Receipt Number 1082–3976471) (Westfall, Richard) (Entered: 07/28/2014) |
| 07/28/2014 | <u>165</u> | NOTICE OF APPEAL as to <u>127</u> Order on Motion for Leave to Restrict,, Pretrial Conference – Final, <u>96</u> Order on Motion to Dismiss,,, <u>159</u> Order on Motion to Strike,, Order on Motion to Dismiss, 107 Order on Motion to Amend/Correct/Modify,, <u>160</u> Judgment, <u>115</u> Order on Motion for Joinder,,, Order on Motion for Leave,,, Order on Motion for Leave to Restrict,,, Motion Hearing,,, Set/Reset Deadlines/Hearings,, by Plaintiffs Jim Beicker, Rick Besecker, Ronald Bruce, David Campbell, James (Jim) Casias, Miles Clark, John B. Cooke, John B. Cooke, James Crone, Douglas N. Darr, Chad Day, Rick Dunlap, David Encinias, Mike Ensminger, James Faull, Rod Fenske, Scott Fischer, Forrest Frazee, Peter Gonzalez, Bruce W. Hartman, Shayne Heap, Fred Hosselkus, Tim Jantz, Fred Jobe, Chris S. Johnson, Rodney Johnson, Donald Krueger, Larry Kuntz, Sue Kurtz, Terry Maketa, Jerry Martin, Dominic Mattivi, Jr, Fred D. McKee, Amos Medina, Ted B. Mink, John Minor, Tom Nestor, Bruce Newman, Mike Norris, Brian E. Norton, Randy Peck, Brett L. Powell, Ken Putnam, Tom Ridnour, Grayson Robinson, Duke Schirard, Justin Smith, Dennis Spruell, Dave Stong, David Strumillo, Charles "Rob" Urbach, Lou Vallario, David A. Weaver, Fred Wegener, Garrett Wiggins, Si Woodruff (Filing fee $ 505, Receipt Number 1082–3975866) (Kopel, David) (Entered: 07/28/2014) |
| 07/28/2014 | <u>166</u> | Amended NOTICE OF APPEAL as to <u>96</u> Opinon and Order, <u>159</u> Order on Motion to Strike,, Order on Motion to Dismiss, <u>160</u> Judgment by Plaintiffs David Bayne, Colorado Farm Bureau, Colorado Outfitters Association, Dylan Harrell, Outdoor Buddies, Inc., Women for Concealed Carry (Westfall, Richard) Modified on 7/29/2014 to add text (dkals, ). (Entered: 07/28/2014) |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 13-cv-01300-MSK-MJW

**JOHN B. COOKE, Sheriff of Weld County, Colorado;
TERRY MAKETA, Sheriff of El Paso County, Colorado;
JUSTIN SMITH, Sheriff of Larimer County, Colorado;
DAVID A. WEAVER, Sheriff of Douglas County, Colorado:
BRUCE W. HARTMAN, Sheriff of Gilpin County, Colorado;
KEN PUTNAM, Sheriff of Cheyenne County, Colorado;
DENNIS SPRUELL, Sheriff of Montezuma County, Colorado;
TIM JANTZ, Sheriff of Moffat County, Colorado;
JERRY MARTIN, Sheriff of Dolores County, Colorado;
MIKE ENSMINGER, Sheriff of Teller County, Colorado;
SHAYNE HEAP, Sheriff of Elbert County, Colorado;
CHAD DAY, Sheriff of Yuma County, Colorado;
FRED D. MCKEE, Sheriff of Delta County, Colorado;
LOU VALLARIO, Sheriff of Garfield County, Colorado;
FRED HOSSELKUS, Sheriff of Mineral County, Colorado;
BRETT L. POWELL, Sheriff of Logan County, Colorado;
JAMES FAULL, Sheriff of Prowers County, Colorado;
LARRY KUNTZ, Sheriff of Washington County, Colorado;
BRIAN E. NORTON, Sheriff of Rio Grande County, Colorado;
DUKE SCHIRARD, Sheriff of La Plata County, Colorado;
JIM BEICKER, Sheriff of Fremont County, Colorado;
RONALD BRUCE, Sheriff of Hindsdale County, Colorado;
CHRIS S. JOHNSON, Sheriff of Otero County, Colorado;
FRED JOBE, Sheriff of Custer County, Colorado;
DONALD KRUEGER, Sheriff of Clear Creek County, Colorado;
JAMES CRONE, Sheriff of Morgan County, Colorado;
SI WOODRUFF, Sheriff of Rio Blanco County, Colorado;
TOM RIDNOUR, Sheriff of Kit Carson County, Colorado;
TOM NESTOR, Sheriff of Lincoln County, Colorado;
STAN HILKEY, Sheriff of Mesa County, Colorado;
FORREST FRAZEE, Sheriff of Kiowa County, Colorado;
RICK DUNLAP, Sheriff of Montrose County, Colorado;
TED B. MINK, Sheriff of Jefferson County, Colorado;
DAVE STONG, Sheriff of Alamosa County, Colorado;
FRED WEGENER, Sheriff of Park County, Colorado;
BRUCE NEWMAN, Sheriff of Huerfano County, Colorado;
RANDY PECK, Sheriff of Sedgwick County, Colorado;
DOMINIC MATTIVI, JR., Sheriff of Ouray County, Colorado;
JOHN MINOR, Sheriff of Summit County, Colorado;
SCOTT FISCHER, Sheriff of Jackson County, Colorado;**

PETER GONZALEZ, Sheriff of Archuleta County, Colorado;
RICK BESECKER, Sheriff of Gunnison County, Colorado;
CHARLES "ROB' URBACH, Sheriff of Phillips County, Colorado;
ROD FENSKE, Sheriff of Lake County, Colorado;
GRAYSON ROBINSON, Sheriff of Arapahoe County, Colorado;
DAVID D. CAMPBELL, Sheriff of Baca County, Colorado;
MIKE NORRIS, Sheriff of Saguache County, Colorado;
AMOS MEDINA, Sheriff of Costilla County, Colorado;
MILES CLARK, Sheriff of Crowley County, Colorado;
DAVID ENCINIAS, Sheriff of Bent County, Colorado;
SUE KURTZ, Sheriff of San Juan County, Colorado;
JAMES (JIM) CASIAS, Sheriff of Las Animas County, Colorado;
GARRETT WIGGINS, Sheriff of Routt County, Colorado;
DOUGLAS N. DARR, Sheriff of Adams County, Colorado;
COLORADO OUTFITTERS ASSOCIATION;
COLORADO FARM BUREAU;
NATIONAL SHOOTING SPORTS FOUNDATION;
MAGPUL INDUSTRIES;
USA LIBERTY ARMS;
OUTDOOR BUDDIES, INC.;
WOMEN FOR CONCEALED CARRY;
COLORADO STATE SHOOTING ASSOCIATION;
HAMILTON FAMILY ENTERPRISES, INC., d/b/a FAMILY SHOOTING CENTER AT
CHERRY CREEK STATE PARK;
DAVID STRUMILLO;
DAVID BAYNE;
DYLAN HARRELL;
ROCKY MOUNTAIN SHOOTERS SUPPLY;
2ND AMENDMENT GUNSMITH & SHOOTER SUPPLY, LLC;
BURRUD ARMS INC. D/B/A JENSEN ARMS;
GREEN MOUNTAIN GUNS;
JERRY'S OUTDOOR SPORTS;
GRAND PRIX GUNS;
SPECIALTY SPORTS & SUPPLY; and
GOODS FOR THE WOODS;

      Plaintiffs,

v.

JOHN W. HICKENLOOPER, Governor of the State of Colorado,

      Defendant.

---

**OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS**

---

**THIS MATTER** comes before the Court on the Defendant Governor John W.

Hickenlooper's (hereafter referred to as "the State") Motion to Dismiss (**#64**).  The Plaintiffs

filed two Responses[1] to the motion (**#69, 70**), and the State replied (**#75**).

## I.  Background

The Colorado General Assembly recently enacted new gun regulations.  At issue in this

lawsuit are two statutes — C.R.S. §§ 18-12-112 and 18-12-302.

The first statute, § 18-12-112, imposes mandatory background checks for the transfer of

guns in private transactions, subject to certain exceptions.  The law mandates that before a

person (who is not a gun dealer) can transfer ownership of a gun to someone else, the transferor

must require that the transferee obtain a background check by a licensed gun dealer, and the

transferor must obtain approval of the transfer from the Colorado Bureau of Investigation.

§ 18-12-112(1).  An individual who violates the law is guilty of a crime.  § 18-12-112(9).

Although challenged in this lawsuit, § 18-12-112 is not the subject of the State's instant motion

to dismiss.

The second statute, § 18-12-302, prohibits the possession, sale, or transfer of large-

capacity ammunition magazines.  Section 18-12-301(2) defines "large-capacity magazine" to

---

[1] The Response found at Docket #69 was filed by Colorado Outfitters Association, Colorado
Farm Bureau, National Shooting Sports Foundation, Magpul Industries, USA Liberty Arms,
Outdoor Buddies, Inc., Women for Concealed Carry, Colorado State Shooting Association,
Hamilton Family Enterprises, Inc., David Strumillo, David Bayne, Dylan Harrell, Rocky
Mountain Shooters Supply, 2nd Amendment Gunsmith & Shooter Supply, LLC, Burrud Arms
Inc., Green Mountain Guns, Jerry's Outdoor Sports, Grand Prix Guns, Specialty Sports &
Supply, and Goods for the Woods.  The remaining Plaintiffs, county Sheriffs from across
Colorado, joined in the first response and also filed a separate Response at Docket #70.

include magazines that are capable of accepting, or are "designed to be readily converted to accept," more than fifteen rounds of ammunition.  Under the statute, a person who sells, transfers, or possesses a large-capacity magazine is guilty of a crime.  § 18-12-302(1).  However, the statute contains a grandfather clause that allows a person to possess a large-capacity magazine if he or she (1) owned the magazine as of July 1, 2013 (the effective date of the statute), and (2) has maintained "continuous possession" of the magazine thereafter.       § 18-12-302(2).  Only §§ 18-12-301 and -302 are at issue in the context of this motion.  Since these statutes were enacted, a number of relevant events have occurred.  The facts with regard to these events are undisputed and are recounted generally here.  To the extent further detail is required, the Court will elaborate in its analysis.

On May 16, 2013, the Colorado Attorney General, at the request of Governor Hickenlooper, sent a "Technical Guidance" letter to the Executive Director of the Colorado Department of Public Safety.  The letter was intended to assist Colorado law enforcement agencies in understanding and applying portions of the statute prohibiting large-capacity magazines.  The Technical Guidance addressed the scope of the phrase "designed to be readily converted to accept more than fifteen rounds of ammunition," and set forth the Attorney General's interpretation of the "continuous possession" requirement of the grandfather clause.

Soon after the Technical Guidance was issued, the Plaintiffs initiated this action. Their claims are currently stated in a Second Amended Complaint (**#62**).  They assert six claims, five of which challenge the constitutionality of various provisions of the new statutes.

The Plaintiffs assert that:

(1) the prohibition on the sale, transfer, or possession of magazines with a capacity larger than fifteen rounds of ammunition, §§ 18-12-301 and -302, violates the Second Amendment of the United States Constitution;[2]

(2) the prohibition on the sale, transfer, or possession of magazines that are "designed to be readily converted" to accept more than fifteen rounds of ammunition, §§ 18-12-301 and -302, violates the Second Amendment of the United States Constitution;[3]

(3) the phrase "designed to be readily converted," found in § 18-12-301(2)(a)(I), is unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment;

(4) the phrase "continuous possession," found in the grandfather clause of § 18-12-302(2)(a)(II), is unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment;

(5) §§ 18-12-301 *et seq.* and § 18-12-112 violate Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, because they discriminate against disabled persons; and

(6) the restrictions imposed on the transfer of firearms between private individuals under § 18-12-112 violates the Second Amendment of the United States Constitution.

A month after filing their initial Complaint (and just two weeks before the statute prohibiting large-capacity magazines was set to go into effect), the Plaintiffs requested a preliminary injunction to stop the statute from taking effect.  The parties were able to resolve

---

[2] The provisions of the Second Amendment to the United States Constitution are made applicable to state laws by virtue of the Fourteenth Amendment to the United States Constitution.  *See McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010).

[3] Although the Plaintiffs' first two claims appear to present separate challenges, the Court understands these two claims to actually be one claim challenging the constitutionality of §§ 18-12-301 *et seq.*, as a whole, under the Second Amendment.

such motion without the Court's involvement due, in part, to the State's agreement to issue further guidance on the statutes.  The Colorado Attorney General issued a second Technical Guidance letter, providing additional guidance with regard to the definition of "large-capacity magazine" and as to the "continuous possession" requirement of the grandfather clause.

Citing to Fed. R. Civ. P. 12(b)(1),[4] the State now moves to dismiss particular claims in the Second Amended Complaint.  The State requests that the Court dismiss the Plaintiffs' claims that the language found in §§ 18-12-301(2)(a)(I) and -302(2)(a)(II) is unconstitutionally vague and all claims asserted by the Sheriffs[5] in their official capacity.  The State contends that the Court lacks subject matter jurisdiction over these claims because the Plaintiffs do not have standing to assert them.

---

[4] Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction generally take one of two forms.  The moving party may (1) facially attack the complaint's allegations as to the existence of jurisdiction, or (2) go beyond the allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests.  *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003).

Under a facial attack, the movant merely challenges the sufficiency of the complaint, requiring the Court to accept the allegations in the complaint as true.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  On the other hand, in a factual attack, the movant goes beyond the allegations in the complaint and challenges the facts upon which subject matter jurisdiction depends.  In such situations, the Court must look beyond the complaint and has wide discretion to allow documentary and even testimonial evidence to resolve disputed jurisdictional facts.  *Id.*  In the course of a factual attack under Rule 12(b)(1), the Court's reference to evidence outside the pleadings does not convert the motion into a motion for summary judgment under Rule 56.  *Id.*

The State presents both kinds of challenges under Rule 12(b)(1) — a factual attack as to the Plaintiffs' ability to establish standing to assert their vagueness claims and a facial attack as to the standing of the Sheriffs to bring claims in their official capacities.

[5] For the sake of clarity in identifying various groups of Plaintiffs, the Court notes that it uses the term "Plaintiffs" only when collectively referring to all of the Plaintiffs involved in this lawsuit.  The group of Plaintiffs comprised of individuals identified as county Sheriffs is referred to as "the Sheriffs."  The remaining non-sheriff Plaintiffs (including individuals and entities) are referred to by name where appropriate.

## II.  Jurisdiction

The issues presented in the State's motion to dismiss concern whether the Court has subject matter jurisdiction over certain claims.  The Court may exercise jurisdiction over this matter so that it may determine its own jurisdiction.  *See Dennis Garberg & Associates, Inc. v. Pack-Tech Intern. Corp.*, 115 F.3d 767, 773 (10th Cir. 1997).

## III.  Analysis

Before beginning its legal analysis, the Court pauses to address a preliminary matter. Recognizing that this case is one of great public concern and interest, it is important to identify what the Court is *not* doing and *not* considering.

Determination of this motion to dismiss has nothing to do with the merits of the Plaintiffs' claims.  The Court is  not be determining whether the new laws are good, bad, wise, unsound, or whether they are the subject of legitimate concern.  Indeed, at this juncture, the Court is not even considering whether the challenged portions of the laws are constitutional. This ruling determines only whether the Court *can* consider particular claims (that is, the Court's jurisdiction ).

A court's "jurisdiction" is a broad concept.  For purposes of the matters addressed herein, jurisdiction  means a court's power or authority to interpret and apply the law.

All federal courts are courts of "limited jurisdiction," meaning that they possess only that power given to them by the United States Constitution and federal statutes.[6]  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).  Article III of the United States Constitution restricts the authority of federal courts to adjudicating actual "cases" and

---

[6] This is in contrast to the state courts.  Typically courts of general jurisdiction, state courts are presumed to have the power to hear virtually any claim arising under federal or state law, except those which Congress or the United States Constitution  specifies can be heard only by federal courts.

"controversies."  U.S. Const. art. III, § 2, cl.1; *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269 (2008).  Limitation of the jurisdiction of federal courts to cases and controversies is crucial to maintaining the "tripartite allocation of power" set forth in the United States Constitution.  Indeed, no principle is more fundamental to the judiciary's proper role in our system of government.  *See Valley Forget Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474 (1982); *Raines v. Byrd*, 521 U.S. 811, 818 (1997).

A case or controversy can only be brought by a person with "standing" to sue.  This means that a plaintiff must have a right or interest that has been, is being, or will be affected by the challenged act or statute.  *See Allen v. Wright*, 468 U.S. 737, 750-51 (1984).  In other words, to invoke federal court jurisdiction, a plaintiff must demonstrate that he or she "has a stake" in the outcome at the time the suit is filed.  Thus, unlike doctrines which restrain federal courts from exercising jurisdiction based on the characteristics of the claims themselves (*e.g.* doctrines of abstention or grants of exclusive jurisdiction), the question of standing focuses on the *party* who seeks relief rather than on the issues that he or she wants adjudicated.  *See Flast v. Cohen*, 392 U.S. 83, 95 (1968).  In addition, a plaintiff must demonstrate standing for each claim he or she asserts and for each form of relief that is sought.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

If there is no plaintiff with standing to assert a particular claim, federal courts lack jurisdiction to consider it.  *Summers v. Earth Island Inst.*, 555 U.S. 488, 492-93 (2009).  Parties who invoke federal jurisdiction, here the Plaintiffs, bear the burden of establishing a court's jurisdiction.  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 104 (1998).   Thus, it is the Plaintiffs who must establish their standing to proceed with the claims in the Second Amended Complaint.

To establish standing, a plaintiff must show that: (1) he or she has suffered an "injury in fact" that is concrete and particularized, and actual or imminent (not merely conjectural or hypothetical); (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000); *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004).

The "injury in fact" requirement is satisfied differently depending on what kind of relief a plaintiff seeks. A plaintiff may seek retrospective relief (typically in the form of an award of money damages) when he or she wants to be compensated for a past injury. In contrast, a plaintiff may seek prospective relief (usually in the form of a declaratory judgment or an injunction) when he or she believes that he or she will be injured in the future and wants to prevent the injury from happening. Here, the Plaintiffs do not claim that they have suffered any past injuries due to prior enforcement of the new statutes. Instead, they seek prospective relief by asking the Court to enjoin the State from enforcing the statutes in the future.

To have standing to seek prospective relief, a plaintiff must establish that he or she is suffering a continuing injury from the challenged act, or that he or she is under a real and immediate threat of being injured by that act in the future. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983). The threatened injury must be "certainly impending" and not merely speculative. *Laidlaw*, 528 U.S. at 190. When, as here, the constitutionality of a criminal statute is challenged based on the prospect of future enforcement, a plaintiff must show that "there exists a credible threat of [future] prosecution" of the plaintiff under the statute. *Ward v. Utah*, 321 F.3d 1263, 1267 (10th Cir. 2003).

**B.  Do any of the Plaintiffs have standing to assert that §§ 18-12-301 and -302 are unconstitutionally vague?**

The Plaintiffs claim that certain language found in §§ 18-12-301 and -302 is unconstitutionally vague under the Due Process clause of the 14th Amendment to the United States Constitution.  The State argues that these claims must be dismissed because no Plaintiff has, or can, show a "credible threat" that he, she, or it will be prosecuted under the statutes because the Technical Guidance letters have adequately clarified the statutory terms.  This is a factual challenge to the Plaintiffs' standing.  Accordingly, the Court does not presume the truthfulness of the factual allegations in the Second Amended Complaint and has wide discretion to consider affidavits, other documents, and evidence.  *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995).

As noted above, to have standing, a plaintiff who challenges the prospective enforcement of a criminal statute must show a "real and immediate threat" of future prosecution under the statute.  *Bronson v. Swensen*, 500 F.3d 1099, 1107 (10th Cir. 2007).  This requirement has been characterized as a "credible" threat of prosecution, meaning that is arises from an "objectively justified fear of real consequences."  *Id.* (quoting *D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir. 2004)).  In *Bronson*, the Tenth Circuit explained that the credible threat test operates as a continuum, along which the degree of likelihood of enforcement must be assessed.  At the "credible threat" end of the spectrum are cases in which the plaintiff has been explicitly threatened with arrest or prosecution.  *See, e.g., Doctor John's, Inc. v. City of Roy*, 465 F.3d 1150, 1156 (10th Cir. 2006).  At the "no credible threat" end of the spectrum are cases in which there was an affirmative assurance by a government actor responsible for enforcing the challenged statute that there will be no prosecution.  *Bronson*, 500 F.3d at 1108.  Such

assurances prevent a "threat" of prosecution from maturing into a "credible" one. *See, e.g., Mink v. Suthers*, 482 F.3d 1244, 1253-55 (10th Cir. 2007); *Winsness v. Yocom*, 433 F.3d 727, 732 (10th Cir. 2006); *Faustin v. City & County of Denver*, 268 F.3d 942, 948 (10th Cir. 2001).

Here, the Colorado Attorney General's two Technical Guidance letters specify how the statutes should be interpreted and enforced. The State argues that the Technical Guidance letters act as assurances that there will be no prosecution contrary to their terms. The Plaintiffs argue that the Technical Guidance letters are insufficient to act as "assurances" of non-prosecution because they are not binding on state or local law enforcement and they do not explicitly state that there will be no prosecution.

The Court rejects the Plaintiffs' argument. Although the letters do not explicitly state that these Plaintiffs will not be prosecuted under the statutes, the Technical Guidance letters advise the Plaintiffs of the conduct that is permissible (for example, possession of magazines accepting fewer than fifteen rounds but with removable base plates), and therefore the Plaintiffs are assured that they will not be prosecuted for such conduct. Indeed, C.R.S. § 18-1-504(2)(c) provides an affirmative defense to criminal liability if a defendant engages in conduct under a mistaken belief that the conduct is permitted by "[a]n official written interpretation of the statute or law relating to the offense." In addition, the question is whether there is a credible threat of *prosecution*, not simply *arrest*. The Plaintiffs have not provided any evidence to suggest that any District Attorney will prosecute in variance to the directive of the Attorney General. The idea that a rogue District Attorney might choose to prosecute a Plaintiff for conduct explicitly permitted under the terms of the Technical Guidance is purely speculative.

Recognizing a spectrum of likelihood of prosecution, the Tenth Circuit has also held that the "possibility" of future enforcement need not be "reduced to zero" to defeat standing. *Mink,*

482 F.3d at 1255 (quoting *Winsness*, 433 F.3d at 733). Thus, a defendant need not contend or show that there is no possibility of prosecution. Instead, a plaintiff must demonstrate an "actual or imminent, not conjectural or hypothetical" threat that the statute will be enforced against him, her, or it. *Winsness*, 433 F.3d at 733. Accordingly, the Court finds that the Technical Guidance letters are sufficient to act as assurances by the State that prosecution will be subject to the clarifications provided by the Technical Guidance letters.

In light of the Technical Guidance letters, to show a credible threat of prosecution, a Plaintiff must show that his, her or its intended behavior falls afoul of *both* the statute(s) *and* the Technical Guidance letters. It is not necessary for every Plaintiff to show a credible threat of prosecution for the claims to proceed. If any Plaintiff can show standing, the claim may proceed (albeit only as to that Plaintiff). *See American Atheists, Inc. v. Davenport*, 637 F.3d 1095, 1114 (10th Cir. 2010) (citing *Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 160 (1981)).

The Court notes that the Plaintiffs have brought separate vagueness claims as to specific phrases found in §§ 18-12-301 and -302. Thus framed, the Court focuses on *each challenged phrase* as interpreted by the Technical Guidance. To recap, the Plaintiffs claim that the phrases "designed to be readily converted," found in § 18-12-301(2)(a)(I), and "continuous possession," found in § 18-12-302(2)(a)(II), are unconstitutionally vague. In determining whether any Plaintiff has standing to assert these claims, the Court has considered all of the pleadings and factual showings made by the Plaintiffs as to how the new statutes might affect them.

1. "designed to be readily converted"

Section 18-12-302 prohibits the possession, sale, or transfer of large-capacity ammunition magazines. Section 18-12-301(2) defines "large-capacity magazine" as including "a fixed or detachable magazine, box, drum, feed strip, or similar device capable of accepting, or that is

10

designed to be readily converted to accept, more than fifteen rounds of ammunition." The first Technical Guidance letter set forth guidance as to how this phrase should be interpreted and enforced:

> [t]he term "designed," when used as a modifier, denotes a feature that meets a specific function. This suggests that design features that fulfill more than one function, and whose function is not specifically to increase the capacity of a magazine, do not fall under the definition. The features of a magazine must be judged objectively to determine whether they were "designed to be readily converted to accept more than fifteen rounds."
>
> Under this reading of the definition, a magazine that accepts fifteen or fewer rounds is not a 'large capacity magazine simply because it includes a removable baseplate which may be replaced with one that allows the magazine to accept additional rounds. On many magazines, that design feature is included specifically to permit cleaning and maintenance. Of course, a magazine whose baseplate is replaced with one that does, in fact, allow the magazine to accept more than fifteen rounds would be a "large capacity magazine" under House Bill 1224.

The second Technical Guidance letter provided additional guidance with regard to magazines with removable base plates:

> [m]agazines with a capacity of 15 or fewer rounds are not large capacity magazines as defined in [§ 18-12-301] whether or not they have removable base plates. The baseplates themselves do not enable the magazines to be expanded and they serve functions aside from expansion — notably, they allow the magazines to be cleaned and repaired. To actually convert them to higher capacity, one must purchase additional equipment or permanently alter their operation mechanically. Unless so altered, they are not prohibited.

Thus, to establish standing to challenge the phrase "designed to be readily converted," at least one Plaintiff must show that he, she, or it intends to sell, transfer, or possess a magazine that accepts fifteen rounds or less, but which has a design feature other than a removable base plate that makes it capable of accepting more than fifteen rounds.

Nothing in the Second Amended Complaint or elsewhere in the record to establishes that any Plaintiff is under a credible threat of prosecution under § 18-12-302 for selling, transferring, or possessing a magazine that is "designed to be readily converted" to accept more than fifteen rounds of ammunition.  Several firearm dealer Plaintiffs, including 2nd Amendment Gunsmith & Shooter Supply, LLC; Green Mountain Guns; Jerry's Outdoor Sports; and Magpul Industries, indicate that they own and intend to sell magazines that have removable "floor plates" or "end caps" (which the Court understands to be equivalent to the "base plates" mentioned in the Technical Guidance letters).  However, in accordance with the Technical Guidance, possession or transfer of magazines that could potentially accept more than 15 rounds by virtue of removable floor plates or end caps alone is not precluded.  The letters expressly state that such magazines are not considered to be "designed to be readily converted" into large-capacity magazines for purposes of enforcement of the statute.

No other Plaintiff has alleged that they intend to sell, transfer, or possess magazines that have a design feature, other than a removable base plate, that allows the magazine to accept more than fifteen rounds.[7]  Accordingly, the Court finds that no Plaintiff has alleged sufficient facts to show a credible threat of prosecution for violation of § 18-12-301 based on the possession, sale, or transfer of a magazine that is "designed to be readily converted" to accept more than 15 rounds.  The State's motion to dismiss this claim is therefore GRANTED, and the claim that this portion of the statute is unconstitutionally vague is dismissed.

---

[7] Several Plaintiffs who are organizations and associations, including the National Shooting Sports Foundation, Colorado State Shooting Association, Outdoor Buddies, Colorado Outfitters Association, and Women for Concealed Carry, assert that they are suing on behalf of their members.  However, these Plaintiffs have not asserted that their individual members intend to sell, possess, or transfer a magazine that is designed to be readily converted to accept more than fifteen rounds by virtue of something other than a removable base plate.  Because these Plaintiffs have not established that their members would have standing to sue in their own right, they have not established their standing to sue on behalf of their members.  *See Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 181 (2000).

2.  "continuous possession"

 As noted, section 18-12-302 prohibits the possession, sale, or transfer of large-capacity magazines, subject to a grandfather clause.  The grandfather clause protects a person who possesses a large-capacity magazine if he, she, or it (1) owned the magazine as of July 1, 2013 (the effective date of the statute), and (2) maintains "continuous possession" of the magazine thereafter.  § 18-12-302(2).

The first Technical Guidance letter explains:

> Responsible maintenance, handling, and gun safety practices, as well as constitutional principles, dictate that [§ 18-12-302(2)(a)(II)] cannot be reasonably construed as barring the temporary transfer of a large-capacity magazine by an individual who remains in the continual physical presence of the temporary transferee, unless that temporary transfer is otherwise prohibited by law.  For example, an owner should not be considered to have "transferred" a large-capacity magazine or lost "continuous possession" of it simply by handing it to a gunsmith, hunting partner, or an acquaintance at a shooting range with the expectation that it will be promptly returned.  Likewise, a gunsmith, hunting partner, or acquaintance at a shooting range who acquires temporary physical custody of a large-capacity magazine from its owner should not be considered in "possession" of the magazine so long as he or she remains in the owner's physical presence.  However, it would be unreasonable to construe the bill or this guidance to exempt a temporary transfer of a large-capacity magazine in connection with criminal activity.

> For similar reasons, the bill's requirement that an owner must maintain "continuous possession" in order to ensure the application of the grandfather clause cannot reasonably be read to require continuous physical possession. . . .

The second Technical Guidance letter provides additional explanation:

> The phrase "continuous possession" in [§ 18-12-302(2)] shall be afforded its reasonable, every-day interpretation, which is the fact of having or holding property in one's power or the exercise of dominion over property, that is uninterrupted in time, sequence, substance, or extent.  "Continuous possession" does not require a large-capacity magazine owner to maintain literally continuous

physical possession of the magazine.  "Continuous possession" is only lost by a voluntary relinquishment of dominion and control.

In light of the Technical Guidance, to establish standing with regard to the phrase "continuous possession," a Plaintiff must establish that he, she, or it is subject to a credible threat of prosecution for possessing a large-capacity magazine and is not protected by the grandfather clause.  In other words, a Plaintiff must show that he, she or it acquired a large-capacity magazine before July 1, 2013, but that he, she, or it does not fall within the grandfather clause because he, she, or it intends to give up "continuous possession" of the magazine.

Plaintiff David Strumillo, a retired police officer, submitted a declaration in which he states that he owns firearms that use large-capacity magazines.  He asserts that under the new statute, he will be "prevented from lending [his] firearms containing [the large-capacity magazines] to [his] family members."

The Court finds that Mr. Strumillo's intended conduct of "lending" his large-capacity magazines to family members subjects him to a credible threat of criminal prosecution under § 18-12-302.  The second Technical Guidance letter states that "continuous possession" is lost only by a "voluntary relinquishment of dominion and control."  A reasonable interpretation of Mr. Strumillo's use of the word "lending" suggests that Mr. Strumillo intends to give up his dominion and control over the magazines for a period of time, and that the magazine will later be returned to him.  Thus, although Mr. Strumillo owned his magazines as of July 1, 2013, the grandfathering clause does not protect him because he intends to give up "continuous possession" of the magazines.

The State further contends that even if there is a Plaintiff who establishes a potential injury, that such Plaintiff lacks standing because the relief sought (an injunction against enforcement) will not redress the injury.  It argues that because the Plaintiffs sued the Governor,

14

any injunction against enforcement of the statute or declaratory relief deeming the statute unconstitutional would not bind the local District Attorneys who carry out the actual enforcement of the statute.

The Court is not persuaded.  The Colorado Constitution states that the "supreme executive power of the state shall be vested in the governor, who shall take care that the laws be faithfully executed."  Colo. Const. Art. IV, § 2.  Colorado has long recognized the practice of naming the governor, in his *official role as the state's chief executive*, as the proper Defendant in cases where a party seeks to enjoin state enforcement of a statute, regulation, ordinance, or policy.  *See Developmental Pathways v. Ritter*, 178 P.3d 524, 529 (Colo. 2008).  The Court finds that the Governor, in his official capacity, possesses sufficient authority to enforce (and control the enforcement of) the complained-of statute.  Thus, the relief sought is against the Governor in his official capacity, and therefore would redress injury to Mr. Strumillo.

Accordingly, the Court finds that at least one Plaintiff has established standing to assert a claim that the phrase "continuous possession," § 18-12-302(2), is unconstitutionally vague.  The State's motion to dismiss this claim is therefore DENIED.

## C.  Do the Sheriffs have standing to sue the State of Colorado?

The State also request dismissal of all claims brought by Plaintiffs who are county sheriffs because they have no standing to sue the State in their "official capacity".  The State relies upon the political subdivision doctrine which teaches that a political subdivision of a state may not sue its parent state under certain provisions of the United States Constitution.

To understand the State's argument, it is important to distinguish between claims brought by a person in an "official capacity" and those brought in a personal/individual capacity.

Generally, a government official (whether elected or appointed) can assert rights in two different capacities. One pertains to the office in which the official serves. In that capacity, the official acts on behalf of, and is the representative of, the office that he or she holds. That role continues until the person no longer serves in the office, at which point, the official's successor assumes that role. An "official capacity" claim is one that is brought by or against the person acting as the representative of, or as substitute for, the office or agency. In other words, in an official capacity claim, one can readily replace the named individual with the name of the office itself. For example, an official capacity claim brought by "John Cooke, Sheriff of Weld County," is actually a claim being brought by the Weld County Sheriff's Office.[8]  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).

A government official can also assert rights that he or she has as an ordinary, private citizen. Following the prior example, a claim brought by Sheriff Cooke in an individual capacity is actually one by Mr. Cooke as a private citizen.

A government official can be involved in a lawsuit either in his or her official capacity (that is, as a representative of the office itself) or as an individual, or both.[9]  Here, the Court understands the parties to agree that the claims asserted by the Sheriffs in the Second Amended Complaint are all intended to be brought as official capacity claims. *See generally* Docket # 70 (repeatedly arguing that the "Sheriffs have standing, in their official capacity," in various

---

[8] It is in this same sense that the Court has referred to the Defendant in this case — nominally, Mr. Hickenlooper — as simply "the State," as all claims are brought against Mr. Hickenlooper in his official capacity as the Governor of Colorado.

[9] The issue presented here is the relatively unusual question of whether *plaintiffs* are bringing claims in their official or individual capacities. The more common question — whether a claim is brought against a *defendant* in an official or individual capacity — is not at issue here. *See generally Watson v. Polland*, 2009 WL 1328316 (D. Colo. May 8, 2009) (slip op.) (discussing the difference between official and individual capacity claims brought against a defendant).

respects, but never contending that the Sheriffs have standing "in their individual capacity").

Thus, these are claims brought by the Sheriffs' offices of each of the respective county.

The State argues that under the doctrine of political subdivision standing, the Sheriff's Offices in each county are barred from suing the State because a county Sheriff's Office is a political subdivision of the State of Colorado.  Consideration of this argument requires application of both federal and state law.

Turning first to federal law, political subdivisions of states, such as cities and counties, are recognized as subordinate governmental instrumentalities created by a state to assist in carrying out state governmental functions.  *See Reynolds v. Sims*, 377 U.S. 533, 575 (1964). Under the doctrine of political subdivision standing, a political subdivision of a state cannot sue its parent state for alleged violations of the Fourteenth Amendment.  This is because that amendment was written to protect individual rights, as opposed to protecting collective or structural rights.[10]  *Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 628 (10th Cir. 1998).  Indeed, the Tenth Circuit has observed that there is not "a single case in which the Supreme Court or a court of appeals has allowed a political subdivision to sue its parent state under a substantive provision of the Constitution."  *City of Hugo v. Nichols*, 656 F.3d 1251, 1253-54 (10th Cir. 2011).

This doctrine is an important limitation on the power of the federal government.  It guarantees that a federal court will not resolve certain disputes between a state and local government.  A political subdivision may seek redress against its parent state for violation of a

---

[10] The Tenth Circuit has expressed some doubt as to whether the issue of a political subdivision suing its parent state is properly regarded as a question of standing or a substantive determination that the Constitution does not afford rights to political subdivisions as against their states.  *See City of Hugo v. Nichols*, 656 F.3d 1251, 1255 n.4 (19th Cir. 2011).  Nevertheless, in an earlier decision, *Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 628 (10th Cir. 1998), the Tenth Circuit cast the issue as one of jurisdictional standing.  Thus, this Court treats it as such.

state Constitution, but the political subdivision cannot invoke (nor can a federal court impose) the protections of the United States Constitution for individuals against a state. *See Williams v. Mayor & City Council of Balt.*, 289 U.S. 36, 40 (1933). With regard to its own subdivisions, the power of the state is unrestrained by the Fourteenth Amendment. *City of Trenton v. New Jersey*, 262 U.S. 182, 188 (1923).

Turning to Colorado law, a county in Colorado is undisputedly a political subdivision of the State of Colorado. *See Bd. of Cnty. Com'rs of Douglas Cnty. v. Bainbridge, Inc.*, 929 P.2d 691, 699 (Colo. 1996). The Colorado Constitution creates an office of Sheriff for each county and lists the Sheriff as a county officer. Colo. Const. Art. XIV, § 8. The Sheriff's Office functions as a department of the county, charged with enforcing State laws within the county limits. As such, it is an extension of the county in which it is situated. Thus, an official capacity claim asserted by a county Sheriff's Office is a claim asserted by a political subdivision of the State.

The Sheriffs argue that they are not a political subdivision of the State because the Office of Sheriff was created by the People of Colorado, through the Colorado Constitution, rather than being created by state law. This argument is not persuasive. The Sheriffs are correct that that the People of Colorado acted through the Colorado Constitution, but in doing so they created and empowered the State of Colorado and its subdivisions. Colo. Const. Art. II, § 1 ("[a]ll political power is vested in and derived from the people; all government, of right, originates from the people . . . ."); Colo. Const. Art. II, § 2 ("The people of this state have the sole and exclusive right of governing themselves, as a free, sovereign and independent state . . . ."). In the Colorado Constitution, the People of the State of Colorado created the structure of the state government,

18

making counties and county Sheriff's Offices part of it – a political subdivision of the State of Colorado.

Alternatively, the Sheriffs argue that the Supreme Court in *Board of Education v. Allen*, 392 U.S. 236 (1968), carved out an exception to the political subdivision doctrine if the plaintiff has a "personal stake in the outcome" of the litigation.  In *Allen*, a local Board of Education sued to stop enforcement of a New York statute requiring public school authorities to lend free textbooks to students at parochial schools.  In a footnote, the Supreme Court noted that the Board's standing had not been challenged.  However, the Court went on to observe that the "[plaintiffs] have taken an oath to support the United States Constitution.  Believing [the statute] to be unconstitutional, they are in the position of having to choose between violating their oath and taking a step — refusal to comply with [the statute] — that would be likely to bring their expulsion from office and also a reduction in state funds for their school districts.  There can be no doubt that [the plaintiffs] thus has a 'personal stake in the outcome' of this litigation." *Allen*, 392 U.S. at 241 n.5 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).  The Sheriffs argue that, like the members of the Board of Education, they are compelled by their oath to enforce both the U.S. Constitution and state law, yet believe that the state law they are required to enforce violates the U.S. Constitution, giving them the same "personal stake" in the outcome.

The Tenth Circuit addressed this aspect of *Allen* in *City of Hugo v. Nichols*, 656 F.3d 1251 (10th Cir. 2011).  In that case, the Tenth Circuit specifically considered *Allen* in the context of the political subdivision doctrine.  The Tenth Circuit explained that in *Allen*, standing was based on the *individual* board members' personal stake in losing their jobs.  656 F.3d at 1260.  In other words, the board members were asserting individual claims, rather than "official capacity" claims.  Thus, even if members of the Board of Education in *Allen* did not have standing to bring

an official capacity claim, its members could bring a claim as individuals who were at risk of losing their jobs if they adhered to the oath they took. .

The same is true in this case.  If individual sheriffs wish to protect individual rights or interests they may do so.  In the Second Amended Complaint, however, the Sheriffs have confused their individual rights and interests with those of the county Sheriff's Office.  They each assert that they have a  stake in the outcome of this litigation because (1) they desire to adhere to their oath of office, (2) must preserve their ability to use *posse comitatus*,[11] (3) it would be burdensome to do background checks before transferring weapons in the routine execution of Sheriff duties (*e.g.* issuing Sheriff's Office-owned firearms to deputies, collecting and maintaining firearms seized as evidence, etc.), and (4) it would compromise the performance  of their office by diverting time and financial resources away from higher law-enforcement priorities.

The latter three interests are all incident to the functioning of a Sheriff's Office, but are not individual rights of the person who serves as Sheriff.  In other words, Mr. Cooke does not have an individual ability to invoke *posse comitatus* or to issue Sheriff's Office firearms to deputies or to direct use of Sheriff Office resources.  Thus, any injuries affecting these rights are suffered by the Sheriff's Office, not Mr. Cooke.  Because such injury is to a political subdivision of the State, they are not the type of injury  to the individual interests of a government official as contemplated in *Allen* and *Hugo*.

The remaining injury identified by the Sheriffs — the duty to avoid violating their oath of office — is a type of "personal stake" or potential injury that is acknowledged in *Allen*.

---

[11] Essentially, the power of law enforcement authorities to call upon the general citizenry for assistance in keeping the peace. <u>Black's Law Dictionary</u>, 7th Ed. at 1183.  The Sheriffs' argument is thus that a citizenry dispossessed of certain weapons due to the operation of the statutes offers the Sheriffs a less effective "posse."

However, in *Allen*, the Supreme Court characterized this "personal stake" as the dilemma of "choos[ing] between violating their oath and taking a step . . . that would be likely to bring their expulsion from office." 392 U.S. at 241 n. 5.  Similarly, the Court in *Hugo* understood standing under *Allen* to be "based on the individual board members' personal stake in losing their jobs." 656 F.3d at 1260.  Perhaps there are individual Sheriffs who desire to bring claims in their individual capacities like that asserted in *Allen*.  But no individual claims have been asserted in the Second Amended Complaint.[12]

Finally, the Sheriffs contend that they have third-party standing on behalf of (1) the Colorado mounted rangers and their *posse comitatus*, (2) sheriffs and deputies who wish to purchase large-capacity magazines, and (3) current and former Sheriffs who are disabled under the ADA.  This argument presents many problems.

First, the Second Amended Complaint makes no mention of the third parties whose rights the Sheriffs seek to vindicate.  Third-party standing is asserted for the first time in the Sheriffs' response to the motion to dismiss.  Second, for the reasons discussed above, the Sheriff's Office cannot sue the State under substantive provisions of the United States Constitution.  And finally, "third-party standing" requires not only an injury in fact and a close relation to the third-party, but also a hindrance or inability of the third-party to pursue his or her own claims." *Terrell v. INS*, 157 F.3d 806, 809 (10th Cir. 1998).  The Sheriffs have not explained why the third-parties did not, or cannot, raise the claims on their own.

Accordingly, the Court finds the doctrine of political subdivision standing applies to the Sheriffs' claims in their official capacity.  The Sheriffs, in their official capacities, cannot sue the

---

[12] The Court offers no opinion as to whether the Sheriffs could rejoin the lawsuit by seeking to amend the Second Amended Complaint to assert individual capacity claims, nor what specific facts they must assert to successfully state a claim in which they would have such individual standing.

State under the Fourteenth Amendment to the United States Constitution.  With regard to the ADA claims asserted in this case, the Court also finds that the Sheriffs cannot assert them in an official capacity.  The statutory provisions under which the claims are asserted  protect individual rights, and do not specifically provide rights to political subdivisions.  *See City of Hugo*, 656 F.3d at 1257 (the Supreme Court and courts of appeals have allowed a political subdivision to sue its parent state only when Congress has enacted statutory law specifically providing rights to municipalities).

Accordingly, all claims asserted by the Sheriffs in the Second Amended Complaint are DISMISSED for lack of standing.

## IV.  Conclusion

For the forgoing reasons, the Defendant's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.  The motion is **GRANTED** with respect to all claims asserted by the Sheriffs.  The claims are **DISMISSED** without prejudice.  Any Sheriff shall have 14 days from the date of this Order in which to seek to join the action in an individual capacity.

The motion is **GRANTED** with respect to the Plaintiffs' claim that the phrase "designed to be readily converted," found in § 18-12-301(2)(a)(I), is unconstitutionally vague, and the claim is **DISMISSED**.

The claims proceeding in this case are (1) Second Amendment challenges to §§ 18-12-301 *et seq.* and § 18-12-112; (2) a claim for unconstitutional vagueness as to the phrase "continuous possession," § 18-12-302(2)(a)(II); and (3) the ADA claims.

Dated this 27th day of November, 2013.

BY THE COURT:

Marcia S. Krieger
Chief United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

**Civil Action No. 13-cv-01300-MSK-MJW**

**COLORADO OUTFITTERS ASSOCIATION;
COLORADO FARM BUREAU;
NATIONAL SHOOTING SPORTS FOUNDATION;
MAGPUL INDUSTRIES;
COLORADO YOUTH OUTDOORS;
USA LIBERTY ARMS;
OUTDOOR BUDDIES, INC.;
WOMEN FOR CONCEALED CARRY;
COLORADO STATE SHOOTING ASSOCIATION;
HAMILTON FAMILY ENTERPRISES, INC., d/b/a FAMILY SHOOTING CENTER AT
CHERRY CREEK COLORADO PARK;
DAVID STRUMILLO;
DAVID BAYNE;
DYLAN HARRELL;
ROCKY MOUNTAIN SHOOTERS SUPPLY;
2ND AMENDMENT GUNSMITH & SHOOTER SUPPLY, LLC;
BURRUD ARMS INC. D/B/A JENSEN ARMS;
GREEN MOUNTAIN GUNS;
JERRY'S OUTDOOR SPORTS;
SPECIALTY SPORTS & SUPPLY;
GOODS FOR THE WOODS;
JOHN B. COOKE;
KEN PUTNAM;
JAMES FAULL;
LARRY KUNTZ;
FRED JOBE;
DONALD KRUEGER;
DAVE STRONG;
PETER GONZALEZ;
SUE KURTZ; and
DOUGLAS N. DARR,**

       **Plaintiffs,**

**v.**

**JOHN W. HICKENLOOPER, Governor of the State of Colorado,**

       **Defendant.**

---

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**

---

**THIS MATTER** comes before the Court following a bench trial on the Plaintiffs' claims under the Second and Fourteenth Amendments to the United States Constitution, and under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131 *et seq.* Having considered the evidence presented and the parties' arguments, the Court finds and concludes as follows.

## I. Factual Background

In 2013, in the wake of a mass shooting at a movie theater in Aurora, Colorado, the Colorado General Assembly enacted gun control legislation that included two new criminal statutes: (1) C.R.S. § 18-12-302, banning the sale, possession, and transfer of "large-capacity magazines," as that term is statutorily-defined; and (2) C.R.S. § 18-12-112, expanding mandatory background checks to recipients of firearms in some private transfers.

This action was initiated before the statutes became effective. The Plaintiffs — individuals who own guns, associations and organizations of gun owners and advocates, and businesses that manufacture or sell magazines and/or firearms — challenge these statutes and seek to permanently enjoin their enforcement. Many of the Plaintiffs opposed the legislation before the General Assembly, and iterate the arguments they made during the legislative process here. The named Defendant is the Governor of the State of Colorado, sued in his official capacity.[1] Thus, all future references to the Defendant will be to Colorado.[2]

---

[1]    *See Kentucky v. Graham*, 473 U.S. 166 (1985).

[2]    Generally, the Eleventh Amendment to the United States Constitution shelters a state from private suits brought without its consent under the doctrine of sovereign immunity. *Ellis v. Univ. of Kansas Medical Center*, 163 F.3d 1186, 1195 (10th Cir. 1998). However, in *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court recognized a narrow "exception" to states' sovereign immunity to allow private litigants to seek an injunction in federal court against a state

A number of claims were dismissed prior to trial.  The issues at trial were: (1) whether §

18-12-302 and § 18-12-112 violate the Second Amendment[3] of the United States Constitution,

which guarantees the people's right to "keep and bear arms;" (2) whether the phrase "continuous

possession" in the grandfather clause of § 18-12-302 is so vague as to violate the people's right

to Due Process under the Fourteenth Amendment of the United States Constitution; and (3)

whether the statutes violate Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §

12132.[4]

## II.  The Scope of this Decision

The issue of gun control is controversial.  It is the subject of vigorous and passionate

debate in legislatures, the media, and innumerable public and private discussions across the

---

official, in order to prohibit the official from enforcing a state statute claimed to violate federal
law.  *See Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1154 (10th Cir. 2011).  The
doctrine rests on the premise — or rather, legal fiction — that when a federal court commands a
state official to do nothing more than refrain from violating federal law, the official is not the
state for sovereign-immunity purposes.  *Virginia Office for Protection and Advocacy v. Stewart*,
131 S.Ct. 1632, 1638 (2011).  In other words, such a suit is not technically against the state, but
rather against an individual who has been "stripped of his official or representative character"
because of his unlawful conduct.  *Ex parte Young*, 209 U.S. at 159-60.  For such exception to
apply, the named state official must have a duty to "enforce" the statute in question and have
demonstrated a willingness to exercise that duty.  *Prairie Band Potawatomi Nation v. Wagnon*,
476 F.3d 818, 828 (10th Cir. 2007).  Given the duties of the Governor of Colorado to ensure that
the laws of Colorado are enforced, Colo. Const. art IV, § 2, the Court finds that the *Ex parte
Young* exception applies here.

[3]      By inference, the Plaintiffs also invoke the Fourteenth Amendment, which makes the
Second Amendment applicable to the states.

[4]      Also pending before the Court are the parties' Joint Motion to Strike Expert Opinions Per
Fed. R. Evid. 702 (**#118**) and the Defendant's second Motion to Dismiss (**#133**).  The Court's
findings of fact and conclusions of law set forth herein implicitly adjudicate the Rule 702
motion, and the Court will not otherwise address it separately.  The Court's ruling on the Motion
to Dismiss is incorporated into this opinion.

country.  The subject triggers both fear[5] and deeply-held societal values that conflict in varying degrees: the desire for physical safety, concerns about government intrusion into matters of individual liberty, the availability of mental health treatment for those disposed to violence, the effectiveness of existing law enforcement protection, and so on.  In crafting gun control laws, it is the role of the legislature to carefully examine each of these concerns, to weigh them against each other, and to create social policy in the form of legislation (or, indeed, to elect not to do so).

When the constitutionality of a state law is challenged, however, a court does not engage in the same process.  Judicial review of laws for constitutional compliance focuses on only a small sliver of the issues that the legislature considers.  A court does not act as a super-legislature to determine the wisdom or workability of legislation.  Instead, it determines only whether legislation is constitutionally permissible.  A law may be constitutional, but nevertheless foolish, ineffective, or cumbersome to enforce.

The limited role of the court grows out of the separation of powers among the executive, legislative, and judicial branches of government.  A legislature, being a body directly elected by the citizenry, is granted the broadest power to act for and by the people.  The judiciary acts only as a check on the exercise of that collective power, not by substitution of the personal opinion of a judge as to what he or she believes public policy should be.  The judge must only compare the public policy adopted by the legislature against the constitutional minimums that protect individual rights.

Constitutionality is a binary determination: either a law is constitutional, or it is not.  This Court will not express a qualitative opinion as to whether a law is "good" or "bad," "wise" or

---

[5]     Mass shootings are particularly frightening because they are unpredictable, occur in places one ordinarily expects to be safe, are horrendously violent, and there is no general consensus as to how to prevent them.

"unwise," "sound policy" or a "hastily-considered overreaction."  Similarly, this Court will not assess what alternatives the legislature could have chosen, nor determine whether the enacted laws were the best alternative.  Such decisions belong to the people acting through their legislature.  Put another way, in determining whether a law is constitutional, this decision does not determine whether either law is "good," only whether it is constitutionally permissible.

### III.  The Laws at Issue

#### A.  Prohibition of Large-Capacity Magazines

Colorado Revised Statute § 18-12-302(1) makes it a crime for a person to possess or transfer a large-capacity magazine after July 1, 2013.  The statute defines a "large-capacity magazine" as including, "a fixed or detachable magazine, box, drum, feed strip, or similar device capable of accepting, or that is designed to be readily converted to accept, more than fifteen rounds of ammunition."  C.R.S. § 18-12-301(2)(a)(I).  Persons who possessed such magazines on July 1, 2013 may be protected by a so-called "grandfather clause," which states that a person can possess large-capacity magazines if: (1) the magazines were acquired before July 1, 2013, and (2) if the person has maintained (and continues to maintain) "continuous possession" of the magazines.  C.R.S. § 18-12-302(2)(a).  The statute also contains a handful of specifically-defined exceptions permitting the possession of large-capacity magazines by, among others, certain narrow classes of firearm manufacturers, firearm dealers, and government officials who carry weapons as part of their official duties.

#### B.  Mandatory Background Checks for Private Firearm Transfers

Colorado has long required background checks for those acquiring firearms at gun shows or from firearm dealers.[6]  Such background checks must be performed by a licensed gun dealer

---

[6]      *See* C.R.S. § 24-33.5-424 (firearm sales), and C.R.S. § 12-26.1-101 (gun shows).

as defined in C.R.S. § 12-26.1-106(6).  Prior to transfer of the firearm, a search must be performed by, and approval obtained from, the Colorado Bureau of Investigation in accordance with C.R.S. § 24-33.5-424.

The 2013 law, Colorado Revised Statute § 18-12-112, expands the background check requirement to certain private transfers of firearms.  It makes it a crime for both the person transferring possession (the transferor) and person taking possession of a firearm (the transferee) to transfer possession of the firearm in a private transfer without first obtaining a background check for the transferee.  In addition, the statute makes the transferor liable for any injury caused by the transferee's use of the firearm if no background check was obtained.  C.R.S. § 18-12-112(5).  The process for obtaining the background check is the same as that required for retail sales, but the fee that can be charged by the gun dealer performing the check is limited to ten dollars.  C.R.S. § 18-12-112(2)(d).  If the firearm is transferred to an entity rather than a living person, then a background check is required for each living person who will possess it.  C.R.S. § 18-12-112(1)(b).

The statute specifies certain types of private transfers for which no background check is required, including, among others: (1) gifts or loans between certain specifically-identified family members; (2) temporary transfers, made in the transferee's home, when the transferee reasonably believes that possession is necessary to prevent his or her imminent death or serious bodily injury; (3) temporary transfers of possession at shooting ranges, during target firearm shooting competitions, or while legally hunting, fishing, target shooting, or trapping; and (4) temporary transfers for no longer than seventy-two hours.  C.R.S. § 18-12-112(6).

## IV.  Jurisdiction

The Plaintiffs invoke the Court's jurisdiction under 28 U.S.C. § 1331.  Colorado, however, contends that the Court lacks jurisdiction to determine the constitutionality of either statute because no Plaintiff has shown standing to assert such claim.

The Plaintiffs' standing has been a persistent and problematic issue in this case. Colorado filed two motions seeking to dismiss claims on that basis.  In ruling on Colorado's first Motion to Dismiss (**#96**), the Court set out the legal standards that guided its analysis.[7]  The Court adopts that explication as if fully set out herein, but expands its reasoning in this ruling, as necessary.

Summarized briefly, for a federal Article III court to have jurisdiction to determine a matter, there must be a "claim or controversy" that is "justiciable."  For a claim or controversy to be justiciable, at least one plaintiff must have standing to assert the claim.  To have standing, a plaintiff must show that he, she, or it has been or is being injured, that the challenged law causes the injury, and that the lawsuit will provide relief for the injury.  *See Lujan v. Defenders of*

---

[7]     Colorado's Second Motion to Dismiss (**#133**), was filed shortly before trial.  It seeks dismissal of the challenge to the constitutionality of C.R.S. § 18-12-302 arguing that no Plaintiff has shown standing.  Alternatively, it seeks dismissal of claims by certain Plaintiffs.  As to § 18-12-112, it addresses standing in a footnote, "maintaining that [the claims] are not justiciable," but not expressly "re-raising arguments" it previously made in its first Motion to Dismiss.  Both this Motion and the Plaintiffs' Response at (**#134**) rely on discovery responses and other documents prepared before trial.  The Court has an independent duty to assure that jurisdiction is secure, and therefore this opinion will not necessarily follow the arguments of the parties.  *See United States v. Colo. Supreme Court*, 87 F.3d 1161, 1166 (10th Cir. 1996); *PeTA v. Rasmussen*, 298 F3d 1198, 1202 (10th Cir. 2002); *Essence, Inc. v. City of Federal Heights*, 285 F.3d 1272, 1280 (10th Cir. 2002); *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).  In addition, because standing is determined in conjunction with the trial in this matter, the Court limits its consideration to the evidence presented at trial, rather than using the standard for pre-trial consideration of standing issues that indulges "well-pled" allegations and affidavits with the presumption that the facts contained therein will ultimately be proven.  *Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th Cir. 1997).

*Wildlife*, 504 U.S. 555, 560-61 (1992).  The injury must be actual and concrete, rather than anticipated, hypothetical, or speculative.

When a plaintiff seeks to enjoin the enforcement of a criminal statute on grounds that it abridges a constitutional right, it is not necessary for the plaintiff to violate the statute in order to show an injury.  Instead, the law recognizes that the mere existence of a criminal statute can prevent or chill a plaintiff's desire to exercise conflicting constitutional rights.  *See Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th Cir. 1997).  Thus, the law deems a plaintiff to suffer a continuing injury sufficient for standing if it can be shown that: (1) the plaintiff genuinely intends to engage in a course of conduct that is constitutionally protected but is proscribed by the challenged statute, and (2) if the plaintiff engaged in such conduct, there exists "a credible threat" that the plaintiff would be prosecuted under the statute.  *See Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 298-299 (1979); *Dias v. City and County of Denver*, 567 F.3d 1169, 1176-77 (10th Cir. 2009) (citing *Ward v. Utah*, 321 F.3d 1263, 1267 (10th Cir. 2003)).  To be "credible," the threat of prosecution must be more than imaginary or speculative.  *Younger v. Harris*, 401 U.S. 37, 42 (1971); *Golden v. Zwickler*, 394 U.S. 103 (1969).

Both § 18-12-302 and § 18-12-112 are criminal statutes.  No Plaintiff has been charged with violating either statute nor specifically threatened with prosecution.  Thus, no Plaintiff has suffered an actual past injury.  Instead, the Plaintiffs bring facial challenges to these statutes[8] and seek prospective injunctive relief.  For these claims to be justiciable, the evidence at trial must show that at least one Plaintiff intends to engage in a course of constitutionally protected conduct

---

[8]    Challenges to the constitutionality of statutes can take two forms.  There can be a challenge as to how the law has actually been applied to a plaintiff (an "as-applied" challenge) or, there can be a challenge based solely on its language and anticipated applications (a "facial" challenge).  Here, because the statutes have not been enforced against any Plaintiff, only facial challenges have been asserted.

that would violate the statute and that there is a "credible threat" of prosecution should the Plaintiff do so.  *See United States v. Colo. Supreme Court*, 87 F.3d 1161, 1166 (10th Cir. 1996).

### A.  Standing for Challenges to § 18-12-302

The Plaintiffs challenge this statute on two grounds: (1) that it violates rights protected by the Second (and by inference, the Fourteenth) Amendment to the United States Constitution; and (2) that the "grandfather clause" is so vague that it denies due process under the Fourteenth Amendment to the United States Constitution.  For these claims to be justiciable, the evidence must show that at least one Plaintiff[9] either: (1) possesses a large-capacity magazine that he or she acquired after July 1, 2013, in violation of the statute (in other words, not subject to any of the statutory exceptions); (2) intends to acquire a new large-capacity magazine in violation of the statute; or (3) intends to transfer or sell a large-capacity magazine, owned as of July 1, 2013, in violation of the statute.  In addition, such Plaintiff must show that there is a "credible threat of prosecution" for such violations.

### 1.  Individual Plaintiffs

The Court turns first to the individual Plaintiffs.  At trial, evidence was presented only as to three individual Plaintiffs — David Bayne, Dylan Harrell, and John Cooke.  No evidence shows that any of these Plaintiffs meet the requirements of standing discussed above.

Mr. Bayne lived in Thornton, Colorado when this action was initiated, but has since moved to Georgia.  He did not testify that he intends to return to Colorado, much less that he

---

[9]     No evidence was presented to demonstrate the standing of the following Plaintiffs: National Shooting Sports Foundation; USA Liberty Arms; 2nd Amendment Gunsmith & Shooter Supply, LLC; Green Mountain Guns; Jerry's Outdoor Sports; specialty Sports & Supply; Goods for the Woods; David Strumillo; Ken Putnam; James Faull; Larry Kuntz; Fred Jobe; Donald Krueger; Dave Strong; Peter Gonzalez; Sue Kurtz; and Douglas N. Darr.

would return with his large-capacity magazines.  Thus, there is no evidence that he is likely to be subject to the statute in the future.

Mr. Harrell owns large-capacity magazines that were purchased before July 1, 2013. There is no evidence that suggests that Mr. Harrell's continued possession would not be protected by the grandfather clause, thus he is not currently in violation of the statute or subject to a risk of prosecution.  Mr. Harrell did not testify about any intention to acquire additional large-capacity magazines in the future, nor did he express an intention to transfer the large-capacity magazines currently in his possession, nor otherwise testify about future conduct that would place him at risk of prosecution.  Accordingly, Mr. Harrell lacks standing to challenge the statute.

Mr. Cooke currently serves as the Sheriff of Weld County and will be retiring in 2015. There was no evidence as to whether he currently possesses large-capacity magazines.  His testimony strictly related to a "survey" he conducted of his employees (none of whom are Plaintiffs).  Even assuming that Mr. Cooke does possess large-capacity magazines, his current possession is exempted from the prohibition (due to his status as a law enforcement employee), and there was no testimony that, upon his retirement, he intends to transfer such magazines or intends to acquire more in violation of the statute.  Thus, on this record, the Court finds that no individual Plaintiff has shown standing to challenge § 18-12-302**.**

### 2.  Plaintiffs that are Entities

The Court then turns to the Plaintiffs that are entities.  They fall roughly into two groups: associations of gun enthusiasts/advocates and firearm businesses.  The associations are Colorado Youth Outdoors, Women for Concealed Carry, Outdoor Buddies, Colorado State Shooting Association, Colorado Farm Bureau, and Colorado Outfitters Association.  The firearm

businesses are Rocky Mountain Shooter Supply and Burrud Arms, Inc. (both licensed firearm dealers), Hamilton Family Enterprises, Inc. (a shooting range operator), and Magpul Industries (a manufactures of magazines).

As to the associational entities, the Court begins by examining whether these entities can assert associational standing on behalf of their members.  "Associational standing" is recognized if an organization can establish that: (1) its members would otherwise have standing to sue in their own right; (2) the members' interests that the association seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit.  *Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 756 (10th Cir. 2010).  With regard to the first element, the entity Plaintiffs must show, through specific facts, that at least one of its members would be directly affected by the statute.  *See Lujan*, 504 U.S. at 563 (citing *Sierra Club v. Morton*, 405 U.S. 727, 735, 739 (1972), and *Hunt v. Washington Colorado Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)).

At trial, Elisa Dahlberg, a member of Women for Concealed Carry, testified that Women for Concealed Carry is a nonprofit organization committed to providing information to women who choose to carry a concealed weapon as a form of self-defense.  She further testified that she owns two semiautomatic carbine-style rifles and a 9mm semiautomatic handgun, each of which are equipped with a large-capacity magazine.  She testified that she uses these firearms for home defense and target shooting, among other things.  It appears to be undisputed that Ms. Dahlberg's current possession of large-capacity magazines is permitted by the statute's grandfather clause, and the parties agree that all large-capacity magazines will wear out or become unusable at some

point in time.  Considering this, Ms. Dahlberg stated that, due to § 18-12-302, she will be unable to replace her large-capacity magazines once they no longer function.

The question of whether Ms. Dahlberg is suffering a continuing injury is a close one, because it is not clear when Ms. Dahlberg's magazines are likely to need replacement and whether, at that indeterminate point in future, she will desire to replace them with magazines of similar type.  Notwithstanding her current interests, with the passage of time, Ms. Dahlberg's desire to carry large-capacity magazines may change.[10]  If that happened, this statute would not affect her.

Nevertheless, in an attempt to find standing for some Plaintiff, the Court will assume that, in the absence of evidence as to the age of Ms. Dahlberg's existing large-capacity magazines and the functioning life of those magazines, Ms. Dahlberg may need to replace a large-capacity magazine in the very near future and that she will desire to replace it with another large-capacity magazine.  If that were the case, the restrictions of § 18-12-302 would nevertheless prevent her from acquiring and possessing the replacement large-capacity magazine.  Thus, the first element necessary for associational standing for Women for Concealed Carry is, arguably, satisfied.

The second element is also satisfied because the interests that Women for Concealed Carry ostensibly seek to protect — providing information to and engaging in advocacy on behalf of women who are interested in carrying concealed weapons for self-defense purposes — are "germane" to the interests that Ms. Dahlberg could assert on her own behalf.

Finally, because this claim is a facial challenge and the relief requested is prospective, it does not require the personal participation of the individual members of Women for Concealed

---

[10]   The inability to predict *when* Ms. Dahlberg may need to replace magazines and *what* her desires might be at that time is illustrative of how speculative a pre-enforcement, facial challenge to a criminal statute can be.

Carry in the lawsuit.  *See Warth v. Seldin*, 422 U.S. 490, 515 (1975).  Whether the statute

violates constitutional standards turns on the statute's plain language and its general operation,

not on the particular circumstances for which Ms. Dahlberg or a specific member of Women for

Concealed Carry possesses large-capacity magazines.  Thus, the personal participation of

Women for Concealed Carry's members is not essential.

Accordingly, with the benefit of some generous assumptions, the Court finds that Women

for Concealed Carry has associational standing to assert the Second Amendment challenge to §

18-12-302.[11]  Accordingly, the Court has jurisdiction to determine these challenges to the statute

on their merits.  *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264

(1977); *Colorado of Utah v. Babbitt*, 137 F.3d 1193, 1215 n.36 (10th Cir. 1998).

**B.  Standing for the Challenge to § 18-12-112**

The Plaintiffs assert a single challenge to § 18-12-112: that it violates the Second (and by

inference, the Fourteenth) Amendment to the United States Constitution.  Following the same

analytical pattern used with regard to § 18-12-302, in order for the Court to consider this claim,

at least one Plaintiff must establish a continuing injury by showing that he or she intends to

engage in conduct protected by the Second Amendment but which violates § 18-12-112, and that

if the Plaintiff engaged in such conduct, there is a credible threat that he or she would be

prosecuted.

---

[11]     The status of Women For Concealed Carry's standing to assert a vagueness challenge
with regard to the "grandfather clause" of § 18-12-302 is a bit more murky, as it is not clear that
Ms. Dahlberg's current possession of her grandfathered large-capacity magazines subjects her to
a risk of future prosecution, nor that other members of Women For Concealed Carry similarly
face such a risk.  Nevertheless, for purposes of completeness of the Court's decision, the Court
will assume that Women for Concealed Carry has associational standing to pursue this claim as
well.

As noted above, § 18-12-112 requires that a background check be performed on the individual transferee(s) who take possession of a firearm through certain private transfers. The statute requires a licensed gun dealer to perform certain actions, retain certain records, and charge no more than ten dollars for the background check. The failure to obtain such a background check exposes both the transferor and transferee to criminal liability.

To establish a continuing injury sufficient to challenge § 18-12-112, the evidence must show either: (1) a Plaintiff intends to transfer or acquire a firearm, through a private sale not otherwise exempt under the statute, without first conducting a background check on the transferee; or (2) a Plaintiff who is a licensed gun dealer intends not to comply with the requirements for conducting the background check or other specified responsibilities. Further, either types of Plaintiff must also show that there is a "credible threat of prosecution" for this conduct.

### 1. Individual Plaintiffs

The Court begins its analysis of standing with the same three individual Plaintiffs discussed above, finding that none have demonstrated a continuing injury.

Mr. Bayne is not subject to prosecution under § 18-12-112 because he no longer lives in Colorado and does not intend to return.

Mr. Cooke did not provide any testimony with regard to his personal firearms, much less his intention to transfer them to others or to acquire new ones via private transfer, with or without a background check.

Mr. Harrell's circumstances are bit more complicated. He testified that, in the past, he has installed scopes on, or "sighted," firearms for friends and neighbors. On occasion, he kept the firearm for longer than 72 hours. Initially, the Court has some doubt that a person's taking

temporary possession of another person's firearm for the purpose of installing a scope or "sighting" it is within the Second Amendment's protection of an individual right to "keep and bear arms" for the purpose of self-defense.  But, assuming (without deciding), that it is, there is no evidence that the transfer to Mr. Harrell is a private transfer requiring a background check.  Temporary transfers for up to 72 hours are exempt from the background check requirement, and although there was testimony that Mr. Harrell sometimes retained the firearm for more than 72 hours, it was not clear that he did so out of necessity rather than convenience.  Assuming Mr. Harrell could regularly perform the scoping or sighting of the firearm within the 72-hour period and return the weapon, he would suffer no injury from the operation of the statute.  In addition, assuming that he kept a firearm for longer than 72 hours with the owner's permission while performing maintenance duties on it, he has not shown any credible threat that he would be prosecuted for not first obtaining a background check.  Accordingly, the evidence does not establish Mr. Harrell's standing.

### 2. Plaintiffs that are Entities

As noted earlier, there are two groups of entity Plaintiffs.  With regard to this statute, the Court begins with the firearm businesses — Rocky Mountain Shooter Supply, Burrud Arms, Hamilton Family Enterprises, Inc., and Magpul Industries.

The Court has some doubt that these entities can have standing to bring a Second Amendment challenge.  As discussed in greater detail below, rights granted under the Second Amendment are *individual* rights premised upon an inherent natural right of self-defense.

Although businesses such as these might have standing to challenge a statute under some other constitutional theory, it does not appear that they are protected by the Second Amendment.[12]

Assuming, however, that a business entity *could* assert a Second Amendment challenge, the trial record does not show evidence of continuing injury to any of the Plaintiff business entities. Rocky Mountain Shooter Supply and Burrud Arms are licensed firearm dealers. Transfers by these Plaintiffs are not governed by § 18-12-112, and neither of these parties perform private background checks subject to the statute. Hamilton Family Enterprises, Inc. operates a shooting range and lends firearms to those who use the range. It sells firearm accessories including magazines, but does not sell firearms themselves, nor is it a licensed firearm dealer. It appears that the only transfers made by Hamilton Family Enterprises are in the nature of loans that do not exceed 72 hours and are for the purpose of target shooting. Such transfers are expressly exempt from the statute's requirements. According to the parties' stipulated facts, Magpul Industries designs and manufactures high-quality magazines and magazine accessories. There is no evidence that it intends to be a transferor or transferee of a firearm in private sales, nor a licensed firearm dealer subject to § 18-12-112.

Next, the Court looks to the Plaintiff associations: Outdoor Buddies, Colorado Farm Bureau, Colorado Outfitters Association, Women for Concealed Carry, Colorado Youth Outdoors, and Colorado State Shooting Association. Based on the evidence presented, it does not appear that any of these entities can bring a Second Amendment claim based on associational standing.

---

[12]     *Cf. United States v. Chafin*, 423 Fed.Appx. 342, 344 (4th Cir. 2011) (finding no authority to suggest that the Second Amendment protects a right to sell a firearm); *Mont. Shooting Sports Ass'n v. Holder*, 2010 WL 3926029, *21 (D.Mont. 2010) (recognizing that *Heller* did not extend Second Amendment protection to manufacturers and dealers seeking to sell firearms); *Teixeira v. Cnty. of Alameda*, 2013 WL 4804756, *6 (N.D.Cal. 2013) (same).

Outdoor Buddies is a non-profit organization with over 800 members, a third of whom are disabled.  Its mission is to "get disabled individuals active in the outdoors."  It lends highly specialized firearms to members for 3-day hunts.  Because these transfers are temporary and incident to legal hunting activities, they are exempt under § 18-12-112.  The evidence reflects that, sometimes, transferees keep a firearm for a period before or after the hunt, which time might exceed 72 hours.  But the record does not clearly establish that this is necessary (as opposed to convenient), or that any member would decline to participate if he or she could not retain the firearm for more than 72 hours beyond the time of a hunt.  As a consequence, the record does not reflect that either Outdoor Buddies or its members are at risk of prosecution under § 18-12-112.

The Colorado Farm Bureau (CFB) is a federation with 24,000 members, 5,800 of whom are active farmers and ranchers.  Its mission is to promote agriculture and protect agricultural values.  Nicholas Colgazier testified as its Director of Public Policy, and Michele Eichler testified as a member.  Mr. Colgazier works as an in-house lobbyist who brings pending legislation to the attention of the "board" for development of policy positions.  He did so with regard to § 18-12-112, then lobbied against it based on the requests of some members who opposed the background check requirement due to inconvenience and expense.  He did not offer testimony as to whether or how many of the CFB members would be transferors (or, arguably, transferees) in transfers subject to the statute, whether any would forego such transfers or intended to ignore the background check requirement, or otherwise testify as to facts demonstrating any "credible threat of prosecution."  Ms. Eichler testified that it would be inconvenient to have to obtain a background check in order to transfer a firearm to a ranch or farm hand.  She particularly worried that the gun kept in her farm truck (for predator control)

17

would inadvertently be in the possession of a ranch hand if the family left town for longer than 72 hours.  However, she acknowledged that there had never been an occasion when her ranch hand had possession of the gun for longer than 72 hours.  The Court finds that the evidence as to potential violations of the statute by CFB members to be speculative.  Moreover, even assuming that CFB's members would themselves have standing to challenge the statute, it is not clear that challenging firearms laws is within the scope of CFB's mission of promoting "agricultural values."  Finally, the Court finds that CFB has not shown that there is a "credible threat of prosecution" of its members for the conduct described at trial.

Ms. Eichler also testified as a member of Colorado Outfitters, but offered no evidence as to that association's organization, membership, or mission.  She testified that she and her husband run an outfitting business that takes between 100-150 clients on hunts each year.  In the past, if a client did not have a firearm, the Eichlers would loan the client one of their personal firearms for use during the hunt.  Hunts are usually five days, but may last longer if successful. It would appear that the type of transfers described by Ms. Eichler would be exempt under C.R.S. § 18-12-112(6)(e)(III).  But in any event, the lack of evidence about Colorado Outfitter's membership or mission requires a conclusion that it has not shown the requirements for associational standing.

Three associations — Women for Concealed Carry, Colorado Youth Outdoors, and Colorado State Shooting Association — each testified (through representatives) that they regularly "loan" firearms to their members for various purposes, sometimes for longer than 72 hours, without conducting background checks.  If these associations were individuals, with

clearly established Second Amendment rights,[13] they might have standing to assert a Second

Amendment challenge to the statute.[14]   However, because they are entities rather than human

beings, the question of whether they are protected by the Second Amendment is less than clear.

As noted, the Second Amendment protects a fundamental *individual* right, and it is not clear that

entities have any rights protected by the Second Amendment.  Such questions stretch the outer

boundaries of current Second Amendment jurisprudence, and the parties have not specifically

addressed these issues.

Thus, although the Court has profound reservations as to whether any Plaintiff has

standing to challenge § 18-12-112, in the interests of providing a complete ruling, both for the

guidance of the parties and the inevitable review by the Court of Appeals, the Court will assume

that Women for Concealed Carry, Colorado Youth Outdoors, or the Colorado State Shooting

Association have standing, in their own right, to challenge § 18-12-112 under the Second

Amendment.

## V.  Analysis

### A.  History and Analytical Framework for Second Amendment Challenges

The Second Amendment to the United States Constitution provides**:**

> A well regulated Militia being necessary to the security of a free
> State, the right of the people to keep and bear Arms, shall not be
> infringed.

---

[13]     It is not necessarily evident that that the Second Amendment's guarantee of a "right to keep and bear arms" extends to also guarantee the right of an owner of a firearm to lend that weapon to another (or to guarantee the right of a non-owner to borrow a firearm).  The parties have not addressed this question, and the Court does not consider it.

[14]     The Court rejects the notion that these associations have associational standing to bring claims on behalf of their members who might wish to engage in private transfers without conducting background checks.  The testimony by the representatives of these associations focused on the transfer of weapons ostensibly belonging to the associations themselves, not on private transfers that individual members intended to make involving their own, personally-owned weapons.

Until 2008, most courts did not construe the Second Amendment to protect an individual's right to possess and use firearms.  Courts were guided by the Supreme Court's decision in *United States v. Miller*, 307 U.S. 174, 179 (1939), which held that a right protected by the Second Amendment required "some reasonable relationship to the preservation or efficiency of a well regulated militia."  *See, e.g., United States v. Haney*, 264 F.3d 1161, 1164-66 (10th Cir. 2001); *Gillespie v. Indianapolis*, 185 F.3d 693, 710-11 (7th Cir. 1999); *Stevens v. United States*, 440 F.2d 144, 149 (6th Cir. 1971); *but see United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001).

In 2008, the legal landscape with regard to the Second Amendment shifted.  In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court considered a District of Columbia ban on the possession of usable handguns.  The Court concluded that the Second Amendment "confer[s] an individual right to keep and bear arms."  554 U.S. at 595.  To reach that conclusion, it de-linked the Second Amendment's prefatory clause — "a well regulated militia, being necessary to the security of a free state" — from its operative clause — "the right of the people to keep and bear Arms, shall not be infringed" — and explained that although the prefatory clause states the purpose for the right, it does not limit the right to own or use firearms to circumstances of militia service.[15]  *Id.* at 577.  Instead, the Court identified the core Second Amendment right as "the right of law-abiding, responsible citizens to use arms in defense of hearth and home," and defined the right to "keep and bear arms" as the ability to acquire, use, possess, or carry lawful firearms for *the purpose of self-defense*.  *See, e.g., id.* at 599 ("self-

---

[15]    This reasoning was extended to state statutes by virtue of the Fourteenth Amendment in *McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010).

defense . . . was the *central component* of the right itself") (emphasis in original), at 628 ("the inherent right of self-defense has been central to the Second Amendment right").

As profound as *Heller* is, it does not stand for the proposition that there can be no permissible regulation of firearms or their use. To the contrary, the Court explained that "[f]rom Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever for whatever purpose." *Id.* at 626. And the Court emphasized that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms," among others. *Id.* at 626-27 & n.26.

The Supreme Court did not specify in *Heller* what analytical framework should be used in testing laws challenged under the Second Amendment. This was, in part, because it found that that the ban it was considering (a law effectively prohibiting the possession of functional handguns inside or outside of the home) would fail all recognized tests for constitutionality. *Id.* at 628. Since *Heller*, Second Amendment jurisprudence has continued to evolve, particularly with regard to the analytical standards to be applied. Many Circuit Courts of Appeal, including the Tenth Circuit, have adopted a two-step approach. *See United States v. Reese*, 627 F.3d 792 (10th Cir. 2010);[16] *United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010); *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011); *United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013);

---

[16]    The two-step process was also applied in *United States v. Huitron-Guizar*, 678 F.3d 1164 (10th Cir. 2012), and in *Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013).

*Heller v. District of Columbia ("Heller II")*, 670 F.3d 1244 (D.C. Cir. 2011); *United States v. Chester*, 628 F.3d 673 (4th Cir. 2010).

In the two-step approach, a court must make a threshold determination of whether the challenged law burdens conduct falling within the Second Amendment's protection.  As part of this determination, the Court may consider whether the challenged law impacts firearms or firearm use, whether the affected firearms are currently in "common use," whether the affected firearms are used for self-defense inside or outside of the home, and whether the restriction is akin to restrictions that were historically imposed and customarily accepted.[17]  If the challenged law does not burden a right or conduct protected by the Second Amendment, then the inquiry is over.

If the challenged law burdens conduct protected by the Second Amendment, then a court must determine what level of constitutional scrutiny to apply.  Generally, constitutional scrutiny takes one of three forms.  *See United States v. Carolene  Prods. Co.*, 304 U.S. 144 (1938).  The least rigorous and most deferential standard is the "rational basis" test, which is used when a local, commercial, or economic right, rather than a fundamental individual constitutional right, is infringed.  *See Armour v. City of Indianapolis, Ind.*, 132 S.Ct. 2073, 2080 (2012).  More rigorous

---

[17]     Although this is a threshold determination, some circumstances may require a comparison of the burden imposed to "longstanding prohibitions" that have been generally accepted.  These include, but are not limited to: the possession of firearms by felons and the mentally ill; laws forbidding the carrying of firearms in sensitive places, such as schools and government buildings; or laws imposing conditions and qualifications on the commercial sale of arms.  *Heller*, 554 U.S. at 625 & 627 n.26; *see also Jackson v. City and Cnty. of San Francisco*, 2014 WL 1193434, *4 (9th Cir. 2014).  In *Peterson*, the Tenth Circuit held that the Second Amendment did not confer a right to carry concealed weapons because such bans were long-standing.  *Peterson*, 707 F.3d at 1197.  In *United States v. McCane*, 573 F.3d 1037 (10th Cir. 2009), Judge Tymkovich presaged the possibility that reliance on the long-standing restriction exception to categorically exclude certain conduct from protection under the Second Amendment might circumvent constitutional scrutiny of current restrictions.

is "intermediate scrutiny" review, which applies to laws that infringe upon, but do not substantially burden, fundamental individual rights, such as content-neutral restrictions on speech.  For a challenged law to satisfy intermediate scrutiny, it must be substantially related to an important governmental interest.  *Reese*, 678 F.3d at 802 (citing *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010)); *United States v. Huitron-Guizar*, 678 F.3d 1164, 1169 (10th Cir. 2012).  Laws that substantially burden fundamental individual rights (*e.g.*, laws embodying racial discrimination or content-based restrictions on speech) are subject to "strict scrutiny."  To satisfy strict scrutiny, a law must be narrowly-tailored to further a compelling government interest.  *See Chandler v. City of Arvada*, 292 F.3d 1236, 1241 (10th Cir. 2002).

Recognizing that the Second Amendment protects fundamental individual rights, *Heller* instructed that the rational basis test should not be applied,[18] but it gave no instruction as what heightened level of scrutiny — intermediate, strict, or something in between — should apply.  In subsequent cases, courts have analogized conduct protected under the Second Amendment to other fundamental individual rights such as those protected by the First Amendment (speech, religion, assembly, and petition).[19]  Most courts have concluded that no single standard is applicable to all challenges under the Second Amendment.  Rather, the level of scrutiny to be

---

[18]    *See* 554 U.S. at 628 n.27.

[19]    In free-speech cases, the standard of judicial review depends on the nature and degree of governmental burden on the First Amendment Right.  For example, content-based regulations and laws that burden political speech are subject to strict scrutiny, whereas "time, place, and manner" regulations need only be "reasonable" and "justified without reference to the content of the regulated speech."  *See Ezell*, 651 F.3d at 706-08 (citing *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992), *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010), and *Ward v. Rock Against Racism*, 491 U.S. 781 (1989)); *Chovan*, 735 F.3d at 1138.  Firearm regulations that leave open alternative channels for self-defense are less likely to severely burden the Second Amendment right than those that do not.  *See Jackson*, WL 1193434 at *4; *see also Marzzarella*, 614 F.3d at 97.

applied depends, in part, on the type of restriction being challenged and the severity of its burden on the "core" Second Amendment right. *See, e.g., Marzzarella*, 614 F.3d at 96-97; *Reese*, 627 F.3d at 802; *Ezell*, 651 F.3d at 703; *Chovan*, 735 F.3d at 1138. The Tenth Circuit has joined many other courts in applying intermediate scrutiny to Second Amendment challenges. *See, e.g.*, *United States v. Reese*, 627 F.3d 792 (10th Cir. 2010); *United States v. Huitron-Guizar*, 678 F.3d 1164 (10th Cir. 2012).[20]

### B.  Application to § 18-12-302

Under the two-step test, the first question is whether § 18-12-302 impacts a right or conduct protected by the Second Amendment. The Plaintiffs argue that by limiting magazines to 15 rounds or less, this statute impairs an individual's Second Amendment "right of self-defense." Colorado reflexively responds that because people can still defend themselves, no Second Amendment right is impaired.

 Both positions are slightly off-base. They reflect a common confusion between the right that is protected by the Second Amendment — that is, "to keep and bear arms" — and the

---

[20]     In *Reese* and *Huitron-Guizar*, the court applied the standard intermediate scrutiny test, and *Reese* expressly declined to impose a strict scrutiny standard. *See Reese*, 627 F.3d at 804 n.4. It appears that the Tenth Circuit relied heavily on a Seventh Circuit line of cases, beginning with *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010). In *Skoien*, the Seventh Circuit determined that another federal gun restriction, 18 U.S.C. § 922(g)(9), was constitutional based upon a "strong showing" that the statute was substantially related to an important government interest. *Id.* at 641. In selecting that test, the Seventh Circuit cited both to a First Amendment case, *Buckley v. American Constitutional Law Found., Inc.*, 525 U.S. 182, 202-04 (1999), and to a gender-classification equal protection case, *Heckler v. Mathews*, 465 U.S. 728, 744-51 (1984).
         Interestingly, some courts that analogize Second Amendment rights to First Amendment rights apply a more rigorous test than that adopted in *Skoien*, *Reese*, and *Huitron-Guizar*. Some have required a showing of a "tight fit" between the means and the ends, meaning that the statute is "narrowly tailored" to achieve the desired objective. *See, e.g., Heller II*, 670 F.3d at 1258 (citing *Bd. of Trustees v. Fox*, 492 U.S. 469 (1989), and *Ward v. Rock Against Racism*, 491 U.S. 781(1989)); *see also Marzzarella*, 614 F.3d at 97-98. Because it falls between the standard intermediate scrutiny and strict scrutiny, one might call it "intermediate scrutiny plus."

purpose of that right — "for defense of self and home."  Although *Heller* sometimes uses

shorthand phrases such as "a natural right of self-defense," 554 U.S. at 612, or the "inherent right

of self- defense," 554 U.S. at 612, it is clear that *Heller* does not extend the boundaries of the

Second Amendment to guarantee "self-defense" as a right in and of itself.  Nothing in *Heller* can

be read to guarantee an individual right to possess whatever firearm he or she subjectively

perceives to be necessary or useful for self-defense, nor any firearm for a purpose other than self-

defense.  To the contrary, the Supreme Court expressly stated that the rights embodied by the

Second Amendment have not historically been understood to be "a right to keep and carry any

weapon whatsoever." *Id.* at 626.  And the Supreme Court conceded that its interpretation of the

Second Amendment could authorize the prohibition of civilian possession of certain weapons

commonly used in military service, such as "M-16 rifles[21] and the like." *Id.* at 628.  *Heller* also

acknowledged the historical validity of "prohibitions on carrying concealed weapons." *Id.* at

626.  Such comments illustrate that the Supreme Court does not equate the Second Amendment

"right to keep and bear arms" to guarantee an individual the "right to use any firearm one

chooses for self-defense."

Instead, *Heller* describes the Second Amendment "right to keep and bear arms" rather

narrowly: the right to possess those weapons that are "in common use" for "self-defense"

purposes. *See id.* at 624-25 ("the Second Amendment's operative clause furthers the purpose

announced in its preface" by guaranteeing access to the type of arms "in common use at the time

for lawful purposes like self-defense"), at 627 ("the sorts of weapons protected were those in

---

[21]      The M-16 rifle mentioned by the Court is a military version of the AR-15 rifle, a rifle that several witnesses in this case testified that they possess for their own self-defense purposes.  If, as *Heller* implies, the M-16 rifle can legally be prohibited without violating the Second Amendment, it seems to follow that other weapons such as the AR-15 may also be prohibited, notwithstanding the fact that some individuals believe that such weapon is important, or even essential, to their self-defense.

common use at the time"). *Heller* concluded that handguns were in common use because they are a "class of arms that is overwhelmingly chosen by American society for that lawful purpose [of self-defense]" and they are "the quintessential self-defense weapon." *Id.* at 628-29.  Thus, the Court's first inquiry is whether § 18-12-302 burdens the right of individuals to possess commonly-used weapons, such as handguns, for self-defense.

Section 18-12-302 is interesting in that it does not directly regulate firearms at all; it regulates only the size of a magazine.  Simply put, a "magazine" is nothing more than a container that holds multiple rounds of ammunition.  Magazines are designed to feed a bullet into the firing chamber of a firearm with each cycle of the action, allowing multiple shots to be fired rapidly, either semi-automatically (that is, with a single shot fired each time the trigger is pulled) or automatically (with shots being fired continually so long as the trigger is held).[22]  Here, the Plaintiffs are concerned primarily with semiautomatic firearms.  Such firearms can operate without a magazine, but each round must be individually loaded.

The capacity of the magazine determines how frequently a firearm must be reloaded if the shooter wishes to keep firing.  For example, a handgun or rifle using a 15-round magazine must be reloaded twice as frequently as one using a 30-round magazine.  Because § 18-12-302 regulates only the number of rounds in a magazine, it does not affect whether the semiautomatic

---

[22]     Certain firearms are not designed to use magazines at all.  Single-shot firearms, including bolt-action and muzzle-loading rifles, shotguns, and some handguns, require the user to manually load each new round.  Other firearms, such as revolvers, use a cylinder, rather than a magazine, to load each round.
        Magazines may be integral to a weapon or, more commonly in modern weapons, detachable.  Detachable magazines allow a user to pre-load and carry multiple magazines, making it possible for the user to quickly swap out an empty magazine from the weapon and replace it with a full one.  For all practical purposes, the discussion of "magazines" in this case refers to detachable magazines.

firearm can be used, or even whether it can be used in a semiautomatic mode.  It only affects how often it must be reloaded.

The parties agree that semiautomatic firearms are numerous and widespread.  They stipulate that lawfully owned semiautomatic firearms using a magazine with the capacity of greater than 15 rounds number in the tens of millions, although the exact number subject to regulation in Colorado is unknown.  They also agree that semiautomatic firearms are commonly used for multiple lawful purposes, including self-defense.  Because § 18-12-302 affects the use of firearms that are both widespread and commonly used for self-defense, the Court concludes that, at the first step of the analysis, the statute burdens the core right protected by the Second Amendment.

The second analytical step requires that the Court to determine the level of constitutional scrutiny to apply.  Similar to their prior arguments, the Plaintiffs argue that the Court should apply strict scrutiny because the statute severely restricts a person's "right to self-defense," which the Court understands to be the ability to successfully defend him or herself.  Colorado contends that the impact is not severe because, despite the magazine size limitation, people can adequately defend themselves.

As noted, § 18-12-302 bans possession of all magazines capable of holding more than 15 rounds (except for magazines subject to the grandfather clause).  Other than those specifically excepted in the statute, this ban applies to every person in Colorado, in every venue, and for every use, including self-defense inside and outside of the home.  It impacts a large number of semiautomatic firearms, both handguns and rifles.  Viewed in this light, the *scope* of the statute is broad, and it touches the *core* of an individual right guaranteed by Second Amendment — the right to keep and bear (use) firearms for the purpose of self and home defense.

Despite such broad scope, however, the statute's impact on a person's ability to keep and bear (use) firearms for the *purpose* of self-defense is not severe.  Unlike the restriction considered in *Heller*, this statute does not ban any firearm nor does it render any firearm useless.  Semiautomatic weapons can be used for self-defense in and outside of the home. The parties agree that semiautomatic weapons that use large-capacity magazines will also accept compliant magazines (*i.e.*, 15 rounds or fewer), and that compliant magazines can be obtained from manufacturers of large-capacity magazines.  Thus, this statute does not prevent the people of Colorado from possessing semiautomatic weapons for self-defense, or from using those weapons as they are designed to function.  The only limitation imposed is how frequently they must reload their weapons.

By requiring users to reload every 15 rounds, the statute impacts both the "offensive" and "defensive" use of semiautomatic weapons.  Most of the time when a weapon is used "offensively," it is for unlawful purposes — *i.e.* the mass shooting scenario.  (The significance of the statute with regard to offensive firearm use is discussed below.  Needless to say, no party here is complaining of the effects of the challenged statute on the offensive use of large-capacity magazines.)  The Plaintiffs' primary concern here focuses on the "defensive" use of a firearm — that is, to protect the user or others against an attacker.  The effect of magazine size limitations on defensive use of a weapon is important in assessing whether and to what degree a citizen's lawful ability to defend him or herself is compromised.

No evidence presented here suggests that the general ability of a person to defend him or herself is seriously diminished if magazines are limited to 15 rounds.  Despite more than 40 years instructing individuals and law enforcement in defensive firearm use, the Plaintiffs' expert witness, Massad Ayoob, identified only three anecdotal instances in which individuals engaging

in defensive use of firearms fired more than 15 rounds, and not all of these successful defensive

actions involved semiautomatic weapons.[23]  Of the many law enforcement officials called to

testify, none were able to identify a single instance in which they were involved where a single

civilian fired more than 15 shots in self-defense.[24]  (Indeed, the record reflects that many law

enforcement agencies, including the Colorado State Patrol, the Federal Bureau of Investigation,

and the New York City Police Department equip their officers with 15-round or smaller

---

[23]     The first incident involved a gun shop owner who lived next door to the shop.  One night, carloads of people drove through his storefront to steal guns.  In defending his property, the shop owner used a fully automatic M-16 and a fully automatic 9mm submachine gun to fire over 100 rounds.  One perpetrator was killed, others were injured, and all were captured and convicted.  The second incident involved a man who owned a watch shop in Los Angeles and who had been involved in a series of "gun fights."  (Presumably, he had been robbed repeatedly.)  The shop owner began keeping multiple pistols hidden in his shop.  Mr. Ayoob recalled that at least one of the gun fights "went beyond" 17 or 19 shots before the last of the multiple perpetrators was down or had fled.  The third incident involved a Virginia jewelry store that was robbed by "two old gangster type guys."  The two brothers who owned the store successfully defended themselves and their property using multiple revolvers (not semiautomatic weapons) that were kept behind the counter.  Mr. Ayoob did not specify how many rounds were fired in that incident.

[24]     These witnesses include John Cerar, Douglas Fuchs, Lorne Kramer, and Daniel Montgomery.  Mr. Cerar spent 26 years with the New York City Police Department, beginning in 1973.  Over the course of his career, he was responsible for training NYC police officers in firearms and tactics, and also oversaw the evaluation and testing of firearms, ammunition, armor, and police equipment in order to determine appropriateness of use for the department.  He also served on the firearms discharge review board, which reviews all police involved shootings in New York.  Mr. Cerar currently serves as a consultant to various police agencies where high profile shootings have taken place.

Mr. Fuchs currently serves as the Chief of Police in Redding, Connecticut.  He has served in that role for the past 12 years, following lengthy periods in other police agencies.  Throughout his career, Mr. Fuchs has received thousands of hours of training in law, defensive tactics, firearms, and practical skills, such as magazine reloading and tactical reloading.

Mr. Kramer joined the Los Angeles Police Department in 1963 and served there for nearly 28 years.  In 1991, he became the Chief of Police in Colorado Springs, Colorado, where he served for 11 years.

Mr. Montgomery began his law enforcement career in 1962 in California.  In 1971, he was recruited to the police department in Lakewood, Colorado, where he served for 12 years and attained the rank of captain.  In 1982, he became the Chief of Police in Westminster, Colorado, a role in which he served until his retirement in 2007.

magazines.)  Anecdotal testimony from the Plaintiff's lay witnesses was corroborative. Although they possessed large-capacity magazines, none had ever had the occasion to fire more than 15 rounds in an instance of self-defense.

There are myriad reasons for this phenomenon.  First, the defensive purpose of firearms is often achieved without shots being fired whatsoever.  Mr. Avoob testified that, often, merely the defensive display of a firearm is sufficient to defuse the threat.  Similarly, when shots are fired in self-defense, the deterrent purpose is often achieved simply by the firing of a round or two, regardless of whether those shots find their target (in other words, a "warning shot," intentional or otherwise, is often sufficient to deter the attacker).  In these types of circumstances, a restriction on magazine size in no way diminishes the ability of the firearm user to defend him or herself.

Circumstances in which an attack is halted by a defensively-shooting civilian disabling the attacker are comparatively rare.  Even then, the purpose is not to fire as many shots as possible, only as many shots as necessary.  The detrimental effect of a limitation on magazine capacity in such situations is very difficult to measure because it is affected by a wide array of external variables: the nature and characteristics of the attacker(s), the competence of the defensive user, environmental circumstances, the timeliness of intervention by others or by law enforcement, etc.  For example, a highly-trained firearm user might be able to disable an attacker by firing only a relatively small number of rounds.  For these users, the statute poses no impediment to effective self-defense.[25]  Adverse environmental circumstances that may be

---

[25]    There is a curious paradox here: the more competent the defensive firearm user, the more likely he or she is to hit her target with fewer shots, and thus, the less likely that user is to need a large-capacity magazine for defensive purposes.  By contrast, the less competent or confident the user, the greater the number of rounds the user perceives he or she needs.  One wonders how

common in mass shootings — large numbers of bystanders, poor lines of sight, or darkness, for example — or circumstances where a law enforcement response is imminent, may make the firing of large numbers of defensive rounds by a civilian ill-advised.  In these instances, the restriction on magazine size again poses no discrete impairment to the ability of effective self-defense.

Even in the relatively rare scenario where the conditions are "ideal" for defensive firing, there is no showing of a severe effect on the defensive shooter.  As previously stated, the limitation on the size of magazines merely affects how many rounds can be fired before a reload is necessary.  Assuming that the defensive firearm user has fired all 15 rounds in his or her initial magazine, and yet failed to neutralize the threat, the user need simply replace his or her magazine or firearm to resume firing.  Admittedly, the defensive user cannot fire during the time it takes to complete a reload or access another weapon, but the length of that period, again, varies greatly with the circumstances, such as the defensive user's preparation and skills.  The testimony at trial was that persons skilled in firearms use can replace a magazine in a matter of a few seconds, whereas less skilled users may take longer periods of time.  At most, then, the statute's burden on the exercise of self-defense is this: in the relatively rare circumstances in which sustained defensive fire is appropriate, the statute forces a brief pause to reload or access another weapon. The evidence presented does not establish that such circumstances occur frequently, affect very many, or that the pause to reload adversely affects one's success in self-defense.[26]  On the record

---

these perceptions are affected by exposure to military grade weaponry in news and entertainment.

[26]      The Plaintiffs make a secondary argument that magazines with no more than 15 rounds are generally less reliable than large capacity magazines.  Although some witnesses testified about their dislike of certain compliant magazines, there was no evidence as to general unreliability of such magazines, particular as compared to large-capacity magazines.  Indeed, the

presented, the Court finds that although § 18-12-302 burdens the operation of semiautomatic weapons, the burden is not severe because it does not materially reduce the ability of a person to use a semiautomatic firearm for self-defense, nor does it reduce the effectiveness of self-defensive efforts.  As a result, the Court will examine the statute under the intermediate scrutiny test.

For § 18-12-302 to survive intermediate scrutiny, Colorado must prove that its objective in enacting § 18-12-302 was "important" — that is, that that the statute was based on "reasoned analysis," *Concrete Works of Colo., Inc. v. City and Cnty. of Denver*, 321 F.3d 950, 959 (10th Cir. 2003) — and that the provisions of § 18-12-302 are "substantially related" to its stated objective.[27]

According to Colorado, the General Assembly's objective in passing § 18-12-302 was to reduce the number and magnitude of injuries caused by gun violence, specifically in mass shootings.  The legislative record reflects that members of the General Assembly were acutely aware of the Aurora Theater shooting in 2012, as well as other mass shootings inside and outside Colorado.  The General Assembly considered evidence that mass shootings occur with alarming frequency and often involve use of large-capacity magazines.  It considered testimony that when a shooter using a large-capacity magazine intends to kill, the shooter usually fires continuously until he runs out of ammunition, which leads to greater numbers of injuries and deaths.  With regard to general gun violence, the General Assembly also considered statistics drawn from several cities that large-capacity magazines were used in 14-26% of all gun crimes and in 31-

parties stipulated that 10-round magazines produced by Plaintiff Magpul are just as functional and reliable as Magpul's higher-capacity magazines.

[27]    The Plaintiffs urge the Court to limit its consideration of the evidence to the legislative history for § 18-12-302.  As to a determination of the General Assembly's objective and whether it is important, the Court has done so.

41% of fatal police shootings.  This legislative history demonstrates that the General Assembly considered relevant evidence in determining that the use of large-capacity magazines in gun violence poses a serious threat to public safety.  To prevent the effects caused by the use of large-capacity magazines is undoubtedly an important governmental purpose.

Even with an important purpose, however, Colorado must prove that the 15-round limitation in § 18-12-302 is substantially related to an anticipated reduction in the number and magnitude of injuries caused by the use of large-capacity magazines.  *See Peterson v. Martinez*, 707 F.3d 1197, 1222 (10th Cir. 2013) (Lucero, J., concurring) (citing *Michael M. v. Superior Court*, 450 U.S. 464, 473 (1981) (plurality opinion)).  The Court finds that Colorado has demonstrated this relationship.

The evidence[28] shows that large-capacity magazines are frequently used in gun violence and mass shootings, and that often a shooter will shoot continuously until a weapon jams or the shooter runs out of ammunition.  Interestingly, most experts agree that the size of a magazine correlates to the number of rounds that are fired in both an offensive and defensive capacity.  Dr. Jeffery Zax testified that there is a direct positive correlation between the firearm ammunition capacity and the average number of shots fired during criminal aggression.  Mr. Ayoob agreed that this is true in defense, as well.  He testified that when training individuals to use high-capacity semiautomatic weapons, his students frequently feel the need to "spray and pray," meaning that they believe that they should fire all of their rounds in the hope that at least one shot will hit the intended target.  Mr. Ayoob sees his job as training them not to empty their

---

[28]     In determining whether there is a substantial relation between the statute and the Colorado's asserted purpose, the Court does not limit itself to the legislative history.  *See Concrete Works of Colo., Inc. v. City and Cnty. of Denver*, 36 F.3d 1513, 1521 (10th Cir. 1994) (citing *Contractors Ass'n v. Philadelphia*, 6 F.3d 990, 1003-04 (3d Cir. 1993)).

magazines, and instead to shoot as if they were using a magazine with fewer rounds.  Mr. Cerar testified to having a similar experience in training New York City Police Department Officers.

There is no dispute that when a shooter pauses to reload a weapon or shift to another weapon, there is pause.  Mr. Cerar and Mr. Fuchs call this the "critical pause" because it gives potential victims an opportunity to hide, escape, or attack the shooter.  This pause also gives law enforcement or other armed individuals an opportunity to act.  They point to several shooting incidents, including those that took place at the Aurora theater, at a Safeway in Tucson, Arizona, and at an elementary school in Sandy Hook, Connecticut, when a pause allowed a shooter to be overcome, law enforcement to intercede, or potential victims to flee.  In each incident, the pause was created either by the shooter reloading their weapon, or there being a malfunction of their firearm.

Plaintiffs accurately observe that a weapon malfunction or jam can be as effective as mandatory reloading in creating a critical pause.  However, one cannot predict whether or when a firearm will malfunction.  The limitation on magazine size makes the critical pause mandatory because continued use of the gun requires reloading or switching to another gun.

Plaintiffs also accurately observe that skilled shooters can reload more quickly than can unskilled shooters, which would reduce the duration of the critical pause.  That is undoubtedly true, but also largely irrelevant.  A pause, of any duration, imposed on the offensive shooter can only be beneficial, allowing some period of time for victims to escape, victims to attack, or law enforcement to intervene.  The pause compelled by the limitation on magazines also could temporarily impair a defensive shooter, but beyond acknowledging that fact, there are too many external variables to permit a conclusion that pauses effectively compelled on both sides are necessarily better or worse than having no such pauses on either side.  In cases involving skilled

defensive shooters and inexperienced offensive shooters, the pause is necessarily favorable. Where the situation is reversed, it may be that the offensive shooter gains an advantage, or it may be that the asymmetry of the offensive shooter and defensive shooter's goals nevertheless negate some or all of that advantage.  The mere fact that the legislature's decision might raise the risk of harm to the public in some circumstances, while clearly diminishing it in others does not defeat the conclusion that the legislature's decision was substantially related to an important governmental interest.

Finally, the Plaintiffs argue that criminals who are intent on committing gun violence will not obey the magazine restriction and will nevertheless unlawfully obtain large-capacity magazines.  Hypothetically, this may be true, but the Court declines to speculate about the subjective intentions and means of unspecified criminals involved in unspecified gun violence. The Court accepts the unrebutted opinion of Dr. Zax, who testified that the magazine size restriction will reduce the overall number of large-capacity magazines available in Colorado and his testimony about the effects of federal firearms regulation in Virginia.  Thus, although it may be impossible to completely eliminate access to large-capacity magazines, it is reasonable to infer that the restriction will, at a minimum, reduce the ready availability of large-capacity magazines to both criminals and law-abiding citizens.

It is clear from the legislative history that the General Assembly adopted the 15-round restriction in the effort to balance the ability of individuals to lawfully use semiautomatic weapons in self-defense, while limiting the capability of unlawful shooters to fire repeatedly.  It considered a more restrictive limit of 12 rounds, but rejected that at the request of citizens and law enforcement officials.  Instead, it chose the 15-round limit based on evidence that officers of

the numerous state and federal law enforcement agencies all successfully use magazines with 15 or fewer rounds.

Whether adoption of a fifteen-round magazine limit is a sound public policy or a perfect fit with the General Assembly's objective to improve public safety is not the question before this Court. The fit may not be perfect, but the evidence establishes both an important governmental policy and a substantial relationship between that policy and the restriction of § 18-12-302. The provisions of § 18-12-302 are permissible under the Second Amendment.

### C.  Application to § 18-12-112

Subject to multiple exceptions, § 18-12-112 extends the mandatory background check required in gun sales by dealers and at gun shows to transferees who take possession of a firearm in a private transfer. Plaintiffs do not argue that requiring background checks for the private sale of firearms is unconstitutional. Rather, they focus their challenge on the effect of the statute on *temporary* transfers, when ownership of the firearm does not change. Essentially, they argue that the Second Amendment protects an individual's right to borrow a firearm for lawful purposes, including for self-defense, and that such right is infringed by the statute's requirements.

First, the Court must determine whether § 18-12-112 impacts conduct protected by the Second Amendment. As repeatedly noted, the Second Amendment guarantees an individual's right to keep and bear arms for the core purpose of defense of self and home. However, it is not at all clear that the Second Amendment prevents the government from restricting the ability of persons to acquire firearms via temporary loans from others. Notably, *Heller* acknowledged the historical permissibility of "laws imposing conditions and qualifications on the commercial sale of arms." 544 U.S. at 626-27. Logically, if the government can lawfully regulate the ability of persons to obtain firearms from commercial dealers, that same power to regulate should extend

to non-commercial transactions, lest the loophole swallow the regulatory purpose. Thus, the Court has grave doubt that a law regulating (as opposed to prohibiting) temporary private transfers of firearms implicates the Second Amendment's guarantee at all.

Nevertheless, the Court will assume that, arguably, the right to "keep and bear" firearms implies some protection of the right to acquire firearms in the first place. *Cf. Ezell*, 651 F.3d at 704. And the Court will assume that, if the acquisition of firearms is protected to some extent, that protection will include acquisition via loan. Thus, if the Court were to conclude that the Second Amendment protects an individual's right to acquire firearms for the purpose of self-defense by temporarily borrowing them, the Court would find that § 18-12-112 impacts that right by requiring a background check before such transfer can occur.[29]

Contrary to the Plaintiffs' position, however, the burden imposed on the right is no more severe than the law already provides with regard to firearm sales. Colorado already requires a background check to be conducted on the buyer in a commercial firearm sale, and thus, the operation of § 18-12-112 does nothing more than impose the same restrictions on acquisition by loan. It does not prevent a person otherwise permitted to obtain a firearm from acquiring one, nor subject that person to any greater burdens than he or she would face if acquiring the weapon commercially. Nothing in the Second Amendment can be read to suggest that a permissible burden on commercial sales of firearms cannot similarly be extended to apply to those acquiring firearms by loan.

---

[29]     Arguably, however, a Second Amendment right focused on acquisition of a firearm would extend only to the transferee of the firearm. It is difficult to imagine how a firearm owner's Second Amendment rights are impaired by prohibiting him or her from loaning a firearm to another. However, as the preceding discussion concerning standing observes, the Plaintiffs here are the parties intending to *lend* the weapons, not the parties borrowing them. This further highlights the dubious issue of standing in this case.

The Plaintiffs argue that the burden is severe because it will be difficult for individuals to actually obtain the background checks from a federally licensed firearms dealer.  They argue that firearm dealers may be unavailable in areas where individuals need background checks, that the checks could take a long time, or that the dealers may be unwilling to perform the checks due to the limit on fees they can charge.

The evidence presented does not entirely support the Plaintiffs' argument.  Plaintiffs' witnesses provided anecdotal evidence of experiences they have had where a dealer refused to perform a background check for one reason or another.  They also testified as to how it would be inconvenient for them to locate a dealer and obtain a check before the need to execute a transfer. However, there is no evidence that all, or even most, firearms dealers refuse to perform private background checks, or that it would be impossible for many, or most, who would receive a weapon to obtain a background check.  Rather, the evidence shows that there are more than 600 firearms dealers in Colorado that are actively performing private checks, and that, currently, it takes an average of less than fifteen minutes for a check to be processed by the Colorado Bureau of Investigation.  Although the statute may result in logistical difficulties or inconveniences for some individuals who want to privately borrow a firearm for more than 72 hours, it does not facially infringe their Second Amendment right to do so.[30]  In the context of the facial challenge presented here, the Court finds that § 18-12-112 does not severely impact the Second Amendment right.  Accordingly, intermediate scrutiny is appropriate.

The Court first looks to Colorado's asserted objective in passing § 18-12-112.  Colorado asserts that the objective in passing the statute was to ensure public safety and aid in crime

---

[30]     This is not to say that there may be instances where individuals do not comply with the requirement for a background check and are prosecuted for their noncompliance.  Such circumstances can be addressed through an as-applied challenge.

prevention by closing a loophole in the background check statutes applicable to gun sales by dealers and at gun shows.  The General Assembly considered evidence that almost 40% of gun purchases are made through private sales, in person or over the internet; 62% of private sellers on the internet agree to sell to buyers who are known not to be able to pass a background check; and 80% of criminals who use guns in crime acquired one through a private sale.  The General Assembly also considered evidence that a high percentage of gun crimes are committed by individuals with prior arrests or convictions, which would trigger a denial in a background check, and that closure of the loophole would reduce the number of firearms that are easily passed into the trafficking market and made more accessible for use in crime.  The Court finds that the General Assembly used reasoned analysis in concluding that it was necessary and beneficial to require background checks for private transfers of firearms to help prevent crime and improve public safety, both important governmental interests.

The next question is whether the provisions of § 18-12-112 are substantially related to these objectives.  Colorado presented evidence showing that private background checks will make it more difficult for prohibited individuals to acquire firearms, reduce the rate of diversion of firearms from legal commerce into the trafficking market, and reduce the firearm homicide rate.  Dr. Daniel Webster testified that most firearms used in crime are obtained from a dishonest licensed dealer or from a trusted friend or family member.  Ronald Sloan, the Director of the Colorado Bureau of Investigation, testified that background checks on private transfers are denied at a rate as high as, if not higher than, the denial rate of sales at retail or gun shows.  Further, Dr. Webster opined that imposition of accountability on law-abiding citizens who are tempted to transfer a firearm to a prohibited individual deters diversion of firearms into the trafficking market.  Decreasing diversion ultimately impacts the availability of firearms to

criminals.  Dr. Webster also testified that, based on his research and studies, when measures of accountability for private transfers are taken away, the rates of firearm homicide grow substantially.  Thus, by imposing such measures, the General Assembly could reasonably expect the rates of criminal gun trafficking and use to decrease.

Plaintiffs argue that the evidence shows that private background checks are not happening at the frequency expected, and thus the public interest is not actually being served.  However, for purposes of determining constitutionality — particularly via facial challenge — arguments about whether the statute has been successful are not relevant.  Colorado is not required to show that the statute has already achieved success if its rationale for imposing the law is substantially related to an important purpose.

In addition, Plaintiffs argue that the 72-hour exemption to the background check requirement is unreasonable.  They contend that there was no basis for limiting the exemption to 72 hours, and that more reasonable options include extending the exemption to thirty days, allowing an exemption for individuals with concealed carry permits, or implementing a system that would not require parties to a transfer to physically go to a firearms dealer.

The Court perceives this argument to be one of preferred policy.  The Court's role in this case is to determine whether § 18-12-112 impermissibly burdens protected Second Amendment rights.  What the legislature chooses to *exempt* from the statute's requirements is a determination that is left solely to the legislature.  The legislature was free to conclude, as it did, that 72 hours would be an adequate period of time to permit transfers without background checks while ensuring that sham loans would not occur beyond that timeframe.  Whether or not the legislature's policy decision was wise or warranted is not a question properly presented to this Court.

40

Accordingly, the Court concludes that § 18-12-112 is constitutionally permissible under the Second Amendment.

## VI.  Vagueness Challenge

Returning to § 18-12-302, the Court considers the Plaintiffs' challenge to the statute's grandfather clause as being unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment.  Section 18-12-302(2)(a) provides that a person may possess a large-capacity magazine if he or she: (1) owned the large-capacity magazine on July 1, 2013, and (2) has maintained "continuous possession" of the magazine since that date.  The Plaintiffs seek to invalidate the second requirement, arguing that because the phrase "continuous possession" is undefined in the statute, it fails to put the public on notice of prohibited conduct or provide any enforcement standards.

A law runs afoul of the Due Process Clause if it is "so vague and standardless that it leaves the public uncertain as to the conduct it prohibits."  *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (citation omitted).  The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.  *Dias v. City and Cnty. of Denver*, 567 F.3d 1169, 1179 (10th Cir. 2009) (citing *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)).  This means that a statute can be impermissibly vague for either of two independent reasons: (1) if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits, or (2) if it authorizes or even encourages arbitrary and discriminatory enforcement.  *Ward v. Utah*, 398 F.3d 1239, 1251 (10th Cir. 2005).  In this case, the Plaintiffs challenge the statute on both grounds.

41

In assessing the sufficiency of statutory language, the court is guided by venerated authority that "we can never expect mathematical certainty from our language" and that a statute's terms may be "marked by flexibility and reasonable breadth, rather than meticulous specificity." *See Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972). Thus, a statute is not vague if it is clear what the statute as a whole prohibits. *Id.*

As a preliminary matter, Colorado contends that the Court should not reach the merits of this claim. Relying on *United States v. Reed*, 114 F.3d 1067 (10th Cir. 1997), and *United States v. Michel*, 446 F.3d 1122 (10th Cir. 2006), Colorado argues that facial vagueness claims are permitted only when the challenged statute prohibits protected First Amendment activity. The Court rejects that argument, as these cases are not analogous. Both actions sought post-enforcement review of the statute under which the individuals were prosecuted. *See Reed*, 114 F.3d at 1070; *Michel*, 446 F.3d at 1135.

The Tenth Circuit has held that facial vagueness challenges are proper in two circumstances. First, when an individual has been prosecuted under an arguably vague statute, he or she is permitted to facially attack the statute, in addition to bringing an as-applied challenge, if the statute threatens to "chill" constitutionally protected conduct, especially that protected by the First Amendment. *See Dias,* 567 F.3d at 1179-80; *United States v. Gaudreau*, 860 F.2d 357, 360 (10th Cir. 1988). The reasoning for permitting a facial challenge in this circumstance is that when a statute is arguably so vague that it can reasonably be interpreted to prohibit constitutionally protected speech, individuals may refrain from speaking rather than risk criminal prosecution. Thus, when an individual *is* prosecuted under the statute, he or she is permitted to bring a facial challenge in order to vindicate the rights of others who may be chilled from speaking at all.

42

The second circumstance where a facial challenge is appropriate is upon pre-enforcement review of a statute.  In a declaratory judgment action where no one has been charged under the challenged statute, the court cannot evaluate the statute as applied.  Thus, the only claim to be brought is a facial challenge.  In these circumstances, the challenger may facially attack the statute as "vague in all of its applications."  *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982); *see also Ward v. Utah*, 398 F.3d 1239, 1251 (10th Cir. 2005).  If the statute is vague in all of its applications, then it will necessarily be vague as applied in every case, and the statute is therefore void on its face.  *Gaudreau*, 860 F.2d at 361.

As noted, § 18-12-112 has not been enforced against any Plaintiff.  This is a declaratory judgment action in which the Plaintiffs seek pre-enforcement review of the statute.  Thus, a facial challenge that asserts that the statute is necessarily vague in all of its applications is appropriate.  The Supreme Court has cautioned that "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications."  *Hill v. Colorado*, 530 U.S. 703, 733 (2000).

First, the Plaintiffs argue that a person of ordinary intelligence could not understand whether his or her conduct fell within § 18-12-302(2)(a) because "continuous possession" is not defined.  Pointing to hypothetical situations where § 18-12-302(2)(a) may or may not apply, the Plaintiffs argue that "no one knows with any certainty what 'continuous possession' means." The Plaintiffs further argue that the lack of notice is amplified due to the fact that the statute does not contain a scienter requirement.

The Court is unpersuaded.  Because the statute fails to provide an explicit definition for "continuous possession," it is possible that the "continuous possession" requirement may not be

clear in every application. However, the existence of close cases does not render the statute unconstitutionally vague. Indeed, "[c]lose cases can be imagined under virtually any statute." *United States v. Williams*, 553 U.S. 285, 306 (2008). What renders a statute vague is the inability to determine what the necessary facts *are* under wholly subjective standards. *Id.* For example, the Supreme Court has struck down statutes that tied criminal culpability to whether the defendant's conduct was "annoying" or "indecent." *See, e.g.*, *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971); *Reno v. ACLU*, 521 U.S. 844, 870-71 & n.35 (1997).

Such is not the case here. The grandfather clause actually is an exception to the law. It does not describe criminal conduct, but instead describes conduct that is not criminal. The two operative words, "possession" and "continuous" are in common usage and have readily defined meanings. *See, e.g.*, Merriam-Webster's Collegiate Dictionary, 10th Ed. at 250 (defining "continuous" as "marked by uninterrupted extension in space, time, or sequence"), at 906 (defining "possession" as "the act of having or taking into control"). Indeed, it is not difficult to conceive of many situations where the statute's application would be clear: an owner who loaned out his or her magazine to another after July 1, 2013 would clearly not have maintained "possession" of it; a person who pawned a magazine after July 1, 2013, only to redeem and reacquire it later might currently have possession of the magazine, but that possession has not been "continuous" since July 1, 2013. Accordingly, the Court finds that despite the lack of a precise statutory definition for "continuous possession," it is clear what conduct the statute as a whole prohibits and permits.

The Plaintiffs also contend that the grandfather clause is unduly vague because it lacks an express scienter requirement. The Tenth Circuit has explained that the presence of a scienter requirement can save an otherwise vague statute by mitigating a law's vagueness and thus

making the law constitutional.  *Ward v. Utah*, 398 f.3d 1239, 1252 (10th Cir. 2005).  This principle does not imply, however, that every statute lacking a scienter requirement is necessarily vague.  *Id.*  Because the Court finds that § 18-12-302(2)(a) is not otherwise vague, its lack of an express scienter requirement does not render the statute unconstitutional.

Plaintiffs also argue that the statute does not contain any enforcement standards and therefore permits arbitrary and discriminatory enforcement.  Again, the Plaintiffs point out that "continuous possession" is undefined.  They argue that, as a result, it will be left open to interpretation by "individual law enforcement officers, prosecutors, judges, and juries."  The Court disagrees.  "As always, enforcement requires the exercise of some degree of police judgment."  *Grayned*, 408 U.S. at 114.  The Court finds that the degree of judgment required in enforcing § 18-12-302(2)(a) is not unacceptably delegated to the whim of individual prosecutors.  Although there may be edge cases where the application of the clause is debatable, the "continuous possession" requirement as a whole is sufficiently clear that reasonable people can understand what general types of conduct are authorized.

Further, when evaluating a facial challenge to a Colorado law, a federal court must "consider any limiting construction that a Colorado court or enforcement agency has proffered."  *Hoffman Estates*, 455 U.S. at 494 n.5; *see also Ward v. Rock Against Racism*, 491 U.S. 781, 795 (1989).  Here, the Attorney General has issued two "technical guidance letters" to the Colorado Department of Public Safety regarding how § 18-12-302(2)(a) should be interpreted and enforced.  The letters provide that "continuous possession" shall be interpreted as "having or holding property in one's power or the exercise of dominion over property, that is uninterrupted in time, sequence, substance, or extent."  Further, "continuous possession" does not require "literally continuous physical possession" — instead, "continuous possession" is only lost by a

"voluntary relinquishment of dominion and control."  The technical guidance acknowledges that "[r]esponsible maintenance, handling, and gun safety practices . . . dictate that [§ 18-12-302(2)(a)] cannot be reasonably construed as barring the temporary transfer of a large-capacity magazine by an individual who remains in the continual presence of the temporary transferee, unless that temporary transfer is otherwise prohibited by law."  The Plaintiffs have not provided any evidence demonstrating a reason to believe that § 18-12-302(2)(a) will not be enforced in accordance with the interpretation provided by the Attorney General.  The guidance therefore serves to further limit the discretion of law enforcement officers when applying the grandfather clause.  In light of the forgoing, the Court finds that the statute does not authorize or encourage arbitrary or discriminatory enforcement.  Because the Plaintiffs have failed to sustain their burden of establishing that § 18-12-302(2)(a) is unconstitutionally vague in all applications, the Court finds the statute permissible under the  Fourteenth Amendment to the United States Constitution.

### VII.  Claims under Title II of the ADA

Finally, certain disabled Plaintiffs contend that § 18-12-302 and § 18-12-112 violate 42 U.S.C. § 12132 of the ADA under a disparate impact theory.[31]  The Plaintiffs argue that the statutes disproportionately burden disabled individuals in their ability to defend themselves as compared to able-bodied individuals and they are therefore at a greater risk of harm.[32]

---

[31]     In closing argument, the Plaintiffs' counsel appeared to argue that they were also asserting an ADA claim for denial of a request for reasonable accommodation.  However, no claim of reasonable accommodation was presented in the final pretrial order (Docket #119).  The Court therefore deems such claim to be waived.

[32]     The Court notes that some of the evidence presented with regard to the constitutionality of § 18-12-302 could be construed to suggest that some disabled persons may have greater need for large-capacity magazines for self-defense than more able-bodied persons.  Whether there are

Title II of the ADA provides that "[s]ubject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II of the ADA seeks to "remedy a broad, comprehensive concept of discrimination against individuals with disabilities, including disparate impact discrimination." *Chaffin v. Kansas Colorado Fair Bd.*, 348 F.3d 850, 859-60 (10th Cir. 2003) (overruled on other grounds as recognized by *Muscogee (Creek) Nation v. Pruit*, 669 F.3d 1159, 1167 n.4 (10th Cir. 2012)). To prove a case of disparate impact discrimination, a plaintiff must show that "a specific policy caused a significant disparate effect on a protected group." *Cinnamon Hills Youth Crisis Center, Inc. v. Saint George City*, 685 F.3d 917, 922 (10th Cir. 2012). This is generally shown by statistical evidence identifying relevant comparators to the plaintiff group, examining the relative outcomes of the two groups, and establishing a reasonable inference that any disparate effect identified was caused by the challenged policy and not other causal factors. *Id.* (citation omitted).

Colorado argues that the Plaintiffs' claims under the ADA fail as a matter of law because the Plaintiffs have failed to prove how § 18-12-112 and § 18-12-302 deprive disabled individuals of the "services, programs, or activities of a public entity." The Plaintiffs respond that Title II is not limited to a denial of government services, programs, or activities. They argue that the second clause of § 12132, which provides that a qualified individual shall not "be subjected to discrimination by any [public entity]," extends to any and all actions taken by a public entity. Thus, they argue, by simply enacting statutes that disparately impact disabled individuals, Colorado committed discrimination against disabled individuals in violation of Title II.

---

more viable claims than those brought here to address that concern is a matter upon which the Court does not speculate.

This issue was addressed by the Tenth Circuit in *Elwell v. Oklahoma*, 693 F.3d 1303

(10th Cir. 2012).  In *Elwell*, the issue before the Tenth Circuit was whether a governmental

employee could bring a claim of employment discrimination against his public employer under

Title II of the ADA (rather than under Title I of the ADA, which specifically addresses

employment discrimination).  In its analysis, the court acknowledged that § 12132 of Title II has

two primary clauses.  The first clause prevents a qualified individual from being "excluded from

participation in or be[ing] denied the benefits of the services, programs, or activities of a public

entity."  Thus, the question was whether "employment" could be fairly described as a "service,

program, or activity" of a public entity.  The court held that it could not, explaining that "an

agency's services, programs, and activities refer to the 'outputs' it provides some public

constituency." 693 F.3d at 1306.  Employment, on the other hand, is an "input" required to make

an agency's services, programs, and activities possible.  *Id.*

The second clause prevents a qualified individual from being "subjected to discrimination

by any [public entity]."  The plaintiff in *Elwell* argued that this clause is a "catch-all" that

prohibits all discrimination by a public entity, regardless of whether it occurs in a service,

program, or activity the entity provides or in some other way or function.  The Tenth Circuit

disagreed, holding that the second clause also refers to discrimination in the context of

government-provided services, programs, and activities.  *Id.* at 1308-09.  The Tenth Circuit

explained that § 12132 must be read in concert with the definition of "qualified individual with a

disability," 42 U.S.C. § 12131(2), which states that a "qualified individual with a disability" is an

"individual with a disability who . . . meets the essential eligibility requirements for the receipt of

services or the participation in programs or activities provided by a public entity."  Thus, the first

clause of §12132 precludes an agency from baldly "exclud[ing]" or "deny[ing] benefits" to

qualified individuals, while the second clause does additional work by addressing more subtle (though equally inequitable) acts of discrimination, such as by making it disproportionately more difficult for qualified individuals to participate in programs or activities, unfairly disadvantaging them compared to others, or "otherwise discriminating against them in the manner the agency provides its services, programs, and activities." *Id.* at 1308.

The Tenth Circuit in *Elwell* went onto explain what the terms "services," "programs," and "activities" are understood to mean. "Services" are ordinarily understood as acts done by the government for the benefit of another, whereas the term "program" refers to a government's projects or schemes, such as social security or a foreign exchange program. *Id.* at 1306. The term "activity" has a broader meaning, encompassing all outputs the public entity provides to the public it serves. However, the term does "not necessarily rope in everything the entity does." *Id.* at 1307.

Applying the principles of *Elwell* here, the Court finds that the Plaintiffs have failed to prove that § 18-12-112 and § 18-12-302 disproportionately impact disabled individuals with respect to a Colorado "service, program, or activity." The statutes at issue do not create any governmental "output" which disabled persons are less able to access. Rather, the statutes merely embody a criminal prohibition on conduct generally applicable to all persons. Thus, the Plaintiffs' claims fail to establish a violation of Title II of the ADA.

Assuming, however, that the statutes *did* constitute a government service, program, or activity, the Court would nevertheless find that the evidence is insufficient to establish a disparate impact. The Plaintiffs presented significant evidence tending to show that *some* disabled individuals: (1) feel that large-capacity magazines are necessary for their self-defense because they have decreased mobility and/or ability to reload quickly during confrontation, and

(2) wish to borrow firearms, some of which are specifically equipped to aid their disabilities, from various organizations without having to undergo a background check.  Such anecdotal evidence, in the absence of meaningful statistical analysis comparing the effect of the statute on the Plaintiffs and able-bodied comparators is insufficient to carry the Plaintiffs' burden of demonstrating that the statutes cause any disparate effect.  Accordingly, the Court finds that the Colorado is entitled to judgment in its favor on the Plaintiffs' claims under the ADA.

## VIII.  Conclusion

For the forgoing reasons, the Court **ORDERS** as follows:

- Colorado's Motion to Dismiss (**#133**) is **DENIED**;

- The parties' Joint Motion to Strike Expert Opinions Per FRE 702 (**#118**) is **GRANTED, in part, and DENIED, in part** consistent with the findings contained herein;

- Colorado Revised Statutes § 18-12-112 and § 18-12-302 are compliant with the provisions of the Second and Fourteenth Amendments to the United States Constitution.

- The Clerk of the Court is directed to enter **JUDGMENT IN FAVOR OF THE DEFENDANT** on all claims and to close this case.

Dated this 26th day of June, 2014.

**BY THE COURT:**

_Marcia S. Krieger_
_____

Marcia S. Krieger
Chief United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Chief Judge Marcia S. Krieger

Civil Action No. 13-cv-01300-MSK-MJW

COLORADO OUTFITTERS ASSOCIATION;
COLORADO FARM BUREAU;
NATIONAL SHOOTING SPORTS FOUNDATION;
MAGPUL INDUSTRIES;
COLORADO YOUTH OUTDOORS;
USA LIBERTY ARMS;
OUTDOOR BUDDIES, INC.;
WOMEN FOR CONCEALED CARRY;
COLORADO STATE SHOOTING ASSOCIATION;
HAMILTON FAMILY ENTERPRISES, INC., d/b/a FAMILY SHOOTING CENTER AT
CHERRY CREEK COLORADO PARK;
DAVID STRUMILLO;
DAVID BAYNE;
DYLAN HARRELL;
ROCKY MOUNTAIN SHOOTERS SUPPLY;
2ND AMENDMENT GUNSMITH & SHOOTER SUPPLY, LLC;
BURRUD ARMS INC. D/B/A JENSEN ARMS;
GREEN MOUNTAIN GUNS;
JERRY'S OUTDOOR SPORTS;
SPECIALTY SPORTS & SUPPLY;
GOODS FOR THE WOODS;
JOHN B. COOKE;
KEN PUTNAM;
JAMES FAULL;
LARRY KUNTZ;
FRED JOBE;
DONALD KRUEGER;
DAVE STRONG;
PETER GONZALEZ;
SUE KURTZ; and
DOUGLAS N. DARR,

      Plaintiffs,

v.

JOHN W. HICKENLOOPER, Governor of the State of Colorado,

      Defendant.

## JUDGMENT

Pursuant to the Court's June 26, 2014, Findings of Fact, Conclusions of Law, and Order, and the proceedings to date, **JUDGMENT IS HEREBY ENTERED** in favor of the Defendant, John W. Hickenlooper, against all Plaintiffs with costs pursuant to Fed. R. Civ. P. 54(d)(1).

Dated this 26th day of June, 2014.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 13-CV-1300-MSK-MJW

COLORADO OUTFITTERS ASSOCIATION, *et. al.*,

     Plaintiffs

v.

JOHN W. HICKENLOOPER, Governor of the State of Colorado,

     Defendant.

---

**PLAINTIFFS' NOTICE OF APPEAL**

---

Notice is hereby given that Plaintiffs Colorado Outfitters Association, Colorado Farm Bureau, National Shooting Sports Foundation, Magpul Industries, Colorado Youth Outdoors, USA Liberty Arms, Outdoor Buddies, Inc., Women for Concealed Carry, Colorado State Shooting Association, Hamilton Family Enterprises, Inc., d/b/a Family Shooting Center at Cherry Creek State Park, David Bayne, Dylan Harrell, Rocky Mountain Shooters Supply, 2nd Amendment Gunsmith & Shooter Supply, LLC, Burrud Arms Inc. d/b/a Jensen Arms, Green Mountain Guns, Jerry's Outdoor Sports, Specialty Sports & Supply, and Goods for the Woods, hereby appeal to the United States Court of Appeals for the Tenth Circuit from the following orders: (1) this Court's Findings of Fact, Conclusions of Law, and Order, as well as the corresponding and separate Judgment, both of which were entered in this action on June 26,

2014[1]; and (2) this Court's Opinion and Order Granting in Part and Denying in Part Defendant's Motion to Dismiss, which was entered in this action on November 27, 2013.

Dated this 28th day of July, 2014.

Respectfully submitted,

s/Richard A. Westfall
Richard A. Westfall
Peter J. Krumholz
HALE WESTFALL LLP
1600 Stout Street, Suite 500
Denver, CO 80202
Phone: (720) 904-6010
Fax: (720) 904-6020
rwestfall@halewestfall.com

ATTORNEYS FOR DYLAN HARRELL, DAVID BAYNE, OUTDOOR BUDDIES, INC. THE COLORADO OUTFITTERS ASSOCIATION, COLORADO FARM BUREAU, AND WOMEN FOR CONCEALED CARRY

s/Douglas Abbott
Jonathan M. Anderson
Douglas Abbott
HOLLAND & HART LLP
Post Office Box 8749
Denver, CO 80201-8749
Phone: (303) 295-8566
Fax: (303) 672-6508
jmanderson@hollandhart.com

ATTORNEYS FOR MAGPUL INDUSTRIES AND THE NATIONAL SHOOTING SPORTS FOUNDATION

---

[1] *See McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1104 (10th Cir. 2002) ("[A] notice of appeal which names the final judgment is sufficient to support review of all earlier orders that merge in the final judgment."

s/Marc F. Colin
BRUNO COLIN JEWELL & LOWE PC
1999 Broadway, Suite 3100
Denver, CO 80202-5731
Phone: (303) 831-1099
Fax: (303) 831-1088
mcolin@bcjlpc.com

**ATTORNEY FOR ROCKY MOUNTAIN SHOOTERS SUPPLY, 2ND AMENDMENT GUNSMITH & SHOOTER SUPPLY, LLC, BURRUD ARMS INC. D/B/A JENSEN ARMS, GREEN MOUNTAIN GUNS, JERRY'S OUTDOOR SPORTS, SPECIALTY SPORTS & SUPPLY, GOODS FOR THE WOODS**


s/Anthony J. Fabian
LAW OFFICES OF ANTHONY J. FABIAN PC
510 Wilcox Street, Suite C
Castle Rock, CO 80104
Phone: (303) 663-9339
Fax: (303) 713-0785
fabianlaw@qwestoffice.net

**ATTORNEY FOR COLORADO STATE SHOOTING ASSOCIATION AND HAMILTON FAMILY ENTERPRISES, INC. D/B/A FAMILY SHOOTING CENTER AT CHERRY CREEK STATE PARK**

3

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2014, I have served the foregoing pleading via the CM/ECF system for the United States District Court for the District of Colorado:

David B. Kopel                david@i2i.org

Jonathan M. Anderson          jmanderson@hollandhart.com

Douglas Abbott                dabbott@hollandhart.com

Marc F. Colin                 mcolin@bcjlpc.com

Anthony J. Fabian             fabianlaw@qwestoffice.net

Matthew Grove                 matt.grove@state.co.us

Kathleen Spalding             kit.spalding@state.co.us

Jonathan Fero                 jon.fero@state.co.us

David Blake                   david.blake@state.co.us

Daniel D. Domenico            dan.domenico@state.co.us

Stephanie Scoville            stephanie.scoville@state.co.us

John Lee                      jtlee@state.co.us

LeeAnn Morrill                leeann.morrill@state.co.us

s/Peter J. Krumholz
HALE WESTFALL LLP
1600 Stout Street, Suite 500
Denver, CO 80202
Phone: (720) 904-6010
Fax: (720) 904-6020

4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 13-CV-1300-MSK-MJW

COLORADO OUTFITTERS ASSOCIATION, *et. al.*,

      Plaintiffs

v.

JOHN W. HICKENLOOPER, Governor of the State of Colorado,

      Defendant.

---

**PLAINTIFFS' AMENDED NOTICE OF APPEAL**

---

Notice is hereby given that Plaintiffs Colorado Outfitters Association, Colorado Farm Bureau, National Shooting Sports Foundation, Magpul Industries, Colorado Youth Outdoors, USA Liberty Arms, Outdoor Buddies, Inc., Women for Concealed Carry, Colorado State Shooting Association, Hamilton Family Enterprises, Inc., d/b/a Family Shooting Center at Cherry Creek State Park, David Bayne, Dylan Harrell, Rocky Mountain Shooters Supply, 2nd Amendment Gunsmith & Shooter Supply, LLC, Burrud Arms Inc. d/b/a Jensen Arms, Green Mountain Guns, Jerry's Outdoor Sports, Specialty Sports & Supply, and Goods for the Woods, hereby appeal to the United States Court of Appeals for the Tenth Circuit from the following orders: (1) this Court's Findings of Fact, Conclusions of Law, and Order, as well as the corresponding and separate Judgment, both of which were entered in this action on June 26,

2014[1]; (2) this Court's Opinion and Order Granting in Part and Denying in Part Defendant's Motion to Dismiss, which was entered in this action on November 27, 2013, and (3) this Court's verbal order at the February 20, 2014 Pretrial Conference that no evidence concerning standing should be presented at trial.

Dated this 28th day of July, 2014.

Respectfully submitted,

s/Richard A. Westfall
Richard A. Westfall
Peter J. Krumholz
HALE WESTFALL LLP
1600 Stout Street, Suite 500
Denver, CO 80202
Phone: (720) 904-6010
Fax: (720) 904-6020
rwestfall@halewestfall.com

ATTORNEYS FOR DYLAN HARRELL, DAVID BAYNE, OUTDOOR BUDDIES, INC. THE COLORADO OUTFITTERS ASSOCIATION, COLORADO FARM BUREAU, AND WOMEN FOR CONCEALED CARRY

s/Douglas Abbott
Jonathan M. Anderson
Douglas Abbott
HOLLAND & HART LLP
Post Office Box 8749
Denver, CO 80201-8749
Phone: (303) 295-8566
Fax: (303) 672-6508
jmanderson@hollandhart.com

ATTORNEYS FOR MAGPUL INDUSTRIES AND THE NATIONAL SHOOTING SPORTS FOUNDATION

---

[1] *See McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1104 (10th Cir. 2002) ("[A] notice of appeal which names the final judgment is sufficient to support review of all earlier orders that merge in the final judgment."

2

s/Marc F. Colin
BRUNO COLIN JEWELL & LOWE PC
1999 Broadway, Suite 3100
Denver, CO 80202-5731
Phone: (303) 831-1099
Fax: (303) 831-1088
mcolin@bcjlpc.com

ATTORNEY FOR ROCKY MOUNTAIN SHOOTERS
SUPPLY, 2ND AMENDMENT GUNSMITH &
SHOOTER SUPPLY, LLC, BURRUD ARMS INC. D/B/A
JENSEN ARMS, GREEN MOUNTAIN GUNS, JERRY'S
OUTDOOR SPORTS, SPECIALTY SPORTS & SUPPLY,
GOODS FOR THE WOODS

s/Anthony J. Fabian
LAW OFFICES OF ANTHONY J. FABIAN PC
510 Wilcox Street, Suite C
Castle Rock, CO 80104
Phone: (303) 663-9339
Fax: (303) 713-0785
fabianlaw@qwestoffice.net

ATTORNEY FOR COLORADO STATE SHOOTING
ASSOCIATION AND HAMILTON FAMILY
ENTERPRISES, INC. D/B/A FAMILY SHOOTING
CENTER AT CHERRY CREEK STATE PARK

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 28, 2014, I have served the foregoing pleading via the CM/ECF system for the United States District Court for the District of Colorado:

David B. Kopel                david@i2i.org

Jonathan M. Anderson          jmanderson@hollandhart.com

Douglas Abbott                dabbott@hollandhart.com

Marc F. Colin                 mcolin@bcjlpc.com

Anthony J. Fabian             fabianlaw@qwestoffice.net

Matthew Grove                 matt.grove@state.co.us

Kathleen Spalding             kit.spalding@state.co.us

Jonathan Fero                 jon.fero@state.co.us

David Blake                   david.blake@state.co.us

Daniel D. Domenico            dan.domenico@state.co.us

Stephanie Scoville            stephanie.scoville@state.co.us

John Lee                      jtlee@state.co.us

LeeAnn Morrill                leeann.morrill@state.co.us

<u>s/Peter J. Krumholz</u>
HALE WESTFALL LLP
1600 Stout Street, Suite 500
Denver, CO 80202
Phone: (720) 904-6010
Fax: (720) 904-6020
